AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of California


FILED
MAR 25 2015
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

United States of America )
v. )
KEITH FOSTER ) Case No. 1:15-mj-0044-GSA
RANDY FLOWERS )
IRAN DENNIS FOSTER )
JENNIFER DONABEDIAN ) **UNDER SEAL**
RAFAEL GUZMAN )
SARAH YBARRA )
*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 18, 2014 to present__ in the county of __Fresno__ in the __Eastern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 846, 841(a)(1) | Conspiracy to Distribute and/or Possess with Intent to Distribute a Controlled Substance (Oxycodone) (Keith Foster and Randy Flowers) |
| 21 U.SC. 846, 841(a)(1) | Conspiracy to Distribute and/or Possess with Intent to Distribute a Controlled Substance (Marijuana) (Keith Foster, Iran Dennis Foster, Jennifer Donabedian, Sarah Ybarra) |
| 21 U.S.C. 846, 841(a)(1) | Conspiracy to Distribute and/or Possess with Intent to Distribute a Controlled Substance (Heroin) (Keith Foster and Rafael Guzman) |
| 21 U.S.C. 843b | Use of a Communication Facility to Commit a Drug Offense (Iran Dennis Foster and Sarah Ybarra only) |

This criminal complaint is based on these facts: See Attached Affidavit

_____
*Complainant's signature*

Sherri L. Reynolds, Special Agent, ATF.
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/25/15

_____
*Judge's signature*

City and state: Fresno, Ca.

Gary S. Austin, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Sherri L. Reynolds, being first duly sworn, hereby declare and state as follows:

### I.   AGENT'S BACKGROUND

1. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, and have been so employed since December of 2009. I am currently assigned to the San Francisco Field Division in the Fresno Field Office. I completed twenty-six weeks of training, which was comprised of the Criminal Investigator Training Program and the ATF Special Agent Basic Training program at the Federal Law Enforcement Training Center in Glynco, Georgia. I received extensive training on firearms identification, common scenarios involving firearms and narcotics trafficking, and identification and effects of controlled substances. Additionally, I received training on undercover investigations related to firearms and narcotics trafficking, which included investigative techniques and common subject behavior.

2. During the course of my employment with ATF, I have investigated criminal violations relating to firearms, explosives, arson, violent crime, criminal street gangs and narcotics. I have participated in all aspects of criminal investigations, including, but not limited to, interviews, physical surveillance, and the execution of search warrants. I have personally investigated and/or assisted other agents and officers in their investigations involving violations of Title 18, United States Code, Section 922(g)(1), possession of a firearm by prohibited persons; Title 18, United States Code, Section 924(c), use and/or possession of a firearm during and in furtherance of a drug trafficking crime; Title 21, United States Code, Section 841(a)(1), the manufacture of, distribution of and possession with intent to distribute controlled substances; and Title 21, United States Code, Section 846, conspiracy to commit the foregoing. Specifically, those investigations have focused on the distribution of methamphetamine, marijuana, cocaine and other narcotics. I am familiar with, and have participated in, conventional investigative methods, including, but not limited to, electronic surveillance, visual surveillance, the use of GPS/E-911 data, questioning of witnesses, search warrants, confidential informants, and pen registers and trap and trace devices.

3. During the course of my employment with the ATF, I have had the opportunity to converse with admitted and known drug traffickers as to their methods, and those of their associates,

regarding the manufacture, importation, transportation, distribution and sales of controlled substances, as well as their methods used to conceal, transport, and launder cash and/or other types of drug proceeds. I have become knowledgeable in the methods used by drug traffickers to import, conceal, transport, distribute, manufacture, and sell controlled substances, as well as the methods used to conceal, transport, and launder cash and/or other types of drug proceeds. Through prior investigations and training, I have become familiar with the types and amounts of profits made by drug dealers, and the methods, language, and terms used by persons dealing illegal substances. I am aware drug traffickers often communicate with their drug trafficking associates through the use of cellular telephones and hard line telephones. In addition, I am aware drug traffickers frequently use multiple cellular telephones and hard line telephones. I am aware drug traffickers frequently change telephone numbers and cellular telephones. I know from my training and experience, drug traffickers often use fictitious names and identification for the purpose of subscribing to cellular telephones and hard-line telephones. I also know drug traffickers put communications devices in the names of associates and/or relatives. The use of these fictitious names and identification or placing communication devices in the names of associates or relatives is designed to impede law enforcement investigations into the true subscriber and/or user of such communication devices.

