1    UNITED STATES DISTRICT COURT

2    EASTERN DISTRICT OF CALIFORNIA

3    UNITED STATES OF AMERICA,    :   Case No. 11:15-mj-00044-GSA

4        Plaintiff,              :        Fresno, California
                                          Tuesday, March 31, 2015
5            v.                  :        1:23 p.m.

6    IRAN DENNIS FOSTER, ET AL.,  :      DETENTION HEARING

7        Defendants.             :

8    : : : : : : : : : : : : : : : :

9
                        TRANSCRIPT OF PROCEEDINGS
10            BEFORE THE HONORABLE GARY S. AUSTIN,
                    UNITED STATES MAGISTRATE JUDGE
11

12   APPEARANCES:

13   For the United States of     U. S. Attorney's Office
     America:                     BY:  MELANIE ALSWORTH, AUSA
14                                2500 Tulare Street, Suite 4401
                                  Fresno, CA  93721
15

16   For Defendant, Iran          ROGER K. LITMAN, ESQ.
     Dennis Foster:               2300 Tulare Street, Suite 230
17                                Fresno, CA  93721

18

19
     Court Recorder:              OTILIA FIGUEROA
20

21   Transcript prepared by:      JANICE RUSSELL TRANSCRIPTS
                                  1133 Tanager Trail
22                                Virginia Beach, VA  23451
                                  (757) 422-9089
23                                trussell31@cox.net

24
     Proceedings recorded by electronic sound recording; transcript
25   produced by transcription service.

1    APPEARANCES (Continued):

2    For Defendant, Rafael          Office of the Federal Defender
     Guzman:                        BY:   CHARLES LEE, AFPD
3                                   2300 Tulare Street, Suite 330
                                    Fresno, CA  93721
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | <u>FRESNO, CALIFORNIA, TUESDAY, MARCH 31, 2015, 1:23 P.M.</u> |
| 2 | THE COURT:  Afternoon, everyone. |
| 3 | We have two matters on calendar this afternoon and |
| 4 | they are Iran Dennis Foster and Rafael Guzman. |
| 5 | And I should have Mr. Litman appearing on behalf of |
| 6 | Mr. Foster. |
| 7 | And is Ms. Sasso here appearing -- |
| 8 | MR. LEE:  Your Honor, I'm appearing for her. |
| 9 | THE COURT:  Mr. Lee? |
| 10 | MR. LEE:  Yes. |
| 11 | THE COURT:  Okay. |
| 12 | And whoever wishes to go first. |
| 13 | Mr. Litman, you're smiling at me, so I suspect |
| 14 | that's -- you're ready to go? |
| 15 | MR. LITMAN:  Your -- |
| 16 | THE COURT:  I'll take whosever ready to go. |
| 17 | MR. LITMAN:  Sure.  We're, we're ready to go, Your |
| 18 | Honor. |
| 19 | THE COURT:  Okay.  Mr. Lee, I assume you don't mind, |
| 20 | then, waiting until we're finished with Mr. Foster's case. |
| 21 | All right.  Let's -- |
| 22 | And who's appearing on behalf of the Government? |
| 23 | MS. ALSWORTH:  Melanie Alsworth, Your Honor, for the |
| 24 | Government. |
| 25 | THE COURT:  All right. |

1    Let me first indicate that we're here on both these.

2  It's one case, but it's two different matters.  And I

3  understand there's already been a preliminary hearing set.

4    So I remind each, no matter what happens today, you're

5  ordered to appear at the date of that preliminary hearing on

6  the 10th at 1:30.  It's before Judge Boone, but it may be that

7  another Judge, as myself, because it's a conflict for Judge

8  Boone, will be standing in on his behalf at that time.

9    So I have received with regard to both defendants, but

10 we're referring now to Mr. Foster, a Pretrial Services report

11 and recommendation.

12    I trust both of you have received it, had an

13 opportunity to read and consider it, is that correct?