4.   This Affidavit is submitted in support of a Criminal Complaint charging KEITH FOSTER, RANDY FLOWERS, DENNY FOSTER, JENNIFER DONABEDIAN and RAFAEL GUZMAN with a violation of Title 21, United States Code, §§ 846 and 841(a)(1), Conspiracy to Distribute and/or Possess with Intent to Distribute Controlled Substances, including but not limited to marijuana, heroin, and oxycodone; and charging DENNY FOSTER and SARAH YBARRA with a violation of Title 21, United States Code, § 843b, Use of a Communication Facility to Commit a Drug Trafficking Offense. The information set forth in this affidavit is not intended to detail each and every fact and circumstance of the investigation or all information known to me and other law enforcement investigators involved in the investigation. Rather, this affidavit serves to establish probable cause for the arrest of KEITH FOSTER, RANDY FLOWERS, DENNY FOSTER, JENNIFER DONABEDIAN, RAFAEL GUZMAN and SARAH YBARRA.

## II.     FACTS ESTABLISHING PROBABLE CAUSE

5.     On November 20, 2014, agents initiated a Title III investigation into the Foster drug trafficking organization. Over the course of the investigation, agents intercepted wire and or electronic communications of facilities used by KEITH FOSTER, RANDY FLOWERS, and DENNY FOSTER. These interceptions, in conjunction with other investigative methods, have provided facts establishing the conspiracies to distribute controlled substances, as more particularly described below.

### A.     SUMMARY OF CONSPIRATORS

6.     KEITH FOSTER is a Deputy Chief with the Fresno Police Department. As explained below, agents have identified KEITH FOSTER as an individual participating in multiple conspiracies to distribute controlled substances, including oxycodone, marijuana and heroin. IRAN DENNIS FOSTER ("DENNY FOSTER") is a relative of KEITH FOSTER. DENNY FOSTER is distributing marijuana in the areas of Fresno, California and Albuquerque, New Mexico. JENNIFER DONABEDIAN is DENNY FOSTER's cohabitant. JENNIFER DONABEDIAN assists DENNY FOSTER in the distribution of marijuana and provides DENNY FOSTER with resources to conduct his drug trafficking operation. RANDY FLOWERS is also believed to be a relative of KEITH FOSTER. RANDY FLOWERS is receiving oxycodone from KEITH FOSTER and others. RAFAEL GUZMAN is a drug trafficker who distributes controlled substances including, but not limited to, heroin and cocaine. SARAH YBARRA assisted DENNY FOSTER in shipping a package containing marijuana to an individual in Albuquerque, New Mexico.

### B.     OXYCODONE CONSPIRACY, 21 USC 846, 841(a)(1)

7.     RANDY FLOWERS' criminal history includes a 1988 conviction for possession of cocaine base for sale from Fresno County, California; a 1994 conviction for felon and addict in possession of a firearm from Fresno County, California; and a 2010 conviction for delivery of a schedule II controlled substance from Marion County, Oregon.

8.     On December 23, 2014, KEITH FOSTER called RANDY FLOWERS. KEITH FOSTER said he had "100 of those things" for RANDY FLOWERS. RANDY FLOWERS provides his address to KEITH FOSTER. Immediately prior to this interception, agents observed KEITH FOSTER's black BMW at the Rite Aid pharmacy drive through. Subsequent to the interception, agents saw KEITH

FOSTER's black BMW arrive at Randy FLOWERS' residence of 2049 W. Church. KEITH FOSTER remained at the residence for approximately 2 minutes. Agents later confirmed that KEITH FOSTER picked up a prescription for 100 oxycodone pills from Rite Aid on December 23, 2014. Based on my training and experience, I interpret KEITH FOSTER's statement "I got a hundred of them things," to mean that KEITH FOSTER had 100 oxycodone pills. Further, I believe that Randy FLOWERS provided his residence address to KEITH FOSTER so that KEITH FOSTER could deliver the pills.

9. On January 27, 2015, at approximately 3:47 p.m., KEITH FOSTER contacted Rite Aid and inquired about the availability of his prescription. He was told that the prescription would be available by 6:00 p.m. Agents set up surveillance at the Rite Aid pharmacy where KEITH FOSTER routinely fills prescriptions for oxycodone. Agents saw KEITH FOSTER's black BMW parked in the parking lot of the pharmacy. At 5:08 p.m., agents saw KEITH FOSTER exit the pharmacy and enter the black BMW. KEITH FOSTER then called RANDY FLOWERS and inquired as to RANDY FLOWERS' availability when KEITH FOSTER gets off work. RANDY FLOWERS said he would be around. Based on my training and experience, prior interceptions, and information learned over the course of this investigation, I interpret this call as KEITH FOSTER inquiring as to whether Randy FLOWERS will be available to accept delivery of the pills when KEITH FOSTER is off work. Agents conducting surveillance followed KEITH FOSTER as he drove from the Rite Aid parking lot located at Shaw and West in Fresno, California. Agents lost sight of the black BMW for a brief period of time, but re-established surveillance within minutes as the black BMW merged onto the freeway. KEITH FOSTER arrived at Randy FLOWERS' residence at 5:28 p.m. Based on the travel time and the distance between the Rite Aid pharmacy and Randy FLOWERS' residence, agents do not believe that KEITH FOSTER made any stops during the brief period where agents lost visual surveillance. KEITH FOSTER remained at Randy FLOWERS' residence until 5:55 p.m. Agents later confirmed that KEITH FOSTER picked up a prescription for 100 oxycodone pills.