14    MR. LITMAN:  Yes, Your Honor.

15    THE COURT:  All right.  I'd, first of all, like to

16 hear from the Government and then, Mr. Litman, from you, and

17 then you may have rebuttal to each other's arguments and

18 certainly, I will entertain those, as well.

19    And finally, I understand that both of you received a

20 copy of the complaint.  Because the Court does consider the (g)

21 factors, which are the facts of the current arrest.

22    So Mr. -- well, let's hear from the Government.

23    Ms. Alsworth, if you wish to, Alsworth, if you wish to

24 proceed?

25    MS. ALSWORTH:  Yes, Your Honor.

1          The Government is seeking detention of Mr. Foster in

2     this matter on the basis of flight and safety issues to the

3     community.

4          The Court may be aware that on March 26th of last year

5     there were, there was a criminal complaint that was issued for

6     the arrest of Mr. Foster.  Mr. Foster received word that there

7     was possibly an arrest warrant for him and that other

8     individuals in the case were being arrested and he evaded

9     contact with law enforcement for a period of time, most of the

10    afternoon to be exact, and also broke into his home after a

11    search warrant was executed there in an apparent attempt, to

12    law enforcement, to evade contact with law enforcement and

13    possibly flee.

14         That being said, he did eventually make contact with a

15    law enforcement officer and surrender himself about 5:30, I

16    believe, last Thursday afternoon.

17         As far as the danger is concerned, you can see from

18    the Pretrial Services report that Mr. Foster has several

19    arrests.  Granted, they are somewhat dated, but they are

20    narcotics related and he also has a conviction, at least one

21    conviction for being a felon in possession of a firearm.

22         I bring that to the Court's attention because when we

23    executed the search warrant at his residence on March 26th

24    there was a firearm found in his house.  It was a .45 Compact

25    that was found in a safe and his girlfriend, Ms. Donabedian,

1  said that the firearm did not belong to her and she didn't have

2  access to the safe.

3      There are also some other issues that will come to the

4  attention of defense counsel at some point in this case

5  involving Mr. Foster's acquisition of firearms that he provided

6  to another person in the last several months.

7      So there are serious issues here concerning community

8  safety.

9      The other thing I would like to point out is that

10  Mr. Foster was arrested in Merced County on January 4th of this

11  year for possession with intent to sell marijuana.  He had

12  approximately six pounds on him at the time.  And so now here

13  we are, you know, with these pending charges for conspiracy to

14  distribute and also delivering narcotics to Federal Express.

15      And I would ask for those reasons that Mr. Foster be

16  detained and that there aren't any conditions or a combination

17  thereof that could reasonably ensure that he appears in court

18  in the future and that the community is safe from his criminal

19  acts.

20      THE COURT:  Can you -- if you would, if you looked on

21  the criminal complaint, if you have it in your possession.  You

22  can certainly -- I can read it aloud if you don't just because

23  -- the Court is concerned about the sophistication of some of

24  his trafficking.  And Paragraph 13 on Page 5 does lend some, a

25  lot of concern to the Court.

```
 1            Can you tell me a little bit more about that, if
 2    you're --
 3            MS. ALSWORTH:  Yes, sir, I do have it.
 4            THE COURT:  -- you're prepared on that?
 5            MS. ALSWORTH:  May I, may I take a look, a second --
 6            THE COURT:  Sure.
 7            MS. ALSWORTH:  -- to look at it?
 8            You said, you said Paragraph 13?
 9            THE COURT:  Correct, in the complaint.
10            MS. ALSWORTH:  Yes, sir.
11            Paragraph 13 references one of a number of
12    conversations that were intercepted over Mr. Foster's
13    telephones that he was using, indicating that he was shipping
14    marijuana out of state.  There's a customer in Albuquerque, New
15    Mexico that he was sending marijuana to after he acquired it
16    from Northern California, what, or the Redding, California
17    area.  To me, that's Northern California.  I guess it's still
18    the Eastern District.
19            And, in fact, the count, Count 4 that charges use of a
20    communication facility to commit a drug offense, there was
21    actually a package that was dropped off at FedEx facility by
22    Mr. Foster and Ms. Ybarra that was going to an individual in
23    New Mexico and it contained marijuana.
24            THE COURT:  And when was that?  What date was that?
25            MS. ALSWORTH:  That was --
```

1          THE COURT:  This year?

2          MS. ALSWORTH:  It was this year.  It was February 7th,

3    actually.