C. **MARIJUANA CONSPIRACY, 21 USC 846, 841(a)(1)**

10. In 2005, DENNY FOSTER was convicted in the state of Oregon for possession of cocaine with intent to distribute, but the conviction was overturned on appeal. In 2008, DENNY FOSTER was arrested for possession of marijuana for sale in Shasta County, California. DENNY

FOSTER was arrested on January 4, 2015, for possession of marijuana for sale in Merced County, California. He was released from custody on January 5, 2015.

11.  On December 6, 2014, while DENNY FOSTER was in the area of Redding, California, for the purpose of acquiring marijuana, KEITH FOSTER called DENNY FOSTER. KEITH FOSTER asked whether DENNY FOSTER could pick up some "units" for "his boy." DENNY FOSTER told KEITH FOSTER that he would do so if KEITH FOSTER deposited money into DENNY FOSTER's bank account. However, KEITH FOSTER said he did not want to go to the bank. KEITH FOSTER said he would tell "his boy" that it would be "next week."

12.  On December 9, 2014, KEITH FOSTER again talked to DENNY FOSTER. KEITH FOSTER said, "[h]ey man so what? Monday or Tuesday? My boy wanna know [U/I] Monday or Tuesday or no." DENNY FOSTER responded, "[p]robably Friday or Saturday." KEITH FOSTER then indicated four (4) units. During this telephone call, KEITH FOSTER also asked DENNY FOSTER whether DENNY FOSTER had "any of that, of uh, that change . . . [t]wo, a couple?" Based on my training and experience, I know that "change" is a slang term commonly used in reference to currency. I interpret this question as KEITH FOSTER inquiring as to whether DENNY FOSTER can provide $200 to KEITH FOSTER.

13.  On December 19, 2014, agents intercepted communications between DENNY FOSTER and "Dom", that DENNY FOSTER had shipped a half of pound marijuana to the "Camillo" address in Albuquerque, New Mexico and requested "Dom" to deposit the money in the "Wells Fargo" bank. Agents intercepted DENNY FOSTER instructing JENNIFER DONABEDIAN to check the bank account. DONABEDIAN called DENNY FOSTER and indicated "$1,100.00" was deposited. DENNY FOSTER told DONABEDIAN, "He said he put in $1,150.00."

14.  On December 27, 2014, agents intercepted a telephone call between DENNY FOSTER and a known individual referred to herein as "J.B." During the telephone call, J.B. asked to purchase marijuana from DENNY FOSTER. J.B. called while at DENNY FOSTER's residence and inquired as to DENNY FOSTER'S whereabouts. During the conversation, J.B. passed the telephone to JENNIFER DONABEDIAN. DENNY FOSTER told JENNIFER DONABEDIAN to retrieve marijuana from a Tupperware bowl with a blue lid. JENNIFER DONABEDIAN asked how much J.B. was going to pay,

and DENNY FOSTER said "Fifty." JENNIFER DONABEDIAN then confirmed that she was selling J.B. "seven," and DENNY FOSTER responded, [y]eah."

### D.   HEROIN CONSPIRACY, 21 USC 846, 841(a)(1)

15.   RAFAEL GUZMAN sustained a felony conviction in 2000 for possession of a controlled substance for sale. GUZMAN was arrested in Clovis, California, in October 2013 for possession of controlled substances for sale (methamphetamine, marijuana, hydrocodone, ecstasy, alprazolam, and lorazepam) (disposition unknown) subsequent to execution of a search warrant at a prior residence of 3075 Villa Avenue, Clovis, California.

16.   On December 24, 2014, agents intercepted a telephone call between KEITH FOSTER and RAFAEL GUZMAN. KEITH FOSTER told RAFAEL GUZMAN that he knew someone who was trying to get "the black." KEITH FOSTER asks RAFAEL GUZMAN, "[w]hat's the ticket?" and RAFAEL GUZMAN says "It depends, how good of clothes they want?" RAFAEL GUZMAN further states, ". . . at my cost now they'll say about a rack for the best. We're talking about some China white though, you know what I mean?"