4          THE COURT:  All right.

5          And with regard to the December 6th event that's

6    mentioned on Paragraph 11, is that what you're referring to?

7    That's where the source of the marijuana was coming from,

8    from --

9          MS. ALSWORTH:  Yes.  The source of the marijuana

10   actually lived in Shasta Lake, which is in the Redding,

11   California area.

12         THE COURT:  Okay.

13         MS. ALSWORTH:  And if the Court's interested, there

14   was a search warrant executed at his residence, as well.  It

15   was an indoor marijuana grow and there were over 200 marijuana

16   plants that were seized at that location.

17         THE COURT:  And you indicated there, there was a more

18   recent arrest.  It was a, involving state officials or county

19   officials.

20         Do we know what status that that is in?

21         MS. ALSWORTH:  I don't know at this time, Your Honor.

22   We have not yet had an opportunity to follow up.  I believe in

23   February Mr. Foster was supposed to appear and at that time the

24   charges had not been formally filed by the DA's office in

25   Merced County.

1          THE COURT:  All right.  And that was the vehicle stop

2     you indicated where there was a number of marijuana packages?

3          MS. ALSWORTH:  That's correct.

4          THE COURT:  All right.

5          And your issue of concern, you've outlined.  Is there

6     anything further with regard to that?  You said the firearm

7     that was located in the safe at the residence, that was

8     obviously of concern.  Then the fact that he does have a prior

9     felony for possession of a firearm by a felon in '95 was of

10    concern, obviously, as well.

11         Anything further on firearms issues?

12         MS. ALSWORTH:  His ability to acquire firearms, Your

13    Honor, quite frankly, is a concern.

14         THE COURT:  All right.

15         Mr. Litman?

16         MR. LITMAN:  Yes, Your Honor.

17         I would ask the Court to follow Mr. Olson's report.  I

18    believe that Mr. Olson has factored in the, the charges, the

19    information in the, in the complaint in formulating conditions

20    which he believes and which I would submit are appropriate in

21    this case, considering the background of my client and, also,

22    the nature of the charges against him.

23         The information regarding the arrest on the 26th, the

24    information I have is, is different from that that was shared

25    with the Court.  My understanding is that an FBI agent

telephoned my client's employer, obtained information regarding

where he was going to be in his position with the messenger

service contacted my client and told him who he was and that my

client had some reservations about being arrested in front of

his children, agreed to meet the officer at a specified

location and went to that location and was arrested without

incident.  In other words, he didn't have any weapons.  He

didn't resist the officers and I think the fact that he drives

to a location and meets with the FBI, coupled with his absence

of any prior failures to appear, you know, I'll acknowledge

that there have been a number of arrests.  The Court can see

that there was a proceeding where he was acquitted, but there's

nothing in here that he's ever failed to appear in court when,

when directed to do so.

He has a place to live.  The residence where he has

been residing for the last several years is available to him.

Ms. Donabedian, his, the person he's in a long-term

relationship with that's been, my understanding is,

approximately eight years, is willing to move with her parents

so that he would have a residence in which to live.

There's a third-party custodian and I believe, coupled

with the electronic monitoring condition that is, that is

recommended, that, that my client would neither be a flight

risk nor a danger.

And I would -- I'm sure the Court is aware that the

1  conviction that is mentioned was 20 years ago and I believe is

2  probably, under the guidelines, is probably washed out because

3  it's so old.  But clearly, my client is a different person than

4  he was 20 years ago.

5          The Court could see that he's working, that he was

6  having regular contact with his father, with his aunt.