17.   Based upon my training and experience and conversations with other law enforcement officers, I know that heroin is often referred to by drug users and drug dealers in terms of its color. For instance, I know that white powder heroin is often referred to as "China white," and that black tar heroin is often referred to as "black" by drug users and drug dealers. When KEITH FOSTER asks he knows someone who wants to get "the black," I interpret this as KEITH FOSTER telling GUZMAN that KEITH FOSTER knows someone who wants to purchase an unspecified amount of heroin. Based on my training and experience, I know that "ticket" is a term often used to reference a price. When KEITH FOSTER asks "what's the ticket," I interpret this as KEITH FOSTER inquiring as to the price of heroin. Based on my training and experience, I know that narcotics traffickers and others engaging in criminal conduct will often speak in code or communicate in some other abbreviated manner to conceal the exact nature of their communications. When GUZMAN asks KEITH FOSTER "how good of clothes they want," I interpret this as GUZMAN asking about the quality of heroin the customer wants to purchase and characterizing the heroin as "clothes" to conceal the nature of the conversation. I know based on my training and experience that the price of a controlled substance is dependent upon the quality of the

1 controlled substance. I interpret GUZMAN's comment ". . . at my cost now they'll say about a rack for
2 the best. We're talking about some China white though . . ." to mean that he can acquire white powder
3 heroin for $1,000 per ounce. I know based on my training and experience that "rack" is a common term
4 used to refer to $1,000. Based upon my training and experience and information recently provided to
5 me by the Drug Enforcement Agency (DEA), I know that the current price of heroin in California ranges
6 from $500 - $900 per ounce for black tar heroin and between $900 - $1200 per ounce for white powder
7 heroin

      E.    <u>**USE OF A COMMUNICATION FACILITY, 21 USC 843b**</u>

9     18.    On February 7, 2015, agents intercepted a telephone call between DENNY FOSTER and
10 Sarah YBARRA ("YBARRA") during which DENNY FOSTER said he was en route to get YBARRA
11 so she could ship ½ pound of marijuana to Albuquerque, New Mexico on DENNY FOSTER's behalf.
12 DENNY FOSTER departed his residence in the black Lexus registered to DONABEDIAN. At
13 approximately 12:35 p.m., agents observed DENNY FOSTER arrive at YBARRA's residence. Shortly
14 thereafter, YBARRA departed the building and got inside the Lexus. Agents lost visual of the vehicle.
15 During this time, agents intercepted a telephone call between DENNY FOSTER and YBARRA.
16 YBARRA said she forgot the shipping address. DENNY FOSTER provided a shipping address of
17 "Maria Garza, 1704 Avenida Los Griegos, Albuquerque, New Mexico."

18     19.    Agents made contact with the manager of the FedEx Office store near Nees and
19 Blackstone. The manager was handling a package as agents entered. The manager explained that a
20 Hispanic female dropped the package off for shipment, and employees thought the package was
21 suspicious. Agents obtained a copy of the surveillance video, and YBARRA was positively identified as
22 the individual delivering the package for shipment. Agents did not seize the package and did not request
23 that it be held at the FedEx Office store. The manager of the FedEx store provided the tracking number
24 to agents. Agents alerted the manager of the FedEx distribution facility that a suspicious package was
25 received for shipment at a FedEx Office store location in Fresno, California, and provided the tracking
26 number. Agents are aware that on or about February 9, 2015, a deputy with the Fresno County Sheriff's
27 Office went to the FedEx distribution center. According to the deputy's report, a FedEx manager
28 opened the package and found it to contain eight (8) vacuum sealed bags of marijuana, weighing

approximately 9.3 ounces.

### III.   CONCLUSION

20.   Based upon the foregoing, there is probable cause to believe that:

    a.   KEITH FOSTER and RANDY FLOWERS are conspiring to distribute oxycodone in violation of Title 21, United States Code, §§ 846 and 841(a)(1), Conspiracy to Distribute and/or Possess with Intent to Distribute Controlled Substances (oxycodone)

    b.   KEITH FOSTER, IRAN DENNIS FOSTER, JENNIFER DONABEDIAN and SARAH YBARRA are conspiring to distribute marijuana in violation of Title 21, United States Code, §§ 846 and 841(a)(1), Conspiracy to Distribute and/or Possess with Intent to Distribute Controlled Substances (marijuana)

    c.   KEITH FOSTER and RAFAEL GUZMAN are conspiring to distribute heroin in violation of Title 21, United States Code, §§ 846 and 841(a)(1), Conspiracy to Distribute and/or Possess with Intent to Distribute Controlled Substances (heroin)

    d.   IRAN DENNIS FOSTER and SARAH YBARRA have violated Title 21, United States Code, § 843b, Use of a Communication Facility to Commit a Drug offense, by delivering a package of marijuana to Federal Express for shipment to New Mexico.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

Dated: March 25, 2015

_____
SHERRI L. REYNOLDS
Special Agent, Bureau of Alcohol, Tobacco,
Firearms and Explosives (ATF)