7          And so I would ask the Court to follow Mr. Olson's

8  recommendation.

9          THE COURT:  All right, Mr. Litman.

10          MR. LITMAN:  One other --

11          THE COURT:  Oh.

12          MR. LITMAN:  My understanding -- I'm sorry.  One, one

13  other --

14          THE COURT:  Oh, sure.

15          MR. LITMAN:  -- issue.

16          It's my understanding that as far as the situation in

17  Merced, that he is on bail in that, on that case, just so the

18  Court knows.

19          THE COURT:  And that was my understanding, as well.

20          Ms. Alsworth?

21          MS. ALSWORTH:  Your Honor, I don't have anything to

22  add.  Thank you.

23          THE COURT:  All right.

24          Matter submitted?

25          MR. LITMAN:  Yes, Your Honor.

1          THE COURT:  All right.

2          Well, I appreciate each's input.  I have read in

3   detail the criminal complaint and, also, Mr. Olson's

4   recommendation, which certainly the Court gives all due respect

5   to because he's a tremendous Pretrial Services officer.  I

6   think someone, you know, sometimes it's better be in custody

7   than be under his supervision 'cause he's tough.

8          But in any event, I do find for, under both standards,

9   the clear and convincing standard on danger and the

10  preponderance standard on flight.  Both show and demonstrate to

11  the Court that he should remain in custody on both grounds.

12         And let me, you know, recite what I've already cited

13  in my list of concerns when I first addressed both of you, but

14  especially Ms. Alsworth, is that I'm concerned about, first of

15  all, the sophistication of his operation where the marijuana is

16  coming out of areas in Northern California, but still within

17  the Eastern District, Redding, Shasta, etc., and then shipping

18  this material to a place in Albuquerque, New Mexico.

19         And this is following a number of, a history of police

20  contacts, some resulting in convictions.  And there was a

21  statement made that he was acquitted.  He was not acquitted of

22  the Oregon, but the case was simply reversed on appeal, which

23  doesn't mean that you're acquitted.  It just means that the

24  Government has an opportunity, generally, in most cases to

25  retry them, ultimately.

1          But the fact of the matter is is that there's this

2   continual and consistent theme throughout Mr. Foster's history

3   of repeated violations of the law and repeated, you know, being

4   found in conspiracies to sell, or doing it alone, to sell and

5   distribute drugs.

6          And the fact that even though the prior firearm

7   conviction was in '95, if you look in '92 and '94 there was in

8   '92 a conviction for carrying -- and CCW is concealed weapon --

9   carrying a concealed weapon in a vehicle and that was a loaded

10  firearm in public and then there was another one in '94 that

11  was ultimately dismissed.

12         And then there's now the most recent location of a

13  firearm in a safe by two people, Ms. Donabedian and the

14  defendant, who inhabited the same location.  Ms. Donabedian

15  says that she did not have access to the safe and did not know

16  what was in it, which leaves only one other person to have

17  access to the safe and its contents and there's a firearm

18  inside.

19         So the Court has great concerns about that and,

20  therefore, the finding of danger.

21         And certainly, I wish to give credit to the proposed

22  guardian who wishes to come in.  I certainly would credit her

23  and would think that that would be a good place if it wasn't

24  for Mr. Foster's background in crime, which gives the Court

25  concern.

1      On the flight issue, you know, even though it's a

2  preponderance standard, I feel it's still there.  It's not the

3  highest standard, but the fact that now he has so many weighty,

4  you know, he's got the Merced case that's pending.  We don't

5  know what's going to happen with that, but still, he's out on

6  corporate surety there.  And so there's lots of incentive now

7  not to abide by court orders.

8      And flight doesn't mean that I anticipate he's going

9  to fly off to some foreign country and hide himself out, but

10  the fact of whether or not he's going to abide by the orders of

11  this Court to make future appearances, etc., that's what I'm

12  concerned about.

13      So on all of those grounds and I order that he remain

14  detained as both a flight and a danger.

15      And as I previously pointed out, he does have a

16  preliminary hearing date, so he's to remain detained under the

17  care, custody, and control of the United States Marshal and to

18  make all future court appearances.

19      Mr. Litman, anything further today?

20      MR. LITMAN:  Well --

21      THE COURT:  All right.

22      Good luck, Mr. Foster.

23      MR. FOSTER:  It's not -- I guess it's not my decision

24  to make, Your Honor, but --

25      THE COURT:  All right.

1          Turning now to Rafael Guzman.

2          Mr. Lee?

3          MR. LEE:  Thank you, Your Honor.  Again, Charles Lee.

4   I'm specially appearing for Peggy Sasso on behalf of

5   Mr. Guzman.  He's present in custody.

6          THE COURT:  All right.  And I think you previously

7   acknowledged that you do have a Pretrial Services report and

8   recommendation.  Again, I've read and considered that as well,

9   as I'm going to make referrals.

10         So let me point out what I am concerned about and I

11  would like, first of all, let's hear from the Government and

12  then from, from you, and then each of you provided -- the Court

13  will provide you with an opportunity for rebuttal.

14         But obviously, the criminal history is of great

15  concern to the Court; the fact that there's a prior two FTAs.

16  Even though they're traffic appearances, they're still a

17  definite sign to the Court that promises to appear and then

18  when he doesn't appear, you can say, "Well, it is, it is an

19  infraction," but that still shows a frame of mind; and then

20  being an active member of the Bulldogs Criminals street gang,

21  even though he says he's not, not actively involved currently,

22  but is a member and associates with them gives the Court great

23  concern, as well.  And then, of course, his criminal history

24  which you can see, as it is elaborated upon in the Pretrial

25  Services report.

1  And then in the complaint, which I have given further

2  concerns about, if you begin to talk about Mr. Guzman, but

3  obviously, it gives the Court great concern with the controlled

4  substances.  Mr. Guzman was arrested in Clovis in October of

5  2013, which is a little bit more than a year and some months

6  ago.  And I'm not sure -- and I was going to ask the Government

7  to elaborate on what they know has happened in that, although

8  the complaint does say disposition unknown.  And that was

9  subsequent to an execution of a search warrant at a prior

10  residence of his, which is outlined on Page 6, Paragraph 15.

11  But also, with regard to the coded language that he's

12  using with Keith Foster for the different types of heroin and

13  also, the coded language for what is "the ticket," which means

14  that he certainly has sophistication in the area of clandestine

15  drug sales and --

16  So I have concerns about that in light of his criminal

17  history record, which does show a prior commitment to Wasco

18  State Prison back in 2000, which would be, one would think,

19  should be a wake-up call about the effects of criminal

20  activity.

21  And then the 2008 misdemeanors and then again that

22  2013 arrest and he was released on a corporate surety.

23  So let me ask the Government to, first of all, outline

24  anything further or discuss anything further and if you have

25  any further information about what has happening in that arrest

1  out of Clovis back in 2013.

2          MS. ALSWORTH:  Yes, Your Honor.  Melanie Alsworth

3  appearing for the Government.

4          The, the Court has touched on many of the Government's

5  concerns.  I will point out that he has been charged with a

6  controlled substance offense that carries a maximum that is

7  more than ten years imprisonment.

8          That being said, he, as the Court pointed out, he does

9  have two prior failure to appears.  He is unemployed, although

10  Mr. Lee says he could get a job if he was to be released.  And

11  he does have a conviction for providing false identification to

12  peace officers.

13          As far as the 2013 arrest is concerned, I received a

14  phone call from the Assistant District Attorney that's handling

15  that case and he indicated that it is set for trial.  He left a

16  phone message and I haven't spoken with him directly, but I

17  understand that it's coming up in the next several months, this

18  particular case.

19          THE COURT:  All right.

20          And anything further in the development of discovery,

21  etc., that involves this particular current event other than

22  what is outlined in Paragraph 16 on Page 6?  More -- do you

23  have any more (g) factor material?

24          MS. ALSWORTH:  No, Your Honor.  I think that covers

25  it.

1          THE COURT:  All right.

2          Mr. Lee?

3          MR. LEE:  Thank you, Your Honor.

4          Your Honor, first, I'd like to address some of the

5    flight issues the Court has brought up.  I know the Court's

6    read the report.  I'd just like to emphasize --

7          THE COURT:  Sure.

8          MR. LEE:  -- Mr. Guzman's strong ties to the

9    community.  He was born in the Coalinga area.  He's lived

10   either in Coalinga or Fresno his entire life.  He has a number

11   of family members in court today.  Present are two of his

12   sisters, his brother-in-law, who is a proposed third-party

13   custodian.

14         THE COURT:  Okay.

15         MR. LEE:  He has several nieces and nephews, but also,

16   two of his daughters who reside with him that he's had sole

17   custody for for about the last decade.

18         Significantly, Your Honor, for the Court's

19   edification, his son is not here.  His son is at Juvenile Hall

20   today.  What had occurred was when Mr. Guzman was arrested on

21   the instant case it was done in front of his son's school and

22   that was, obviously, a very traumatic incident for his son.

23   There was a interaction between his son and school

24   administrators and it resulted in him being taken to Juvenile

25   Hall and, and the son has court on Wednesday.

1    I bring this up because Mr. Guzman, being the, having

2   sole custody for his children for quite a long time, is very

3   invested in his family.  He has every incentive to follow

4   through on this to be there for his children.  He obviously is

5   incredibly concerned about his son.  When he first came into

6   custody he was frantic.  He didn't know what had happened.  All

7   he had known is that his son had not come home from school.  We

8   were fortunate to be able to figure out where he was and

9   provide that information.

10    But Mr. Guzman has every intention of staying here, of

11   continuing to assist his children and be there for them.

12    He -- so again, he has substantial ties to the

13   community.  He's lived here his entire life.

14    And, Your Honor, also, in terms of the employment, if

15   I may provide some documentation to the Court.

16    THE COURT:  Sure.

17    MR. LEE:  Our investigator --

18    (Documentation handed to the Court)

19    THE COURT:  Thank you.

20    MR. LEE:  -- contacted this auto job on Blackstone.

21   The owners confirmed that they have known Mr. Guzman for a

22   number of years.  They vouch for his character.  He has done

23   work for them in the past and he is lined up to do work in the

24   future.  So this -- he does have employment prospects.  He is

25   desirous of continuing to work and provide for his family.

1    So I know the Court is concerned about the failures to

2  appear on, on the traffic matters and I would submit to the

3  Court this is Federal Court.  The consequences here for any

4  failure to appears are -- is -- is night and day from what has

5  occurred on the infractions.  As the Court's aware, you fail to

6  appear on a, on a traffic infraction it puts a hold on your

7  license, which is incredibly different than failing to appear

8  in Federal Court when you then have the Marshals coming and

9  looking for you.  Mr. Guzman appreciates that and he

10  understands the gravity of his situation and is committed to

11  appearing at all future court dates.

12    Your Honor, I know, to touch upon a couple other

13  things the Court has concerns about and, and moving into the

14  danger realm, the Court is concerned about the, the association

15  with the Bulldogs.  Mr. Guzman did time in state and was

16  released in 2003.  He informs me since that time he has not

17  been active on the streets with the Bulldogs and that coincides

18  with a time period right around the time -- his kids were

19  starting to get older and he made the decision then to not

20  actively participate.

21    Given his past, given the tattoos, the Court can see,

22  obviously when he's in custody for protective reasons he does

23  affiliate with the Bulldogs, but I think the Court can see from

24  '03 there have been no gang-related arrests or charges.  None

25  of the criminal history suggests that any of the offenses were

1    done to support the gang.  There's no charges or inferences

2    that any of those charges were gang related.

3        So the Court obviously has concerns that he has a

4    state charge pending and he has hired private counsel.  He

5    hired Richard Cenci to appear for him in state court.  It's my

6    understanding that there has been litigation.  There was a

7    suppression motion filed.  Some of the evidence were

8    suppressed.  Mr. Cenci is confident in the outcome of the case,

9    but it's still unresolved.  He was on bail.  He's been making

10   all his court appearances.

11       So I think the Court can see that recency, that this

12   was ongoing, that he was going to all his court dates.  Yes, he

13   missed appearing on the traffic ticket, but on the, the items

14   of more gravity, the state court felony, he's on bond, he hired

15   private counsel, he's been taking care of it, he's been making

16   all his court appearances.

17       So I think the Court can take confidence in the

18   recency that on the important state matter, he's been making

19   all his court appearances.

20       I would note to the Court that I think this is a tough

21   case and I would cite United States v. Townsend at 897 F.2d

22   989, that doubts regarding the propriety of release are to be

23   resolved in favor of defendants.  So in a close case Townsend

24   tells us federal law has traditionally provided a person

25   arrested on a non-capital offense shall be admitted to bail and

1  that only in the rare cases should release be denied.

2         So even if the Court finds there are danger factors or

3  flight factors, we should be able to impose terms and

4  conditions that could reasonably assure, not guarantee, just

5  reasonably assure his future appearances as well as the safety

6  of the community.

7         And I would remind the Court that under the Bail

8  Reform Act that nothing in the Bail Reform Act shall be

9  construed as modifying or limiting the presumption of

10  innocence.  That's at 3142(j).  And that the defendant is,

11  after all, constitutionally presumed to be innocent pending

12  trial and innocence can only raise an inference of innocence,

13  not of guilt.  And that's United States v. Scott -- that's from

14  the Ninth Circuit -- 450 F.3d 863.

15         So even though Mr. Guzman has this state case, he's

16  presumed innocent and that presumption of innocence stays with

17  him.  So as the Ninth Circuit said, this Court can only draw a

18  presumption of innocence, an inference of innocence from that

19  case.  And he's been making all his court appearances.

20         The Pretrial has proposed a number of conditions,

21  which I think can satisfy the detention, the factors under the

22  Bail Reform Act.  One of the proposed conditions would be the

23  curfew, the electronic monitoring so we would know he's at his

24  home when he's supposed to be.  We have a third-party

25  custodian, who's here present in court, who understands the

1   responsibilities and would assure the Court that he would

2   follow all the responsibilities.

3          We also have a referral to the Better Choices Program.

4   That program is structured so Mr. Guzman would meet his

5   Pretrial Services officer once a week.  He would come to court

6   once a month.  So there would be a lot of supervision, a lot of

7   interaction with Pretrial and the courts to make sure he was

8   doing everything he was supposed to do.

9          Included in the Better Choices is enhanced services,

10  enhanced referrals to programs, to MRT classes, to, and also to

11  mental health services.  Mr. Guzman does suffer from anxiety.

12  Obviously, this is a stressful situation.  He was under the

13  care of a doctor and prescribed medications.  As of today, at

14  the Fresno County Jail, he's put in the request to be seen.  He

15  has not been seen and he is not receiving his medications.

16         So, so again, Your Honor, I believe Pretrial has

17  initiated, or offered a number of very strict conditions that I

18  believe are sufficient to reasonably assure the Court the

19  safety of the community as well as, as to vitiate any flight

20  risk.

21         THE COURT:  All right.  Thank you.  Well said.

22         Ms. Alsworth, anything further?

23         MS. ALSWORTH:  Nothing in response, Your Honor.

24         THE COURT:  All right.

25         Matter submitted?

1        MS. ALSWORTH:  It is.

2        THE COURT:  All right.  Let me just address two, two

3   responses that I have to the arguments that have been put

4   forth.  And they're -- they're -- they are concerns that the

5   Court has.  And that is it is true and certainly, Mr. Lee, you

6   point out that, you know, they are traffic offenses FTAs, but

7   the Court looks for themes in -- in your -- in one's history to

8   determine, you know, is there a pattern here.  And when you go

9   back to 1997 there was a false I.D. to an officer, which, you

10   know, is, you know, is some degree of substantiation in one's

11   willingness to not obey authority and to elude arrest or

12   detention, or what have you.

13        And that goes -- and that theme carries over to

14   whether or not the Court feels confident that one is likely to

15   obey court orders and when you go down to the 2007 event with

16   the outcome unknown, there's a allegation there of a disobeying

17   a court order, which, again, gives the Court a great deal of

18   concern with regard to one's willingness to follow not only the

19   Court's orders, but Pretrial Services being an arm of the

20   Court, whether or not Mr. Guzman is serious about following

21   court orders.

22        And finally, with regard to the danger element,

23   something that is of great concern to the Court is that the

24   arrest that's mentioned by both of you, which is the last entry

25   on the criminal history background that appears on Page 4,

1    dated October 18th of 2013, certainly at that point in time

2    Mr. Guzman knew that whether those charges are provable, not

3    provable, whether or not there's been motions to suppress and

4    some of the evidence has been taken out, one, I think, after

5    they are arrested and knowing that they're facing criminal

6    charges would be abiding by every possible rule, law of a

7    state, local, or federal design to stay out of trouble so that

8    those charges could be, you know, his, his release on bond

9    would not be surrendered or put at risk by new criminal

10   charges.

11          But here, the latest incident is a wire intercept on

12   December the 24th, 2014, long after the arrest and I would

13   assume long after charges had been brought in the Clovis

14   incident and here we are on the wire again dealing, allegedly,

15   a (g) factor consideration, with controlled substances, which

16   lends itself to the Court to say that even when Mr. Guzman has

17   charges pending and he knows there's a lot of at risk and he's

18   out on a corporate surety, to again be allegedly involved in

19   wiretap, dealing in code for the sale of heroin demonstrates to

20   the Court that even when one is facing current criminal

21   charges, they have no fear about involving themselves, again.

22          And, therefore, I do find by the clear and convincing

23   evidence standard that he does pose a danger and under the

24   preponderance standard flight based upon the concerns about the

25   disobeying a court order in '07, the false I.D. to the peace

1  officer in '97, even though it's quite dated, and the fact that

2  in 2013 not one incident of a failure to appear on traffic

3  citations, but two incidents of the same.

4          So, therefore, I do find that he should remain in the

5  care, custody, and control of the United States Marshal.

6          And again, I remind him that he is to make all future

7  court appearances.

8          And I thank those in attendance today.  Obviously,

9  these are tough decisions for the Court.  They're not easy and

10  certainly, there are good reasons on each side and each side

11  has argued their case admirably, Mr. Litman on behalf of

12  Mr. Foster and certainly Mr. Lee on behalf of Mr. Guzman, but

13  the Court has found, for the reasons stated in the record, for

14  its detention order.

15          All right.  Is there anything further the Court can

16  address before we adjourn for the afternoon?

17          MS. ALSWORTH:  No, Your Honor.

18          MR. LEE:  Wanted to confirm.

19          THE COURT:  Sure.

20          MR. LEE:  April 10th is the prelim date?

21          Very good.  Thank you.

22          THE COURT:  I have it as April 10th at 1:30.

23          And I will ask the Marshals to look into the, to check

24  with the jail to find out why those medications have not been

25  delivered to your client.

1          MR. LEE:  Very good.  Thank you, Your Honor.

2          THE COURT:  Okay.  Thank you.

3          All right.  We'll stand in adjournment.

4      (Proceedings concluded at 2:07 p.m.)

5

6

7

8

9

10

11

12                          CERTIFICATE

13          I, court approved transcriber, certify that the

14     foregoing is a correct transcript from the official electronic

15     sound recording of the proceedings in the above-entitled

16     matter.

17     /s/ *Janice Russell*                    April 6, 2014

18     Janice Russell, Transcriber                 Date

19

20

21

22

23

24

25