UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. ANTHONY W. ISHII

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) 1:15-cr-104  AWI-SKO |
| Plaintiff, | ) |
| | ) JURY TRIAL, DAY 1 |
| vs. | ) |
| | ) Vol. 1, pgs. 1 To 200. |
| KEITH FOSTER, | ) |
| | ) Sealed pages 89 to 95 were |
| Defendant. | ) filed separately under seal. |
| ———————————————— | ) |

Fresno, California                    Tuesday, May 9, 2017


REPORTER'S TRANSCRIPT OF PROCEEDINGS

**APPEARANCES OF COUNSEL**:

For the Government:        **DAWRENCE W. RICE, JR.**
                           **MELANIE L. ALSWORTH**
                           Assistant U.S. Attorneys
                           2500 Tulare Street, Rm. 4401
                           Fresno, California  93721

For the Defendant:         LAW OFFICES OF E. MARSHALL
                           HODGKINS III
                           1186 W. Shaw, Suite 103
                           Fresno, CA 93711
                           BY:  **E. MARSHALL HODGKINS III**


REPORTED BY:  PEGGY J. CRAWFORD, RDR, CRR, Official Reporter


Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

1    Tuesday, May 9, 2017                    Fresno, California

2    8:30 a.m.

3        (The following proceedings were had outside the presence

4         of the jury, to wit:)

5            THE CLERK:  Please be seated.  Court calls item

6    1:15-CR-104, United States versus Keith Foster.

7            MR. RICE:  Duce Rice and Melanie Alsworth for the

8    United States, your Honor.

9            Also with us at counsel table, Sarah Cooksey, who is

10   a paralegal, Sherri Reynolds, who is the ATF case agent, and

11   also in the courtroom with us is Jeremy Crider, who is the FBI

12   case agent.

13           MR. HODGKINS:  Your Honor, Marshall Hodgkins, with

14   Mr. Foster, who is present with me here at the counsel table.

15           THE COURT:  All right.  Good morning.  We are

16   convening outside the presence of the jury panel before we

17   have the panel come in.

18           Couple things I want to cover with you folks, and if

19   you have any questions or anything like that, you can

20   certainly raise them with the Court.

21           First of all, are there any legal issues that we need

22   to be aware of, either that we need to deal with before the

23   panel comes in or during jury selection or just at least a

24   heads up?

25           Plaintiff's side, anything?

1          MR. RICE:  No, your Honor.

2          THE COURT:  Defense side, anything?

3          MR. HODGKINS:  No.

4          THE COURT:  All right.  Just logistically, the way we

5    will proceed, when the jury panel comes in, I think we have

6    about 56 folks coming in.

7          Now, as you are probably aware, because of the number

8    of prospective jurors, it will probably fill up most of the

9    courtroom audience area.

10         We have set up a video feed, where the public will be

11   watching the jury selection.  Obviously, once we have the jury

12   selected and we no longer need the remaining panel members in,

13   of course, the public will be welcomed back into the courtroom

14   itself.  So it is only for the jury selection that,

15   unfortunately, we will have to use the overflow courtroom.

16         Now, when the panel comes in, I will make

17   introductions.  I will introduce myself, Ms. Crawford, the

18   court reporter, Ms. Kusamura, the courtroom deputy, just to

19   give an idea of their role.  I will introduce anyone who is at

20   the counsel table when the panel comes in.

21         And then I will go ahead and read off the witness

22   list.  Part of the reason that I make the introductions and

23   read the witness lists, of course, is to see if any jury panel

24   member knows anyone who might be involved with the trial.

25         I did receive the government's witness list and I

1    will go ahead and read those names.  I generally don't read

2    titles, I just read names.

3          If a prospective juror thinks that they know someone,

4    but they are not sure, then I might indicate what their title

5    is, and that might help the prospective juror determine

6    whether or not they might know the person.

7          Let me ask, Mr. Hodgkins, are there any defense

8    witnesses that you wish me to include just to see whether or

9    not the juror might know someone involved in the trial?

10         MR. HODGKINS:  And I was just thinking as you were

11   doing that.  I have looked at the prosecution witness list,

12   and I mean no disrespect, but it is bare-bones.

13         And having said that, there are a lot of other

14   interviews that were conducted by law enforcement in this

15   investigation involving people, some of which are quite

16   renowned in this area.  If I may, for example, Jerry Dyer,

17   okay.  A couple of Deputy Chiefs of Police.  I mean they may,

18   and probably are, going to play into all of this.

19         And I would suggest that we include a lot more names

20   like that.  I mean I'm not making any decision at this second

21   regarding my witnesses, but having said that, I just think

22   people -- and Chief Dyer just sticks in my mind as somebody

23   who is quite well known.  And I think that those names, such

24   as that, should be included just for caution sake.

25         THE COURT:  Okay.  Well, after this session, I will

1   take a quick break.  I will come back.  If there is anyone you

2   wish to add to the witness list, I will go ahead and do that.

3         But it is very possible that a number of names, some

4   that might be -- and I will use the general term, "prominent"

5   enough that people might be aware of them doesn't necessarily

6   require them to be disclosed on the witness list.

7         Obviously, if, during the course of the trial, a

8   juror indicates that they know or are acquainted with someone

9   who is mentioned by name, but is not a witness, and that that

10  might affect their service as a juror, then obviously, we will

11  do an inquiry on that.

12        But I will obviously give both sides an opportunity,

13  if you wish, to supplement the list that I will read to the

14  jury which I just tell them are prospective witnesses.  I will

15  certainly add them, but I would not necessarily tend to add

16  people simply because they might be mentioned by name during

17  the course of the trial.

18        MR. RICE:  Your Honor, for the record, the government

19  has not received a witness list from the defense.

20        THE COURT:  Okay.  The defense is not required to

21  submit a witness list.  The only complication, of course,

22  comes if the defense or the government calls a witness that

23  has not been disclosed to the jury panel during the course of

24  the trial and then a juror indicates they know that person,

25  and that would create an issue with respect to their ability

1   to remain as a juror.  That's the only -- that's the main down

2   side for nondisclosure.

3        Okay.  At any rate, so I will go ahead and read the,

4   what's been entitled the "Government's Witness List" and then

5   any other additional prospective witnesses that, in good

6   faith, either side feels might be called during the course of

7   the trial.

8        Now, I will exclude witnesses, so both sides make

9   sure that any witness and prospective witness is not present

10  in the courtroom during the course of the testimony of another

11  witness.  There are some exceptions for expert witnesses, but

12  that just needs to be discussed between counsel to see if

13  there are any objections to that.

14       Now, after a witness has completed his or her

15  testimony, I will turn to both sides and ask if either party

16  wishes this witness to remain subject to recall.

17       If you do, then just let me know, and then I will

18  leave it to counsel to meet and confer, to keep in touch with

19  that witness, to determine what day and time that witness

20  should come back for further testimony.

21       If both sides agree that neither side wishes to have

22  the witness remain subject to recall, that witness is excused

23  from this trial.  If they are under subpoena, they are free

24  from the subpoena.  If they wish, they can remain in the

25  courtroom as a member of the public.  So just keep that in

1   mind.

2          Okay.  So again, back to the basic procedure, then

3   the jury panel is in, they are seated in the audience here.  I

4   have made the introductions.  I have read the witness list.  I

5   have indicated to the jury that part of the reason, the main

6   reason I have made the introductions and read the witness list

7   is to see whether or not they know anyone who might be

8   involved in the trial itself.

9          After that, I will read a neutral statement to them.

10  Now, I did receive a document entitled, "Government's Proposed

11  Voir Dire Questions and Neutral Statement of the Case," and

12  there is a one-paragraph neutral statement of the case.

13         Let me ask, Mr. Hodgkins, do you have any questions,

14  concerns, or thoughts regarding whether or not that is the

15  statement that I should read to the jury panel?

16         And again, the only reason I read a statement of the

17  case is twofold.  One, so the jury understands what kind of a

18  case it is, and two, so that they understand why we might be

19  asking certain questions on voir dire.

20         I do emphasize to the jury panel that it is not

21  evidence in the case and it is not to be taken as evidence.

22         MR. HODGKINS:  In answer to your question, no.  I

23  have no objection at all.

24         THE COURT:  Okay.  So I will read that brief

25  statement to the jury panel, again, with that cautionary

1   admonition regarding why it is being read to them.

2           Now, if I can get an updated time estimate in terms

3   of numbers of days.  Now, this is important because this is

4   what I'm going to tell the jury panel that their time

5   commitment might be.

6           We obviously have at the end of the month the

7   Memorial Day weekend, so that would be a short week if we

8   spill over into the fourth week, but in terms of numbers of

9   days, and I'm not limiting you to time, but again, this is to

10  let the jury know what their time commitment is so that if

11  anyone is not able to serve beyond X days, we would know that

12  right at the outset.

13          So I don't know if you had a chance to meet and

14  confer on just an updated time estimate in terms of numbers of

15  days this trial might take.

16          MR. HODGKINS:  Your Honor, as I said during our trial

17  confirmation, I still believe 12 court days, three court

18  weeks.

19          MR. RICE:  I will defer to Mr. Hodgkins.

20          THE COURT:  All right.  Now, okay.  Added to that

21  would be jury selection, which we will do today, hopefully get

22  resolved today.  Opening statements, preliminary jury

23  instructions, closing arguments, and then time for the jury to

24  deliberate.

25          So on the 12 court days, I don't know if the thought

1   was, okay, that includes everything, including everything

2   starting from today's jury selection to jury deliberations, or

3   should we add a couple of days onto that?

4          Which is important, because beyond 12 court days

5   would put us into that Memorial Day weekend and we would be

6   convening that week on May 31st and then June 1st and 2nd.

7          I don't know if any of the prospective jurors might

8   have lengthy Memorial Day weekend plans, but that's something

9   we will just have to deal with during jury selection.

10          But do you think I should add a couple of days just

11   in case in terms of the other aspects of the trial?

12          MR. HODGKINS:  Your Honor, my guesstimate of three

13   court weeks, 12 court days, included jury selection, opening

14   statements, closing arguments.  It, of course, did not include

15   jury deliberation.  I would prefer to overestimate a little

16   bit rather than underestimate.

17          THE COURT:  Okay.  All right.  That's fine.  So I

18   will tell them it will be maybe 12 to 14 days, which would

19   spill over into the Memorial Day weekend.

20          I will tell them, of course, we are not in session on

21   Memorial Day, and in fact, we would not reconvene until

22   Wednesday, May the 31st.

23          And then we will see if that has any impact on

24   prospective jurors' ability to serve for the duration of the

25   trial.

1          All right.  Now, with respect to jury selection, you

2    are both probably familiar with this, but I will go through it

3    with you.  When the panel comes in, Ms. Kusamura is going to

4    draw 18 names.  So there will be six in the top row, one

5    through six; six in the front row, which would be seven

6    through 12; and then in front of the jury box, which is the

7    third row, would be 13 through 18.

8          We will be conducting our voir dire of all 18.  If

9    any of the 18 are excused for cause, we will just fill that

10   seat.  So, for example, if Prospective Juror Number 1 is

11   excused for cause, Ms. Kusamura will just call a name to fill

12   that seat.  I won't have Number 2 move over, et cetera,

13   because that will really mess up our seating charts.

14         So I will go ahead and conduct voir dire.  The

15   government submitted proposed voir dire questions.  I will

16   incorporate those in.

17         Once I'm done with voir dire, I will turn to counsel,

18   ask you if you have any followup questions that you want me to

19   ask.  Jot them down on a piece of paper, hand them up to me

20   and, if appropriate, I will ask those followup questions.

21         Once I'm done, I will give each side up to 30 minutes

22   to do your own individual voir dire.  I will watch the time,

23   and so when you are getting to 30 minutes, I will tell you,

24   "It is 30 minutes."

25         So, hopefully, between my voir dire, any followup

questions you might have and the questions that the government submitted, hopefully, I will cover most, if not all, of what you want to ask, but then that will give you the opportunity to focus in on a specific prospective juror or specific issues and elaborate on those.

Now, in terms of cause issues, normally what I will do on cause, if there are certain things that just are unavoidable, for example, a medical appointment that cannot be rescheduled, a pre-paid vacation that cannot be rescheduled without loss of everything, or something really extenuating, I might just go ahead and excuse them.

Otherwise, what I normally do, if it is okay with everyone, is sometimes I will just have counsel go into the hallway. I don't make any substantive decisions. It is just informally to ask you, get your take, without having the jury panel present, as to a particular prospective juror.

There might be a prospective juror, for example, that both of you agree should be excused for cause. I don't want you to say that in open court because then that puts the other side on the spot if they don't agree, but we can just do it informally.

That's the only time I go off the record, and it is not anything substantive. It is just to get your take on prospective jurors so that I don't waste a lot of time continuing to ask them questions when both of you are

1  agreeing, no, that prospective juror should be excused.

2       At the next break, we will put on the record whatever

3  was discussed off the record.  And so procedure-wise, I found

4  that easier than to send the whole jury panel out while we

5  discuss something that maybe is not of any great substance,

6  but we have lost 15 or 20 minutes trying to get the jury panel

7  back in.

8       Okay.  And then when we finish the questioning, I

9  will send the entire panel out for cause issues on the record.

10  And if there are any cause issues, obviously, those will be

11  raised in open court out of the presence of the jury.  That

12  includes any informal discussions we have.

13       If you say, "I have a cause issue," that's all I need

14  to know.  We will come back on the record and deal with it.

15       But once we have completed all the process, as far as

16  cause, and we have the 18 in the box, we will begin the

17  peremptory challenge stage.

18       Government will get six peremptory challenges.

19  Defense will get 10.  Basically, they are oral challenges, so

20  plaintiff's side will start first.  Just ask the Court to

21  thank and excuse, and then just give the seat number and the

22  name of the individual, and I will go ahead and excuse that

23  person.

24       The way it works, and I will go through it with you,

25  is, basically, I -- the sequence will be plaintiff's

1    peremptory, defense peremptory, plaintiff's peremptory, two

2    defense peremptories, plaintiff's peremptory, two defense

3    peremptories, et cetera, et cetera.

4         So that at the end, assuming you use all your

5    peremptories, you are down to basically the last plaintiff's

6    and the last defendant's peremptory.

7         Now, you can pass, if you wish, and you still will

8    retain all of your peremptory challenges remaining, but if the

9    other side passes behind you, then it is all over.

10         Okay.  So be careful about passing, whether it is

11   tactically or otherwise, because, again, if the other side

12   passes behind you, then that ends the peremptory challenge

13   proceeding, and the 12 in the box would be the jury.

14         Now, procedurally, then, when we do the peremptory

15   challenges, obviously, you will know who your next juror is

16   going to be because it is going to start with seat 13.

17         So when you do your peremptories, you are focusing on

18   the 12 in the box, not the six in the front row, not the 13

19   through 18.  You are looking to 12 in the box.

20         If you exercise a peremptory challenge to Prospective

21   Juror Number 1 in seat number 1, then the person in seat

22   number 13 will take that seat and so on.  So you know who your

23   next six jurors are going to be.

24         Now, assuming each side exercises a total of seven

25   peremptories, we will have used up the six in the bottom row,

1   and there will be an open seat in the jury box.

2          Ms. Kusamura then will call seven names.  The first

3   name she calls will fill the empty seat in the box.  The next

4   seat she calls will fill the front row.

5          Then we will conduct the voir dire of the new seven

6   only.  I will go ahead and ask questions.  I don't ask all of

7   the same questions verbatim because I do advise the jury panel

8   in the audience area to pay attention to the questions I ask,

9   the questions you ask, the answers that are given, et cetera.

10  So I will cover that.

11         Once I'm done on the new seven, again, if you have

12  any followup questions you want me to ask, just go ahead and

13  jot them down, hand them up to me.

14         After I'm done, each side will get ten additional

15  minutes or ten minutes to individualized voir dire of the new

16  seven.

17         And we will continue that process.  Once we have

18  dealt with the cause issues, we will resume peremptory

19  challenges.  Again, you have got to focus on the 12 in the

20  box, and then the new six in the front row would be the next

21  in order, starting with number 13, and then we will continue

22  on with the peremptory challenges.

23         And again, if we need to then go through another set,

24  we will do the same thing.  Call the new seven, et cetera,

25  with each side getting an additional ten minutes of voir dire.

1     Now, if you have any questions about the jury

2  selection process or even, you know, "How many peremptories do

3  I have left?  I lost count," you can always ask for an

4  unreported sidebar very quickly.

5     I think it is set up that if we need to do a sidebar

6  in the courtroom, I think Peggy has -- yes.  So if we need to

7  be on the record without excusing the jury panel or even

8  during the trial without excusing the jury, if we go sidebar,

9  there is actually a noise cancelling sort of a thing with the

10  jury so they can't hear us.

11     And then Peggy, or the court reporter who is here,

12  can actually pick it up.  So we don't necessarily have to go

13  unreported on anything.

14     But again, jury selection, because it is not

15  substantive, we can chat.  If either side disagrees with that,

16  then that's fine with me.  We will do sidebars in the

17  courtroom in trial, but, again,that's only during jury

18  selection and nothing substantive occurs during that

19  discussion.

20     Next thing, then, in terms of alternate jurors, I

21  would certainly do two alternates.  If you think we should do

22  four alternates, I can do that.  It is really up to you folks

23  whether we do two or four.  I have done four in the past.  I

24  have done two in the past.  You are both experienced.  You

25  have probably a good sense as to whether you would have two

1  alternates or four alternates.

2         MR. RICE:  It doesn't matter to the government.

3         THE COURT:  Defense side?

4         MR. HODGKINS:  Can I just inquire?

5         THE COURT:  Yes.

6         MR. HODGKINS:  I am concerned about the number of

7  people who may be mentioned or called in this case and it

8  creating an issue with potential jurors.

9         And I know there is one way to handle that, okay.

10 But could we compromise with three?  Does it have to be two or

11 four?

12        THE COURT:  No.  It can be any number.  The minimum

13 would be two, obviously, simply out of caution.  This is a

14 three-week trial.  But I can do three, I can do four.  I can

15 do either one.

16        So when I come back on the bench, you can meet and

17 confer.  We will do at least three.  I guess the question will

18 be shall we do three or four.  There isn't a lot of additional

19 work to do with a fourth alternate.

20        Normally, what I do is there is two seats for

21 alternates, which is why it is really convenient with two, and

22 then we set up two chairs, or one chair if we do three, or two

23 chairs if we do four, and that seems to work out okay.

24        It's a little bit inconvenient for Alternate Jurors 3

25 and 4 because they are actually sitting on seats a little

1   below, but we have done it in the past and it does not seem to
2   be a problem.

3          And I have no disagreement with the notion that
4   during the course of the trial, there may be individuals who
5   are mentioned, maybe not called as witness, that prospective
6   jurors might know and it might have an impact on their
7   service.

8          So that's totally understandable, and I can do three.
9   I can do four.

10         MR. RICE:  Your Honor, we are going to be using the
11  video presentation system.  Will Jurors 3 and 4 have screens
12  in front of them that they will be able to see?

13         THE COURT:  Yes.  They will be able to see.  And I
14  always tell the jurors if they can't see the screens, let us
15  know, and we will make arrangements.

16         Sometimes the jurors will actually stand up so they
17  can see the screens a little better, but I have never had a
18  problem with Alternate Jurors Number 3 and 4 not being able to
19  see everything, including what's on the screens.

20         MR. HODGKINS:  Your Honor, with your permission, I
21  believe we both agreed on three alternates.

22         MR. RICE:  That would be fine.  Thank you.

23         THE COURT:  So with three alternate jurors, you will
24  have two additional peremptory challenges, although those two
25  additional per side would only be for the alternate jurors.

1    Okay.  Procedurally, that's really -- oh, the other

2 thing.  Make sure that you advise your prospective witnesses,

3 parties, whatever, staff members, do not talk about anything

4 regarding this case outside the courtroom.

5    As you are aware, I have had jurors who have come in

6 and said that they were down in the cafe, and sitting at the

7 table next to them were witnesses and they were chitchatting

8 about the case.

9    They are in the elevator.  They are the first ones in

10 the elevator.  They are in the very back.  The elevator is

11 crowded.  The last couple of people in are witnesses or

12 lawyers involved in the case, and they are chitchatting about

13 the case, not realizing that they have a juror in the very

14 back of the elevator.

15    Restrooms, et cetera.

16    So please make sure you remember and that your staff

17 and your witnesses remember, don't talk about the case

18 anywhere outside of this courtroom, except, obviously, in a

19 place that you deem to be secure.

20    And remember, obviously, the public will be in the

21 hallways with you.  The public will be in the restrooms, the

22 cafes.  The media will be there also.

23    So it is absolutely critical that you make sure that

24 you don't talk about the case in the public areas.

25    Okay.  So with that then, let me turn first to the

1   plaintiff's side.

2          Oh, and then during the break, if you could hand to

3   Ms. Kusamura how you wish to be introduced.

4          Now, Mr. Hodgkins, I'm not sure, maybe this is the

5   way you registered, but you are always noted as "Edward

6   Hodgkins."

7          MR. HODGKINS:  I hate that.

8          THE COURT:  I'm going to introduce you as Marshall

9   Hodgkins.

10         MR. HODGKINS:  Thank you.

11         THE COURT:  But for all of you, if you want --

12  Mr. Rice, if you want me to introduce you as Dawrence, Duce

13  Rice, I'm okay with that.

14         MR. RICE:  That's fine.

15         THE COURT:  If you want your middle name or middle

16  initial, that's okay.

17         Anybody at the counsel table, I want to know how you

18  want to be introduced.  And if you would just jot that down,

19  give it to Ms. Kusamura at the break, and that's the way I'm

20  going to introduce you.

21         And anyone within the well also with -- Mr. Rice, you

22  have one you have identified, so I will probably introduce

23  anyone within the well so the jury understands why that person

24  is in the well.

25         During the course of the trial, it may well be that

1   some of your folks will come and go.  Maybe you will have an

2   investigator come in for a little bit or whatever.  I don't

3   have a problem with you just introducing the person to the

4   jury, "During the course of the trial, this is my

5   investigator, even if they are in momentarily," so the jury

6   knows who they are.

7          You don't have to do that, of course, but you are

8   certainly welcome to do that without asking leave of the

9   Court.

10         Okay.  So let me ask, on behalf of the plaintiff's

11  side, Mr. Rice, Ms. Alsworth, is there anything else you wish

12  to cover or at least we should have a heads up on?

13         MR. RICE:  I can't think of anything, your Honor.

14         THE COURT:  All right.  Mr. Hodgkins?

15         MR. HODGKINS:  Yes.  I had a couple of things.

16         First of all, to my left, on this side, is that 1, 7,

17  and 13?

18         THE COURT:  No.  Your upper right will be 1 through

19  6.  Lower -- front row would be 7 through 12.  And then to

20  your far right, on the very front area, would be 13 through

21  18.

22         MR. HODGKINS:  Boy, am I glad I asked that.

23         Second of all, at some point, and I remember when we

24  had our IT conference, there was reference by the IT person,

25  the courtroom IT person, to the fact that this podium has a

1  lot of wires underneath it.  It is apparently connected in
2  some way.

3  I know we dealt with this in a previous trial in your
4  courtroom.  And it would be my request that I at least be able
5  to have that at an angle in some way towards both the witness
6  stand and the jury, if that is possible.

7  THE COURT:  Yeah.  I don't have a problem with that.
8  I'm not sure if it is so much the wires.  It is a heavy thing.
9  But I can certainly understand for counsel, especially on
10  opening statement and closing argument, or even questioning
11  the jury, that you don't want to have to be facing me.

12  So, yeah, if you can physically do it, and maybe we
13  check and make sure with IT that there are no wires.

14  MR. HODGKINS:  Are you asking me if I can physically
15  do it?  Is that what you are asking?

16  THE COURT:  Well, let me just say this.  I'm not
17  going to do it, so whoever wants to do it is fine with me.

18  MR. HODGKINS:  One last thing I was going to ask, and
19  I was just about ready to talk to Mr. Rice about this, and you
20  came in on the bench.  You know, like you often -- it is not a
21  pre-exhibit or anything, but you might have butcher paper or
22  something just to write on.

23  I was thinking, if everybody agrees, with the Elmo
24  here, which I know comes out, just being able to put a piece
25  of paper on that during opening statement.

1          And I was wondering, one, if there is any objection

2   to that, and two, whether the Court would have any objection

3   to that.

4          MR. RICE:  No.  We just need to see the piece of

5   paper first.

6          MR. HODGKINS:  Sure, I would be glad to give you one.

7          MR. RICE:  Oh, it is just a piece of paper.

8          MR. HODGKINS:  Yeah, I'm just going to draw on it.

9          THE COURT:  Here is the ground rule as far as visual

10  aids during opening statement or closing argument.  If you are

11  going to use a visual aid, a diagram, a chart, a timeline,

12  whatever, make sure you show it to the other side first.

13         Or if you are going to just write on it, make sure

14  you let the other side know what you are going to write on

15  because if you don't disclose to the other side what it is you

16  are going to use as a visual aid, and there is an objection, I

17  can't rule on it immediately.  So that means I have to send

18  the jury out.  And then I will rule on it.

19         The problem with that is twofold.  Number one, it

20  interrupts your opening statement and closing argument.

21         And number two, I may rule against you in something

22  that you may have thought, oh, this is going to be a great

23  visual aid for the jury in opening statement and closing

24  argument, and then I don't allow it.  That causes you a

25  problem in terms of your flow that you thought about doing.

1    So disclosure is the key.  If you don't disclose and

2 there is an objection, you know I'm going to send the jury out

3 so I can deal with the objection.

4    At the end of the trial, of course, anything that's

5 been admitted into evidence, any exhibits, the jury

6 instructions, that's perfectly fine, you can display those

7 because they have already been presented to the jury.  So I'm

8 okay with that.

9    But again, nonexhibit items that, again, are simply

10 visual aids, just make sure you let the other side know.

11    The other thing, Mr. Hodgkins, that you maybe think

12 about, is sometimes you will have a witness go to the board

13 and diagram something or whatever.  And that's okay.

14    And then if you want it marked as an exhibit, then

15 that's fine too, and if the other side objects, then that's

16 perfectly good.

17    I know sometimes there is a spat between parties when

18 someone will draw a diagram and then another witness for the

19 other side will get up and start marking it, and the other

20 side will say, "No, no, that's my exhibit," et cetera.

21    So make sure you are careful about someone using, you

22 know, a sheet of paper or whatever of the diagram and whether

23 or not, once it is done, that whether or not it is going to be

24 admitted into evidence and then whether or not any other

25 witness can mark on it.  So keep that in mind just in terms of

1    flow of the case.

2            So anything else?

3            MR. HODGKINS:  No.

4            THE COURT:  Okay.  All right.  Let me just do one

5    commentary here.  You are all experienced trial lawyers.  You

6    know what you are going to do.  You have worked well together

7    pretrial.

8            Frankly, once the jury is picked and I give the

9    preliminary jury instructions, hopefully, you won't see or

10   hear from me again until closing arguments and concluding

11   instructions, but that just depends on how you conduct

12   yourselves, so I leave it up to you folks, but if I have to

13   get involved.

14           I will call what has been classified and

15   characterized as the "balls and strikes" in terms of

16   evidentiary objections, et cetera, any legal issues that arise

17   outside the presence of the jury.

18           But other than that, folks, it is your case, so I'm

19   going to let you present it.

20           So we will take a 15-minute recess.  We will come

21   back in.  We will have the jury come in, if they are ready,

22   and we will start the jury selection.

23           MR. HODGKINS:  I ask you this, is it your thought

24   that this will take all day or opening statements this

25   afternoon or tomorrow or do you know?  Is it?

1          THE COURT:  If we have a jury picked sometime by

2    midafternoon, I'm going to send the jury home, and we will do

3    the preliminary jury instructions and opening statements

4    tomorrow.

5          If we are done early afternoon, I will probably at

6    least do the preliminary jury instructions, if not opening

7    statements.  So that really depends on where we are at.

8          MR. HODGKINS:  May I just be transparent tactically?

9    And I will just say it out loud.  I would prefer that the

10   opening statements take place on the same day, both the

11   prosecution and the defense.  I will give an opening

12   statement.

13         And tactically -- and everybody understands that --

14   but that's what I'm requesting you consider in your formula,

15   whether or not we go forward with opening statements.

16         THE COURT:  Okay.  When we have the jury selected, I

17   will tell you right now, if it is about 3:00 o'clock, I'm

18   sending the jury home and we will do preliminary jury

19   instructions and opening statements tomorrow morning.

20         If it is earlier than 3ish or so, I will ask counsel

21   you how long you think your opening statements are going to

22   be.  And if we think it is beneficial, that we can get in the

23   preliminary jury instructions, which shouldn't take more than

24   ten or 12 minutes, and opening statements, if they are not

25   lengthy, we might be able to get those so that we know that

1  first thing tomorrow morning, plaintiff's case-in-chief, with

2  first witness.

3          So we will sort of play that by ear, but, again, if

4  we are getting into the midafternoon, we will send the jury

5  home.

6          MR. RICE:  Just so the Court knows, I do plan on

7  having witnesses available this afternoon.  So if we get a

8  jury this morning and we can get rolling, that's, obviously,

9  the government's preference.

10         THE COURT:  That would be my preference.  If it is

11 early afternoon, even, I would like to go ahead and move

12 forward.  So we will see.

13         I agree with you, Mr. Hodgkins, that regardless, the

14 opening statements will be given on the same day, whether

15 that's today or tomorrow.

16         And then you can give me the time estimate.

17         Anything else right now?

18         MR. HODGKINS:  No.

19         THE COURT:  We will take 15 minutes from now, and we

20 will come back in.

21    (Recess)

22         THE COURT:  Back on the record.  Before the jury

23 panel comes in, first of all, I have received the names for

24 plaintiff's side, obviously defense side.  I'm already aware

25 of that, I have already made that known.

1        Any name you wish to be added to the witness list

2   that I should mention to the jury panel?

3        MR. HODGKINS:  On behalf of the defense, I have

4   decided no.

5        THE COURT:  Okay.  Anything else that we need to take

6   up?

7        And just to let you know, my procedure is when I ask

8   questions, if it is the plaintiff's case-in-chief, I will go

9   to the plaintiff first.

10       If it is the defense case-in-chief, I will go to

11  defense first.

12       Is there anything else we need to take up on behalf

13  of plaintiff's side, anything?

14       MR. RICE:  No, your Honor.

15       THE COURT:  Defense side?

16       MR. HODGKINS:  No.  Just to educate me on voir dire,

17  do I go first or prosecution?

18       THE COURT:  Plaintiff's side will go first and then

19  you will go after that.  And you don't have to reserve time

20  thinking, "Okay, if I sit down, then I'm done," because

21  obviously, as I said, if someone new comes on board after you

22  have conducted your voir dire, I will obviously give you a

23  chance to individually voir dire that new person.

24       So don't think you have to save some time just in

25  case if someone new and different comes up after you sit down.

1        Okay.  If there is nothing, we will have the jury

2   panel come in.

3      (The prospective jurors entered the courtroom.)

4      (Jurors are identified by number only.  Any reference to

5        personal identifiers regarding jurors has been redacted.

6        Actual personal information requires a motion and Court

7        order.)

8        THE CLERK:  Court calls item 1:15-CR-104, United

9   States versus Keith Foster, jury trial.

10        THE COURT:  The record will reflect the jury panel is

11  present in court.  Members of the jury panel, good morning and

12  welcome to this courtroom.  We appreciate you coming in to

13  serve as jurors in this case.

14        I'm going to start off simply by making a few

15  introductions of the people directly involved with the trial.

16        And also, right after that, I will read a witness

17  list to you.  I don't expect you to remember all the names

18  that I mention.  The significant thing for you is if you are

19  seated in the jury box, I'm going to ask you if you know

20  anybody that we have mentioned by name so far, and if so, then

21  you can let us know who it is and what your relationship is.

22        Some of the names that I may read off to you are sort

23  of common, and so if you are not sure if this is the same

24  "John Smith," let us know, and we will try to give you a

25  little bit more information about that person to see if it is

1  indeed the person that you are acquainted with.

2      So we will start off first.  My name is Tony Ishii.

3  I'm the judge who will be presiding over this particular case.

4  I'm going to introduce just a couple staff members to you

5  because they will be directly involved in the trial itself.

6      Let me first introduce to my left and your right is

7  Peggy Crawford.  She is the court reporter in this case.  And

8  I want to mention a couple things about her role.  She is

9  required to take down everything that is said in this

10  courtroom, and that sort of generates a couple of basic rules.

11      First of all, only one person at a time can speak

12  because she can only take down one person at a time.  So

13  during the course of the trial, for example, when a witness is

14  testifying on the witness stand, you will hear a lawyer ask a

15  question and then stop.  And then the witness will answer the

16  question and then stop.

17      And that's so, obviously, the jury can hear and

18  understand the question and the answer, but also so

19  Ms. Crawford can take it down.

20      The other thing is, of course, in order for everyone

21  in the courtroom to hear what someone is saying, we need to

22  keep our voices up.  And it is also important for Ms. Crawford

23  to be able to hear everything so she can take it down.

24      And I have just indicated to her that if anyone,

25  including myself, if we drop our voice so that she is not able

1 to hear, then she will speak up and ask myself, a witness, or

2 whatever, just to speak up a little louder.

3     If at any time you cannot hear what someone is

4 saying, just make sure you let us know. Now, most of the time

5 that's not going to be a problem. As you can see, we have

6 microphones set up throughout the courtroom, and so that

7 should not be a problem.

8     Now, then during jury selection, we don't have

9 microphones in the jury box, and so we do have a hand-held

10 microphone for you to use.

11     So make sure that when you speak, that you have the

12 mike in front of you. And those of you in the jury box, if

13 the mike is in front of you and someone else is speaking, make

14 sure you pass the microphone up to that person.

15     All right. The other person then I'm going to

16 introduce is to my right and your left. This is Wendy

17 Kusamura. She is the courtroom deputy in this case.

18     She will be working with me, with you, and the

19 attorneys, and witnesses regarding the evidence in the case.

20 So she will be actively involved in the trial also.

21     Now, with respect to the parties in this case, in

22 every lawsuit, the parties are designated, whether you are in

23 state court, federal court, whether it is a criminal law case

24 or civil law case, the party that brings the lawsuit is

25 designated as the "plaintiff" or the "plaintiffs."

1      The party against whom the lawsuit is brought is

2 designated as the "defendant" or the "defendants."

3      Now, this is a criminal law case, so it is basically

4 the government that is prosecuting the case.  Those of you who

5 have served as jurors before may well recognize titles, or if

6 you have seen movies or watched TV programs in the state court

7 system, usually, it is the District Attorney's Office that

8 brings a lawsuit.  And the title for the plaintiff in that

9 case is the "People of the State of California."  You might

10 have heard that phrase.

11      In the federal courts, which is where we are at, the

12 plaintiff's side, the government's side is designated as the

13 "United States of America," and that's simply a title.  So

14 during the course of the trial, you will hear references to

15 United States, the government, the plaintiff; they are all one

16 and the same.

17      Representing the plaintiff's side are Attorneys Duce

18 Rice and Melanie Alsworth.  In addition, there are staff

19 members and agency members that are within the well, either at

20 the counsel table or seated, and I will introduce them.

21 Jeremy Crider, Sherri Reynolds, and Sara Cooksey.

22      Now, the defense side, the defendant in this case is

23 designated by name.  In this case, the defendant is Mr. Keith

24 Foster.  He is also a member of the United States of America,

25 but in the trial itself, he is designated actually by a name.

1        So this is Mr. Foster.  He is he is represented by

2    his attorney, Mr. Marshall Hodgkins.

3        Now, in addition to the people I have introduced by

4    name, there are going to be a number of individuals who may be

5    called as witnesses.  Again, I'm going to read the list to

6    you.  I don't expect you to remember them, but if there is

7    anyone that you think you might know, you will let us know.

8        They include the following:  Jeremy Crider, whom I

9    just introduced.  Patrick Bowens, Sherri Reynolds, Bradley

10   Dickey, Nick Carter, Peter Jackson, S.T. Kensey, David Rubel,

11   Mickel Sexton, Greg Estes, Jeffrey Jackson, Justin Lee, Scott

12   Sharp, Ray Stanley, Brian Scott, Joshua Ratzlaff, Cynthia

13   Morris-Kukoski, Ryan Demmon, Daniel Harkness, Iran Dennis

14   Foster.

15       Now, the next thing I'm going to do, I'm going to

16   read you a brief statement of the case.  This is not evidence

17   of the case.  You are not to consider it as evidence.  The

18   sole purpose of my reading this one paragraph to you is

19   twofold:  First, so that you understand what kind of a case

20   this is; second, so that you understand why we are going to be

21   asking certain questions of you during the jury selection

22   process.

23       The defendant, Keith Foster, has been charged with

24   conspiring to distribute and possess with the intent to

25   distribute controlled substances, distributing and possessing

1    with intent to distribute controlled substances, and illegal

2    use of a communication facility.

3           The charges against the defendant are contained in

4    the indictment.  The indictment simply describes the charges

5    the government has brought against the defendant.

6           The indictment is not evidence.  The defendant has

7    pled not guilty to the charges and is presumed innocent unless

8    and until the government proves the defendant guilty beyond a

9    reasonable doubt.

10          In addition, the defendant has a right to remain

11   silent and never has to prove innocence or to present any

12   evidence.

13          At this time, I'm going to ask Ms. Kusamura to call a

14   number of you up into a jury box.  They are designated by a

15   seat number, so when you come forward, I will indicate to you

16   where you are to be seated.

17          THE CLERK:  Juror 001.

18          THE COURT:  If you would come through the double-door

19   gate there.  Come all the way forward here in front of the

20   jury box, and then go up to the top row there.  Go all the way

21   back to the audience area to that first seat.  That is seat

22   number 1.

23          THE CLERK:  Juror 002.

24          THE COURT:  Juror 002, if you could have a seat next

25   to Juror 001, that will be seat number 2.

1        THE CLERK:  Juror 003, Juror 004, Juror 005, Juror

2  006.

3        Juror 007

4        THE COURT:  Juror 007, I'm going to have you start a

5  new row, so if you come up here and go into that row just in

6  front of the other folks, and then go all the way back to the

7  audience there.  That is seat number 7.

8        THE CLERK:  Juror 008, Juror 009, Juror 010, Juror

9  011, Juror 012.

10        Juror 013.

11        JUROR 013:  Excuse me.  I have a question about the

12  last name.  Can you spell it for me?  I want to make sure it

13  is me.

14        THE CLERK:  (Spelling redacted.)

15        JUROR 013:  That's me.

16        THE CLERK:  Juror 014, Juror 015, Juror 016, Juror

17  017, Juror 018.

18        THE COURT:  All right.  Now, those of you jury panel

19  members who are still in the audience area, you are still very

20  much a part of this jury selection process, but we are going

21  to focus our attention on the 18 of your fellow prospective

22  jurors that are in the jury box.

23        What I'm going to ask you to do is, as either I or

24  the attorneys ask questions, I want you to assume that you are

25  in the jury box, being asked those specific questions, and

1    think in your own mind what your answer would have been had

2    you been in the jury box.  And then listen to the answers

3    given to you by your fellow prospective jurors.

4          If you do that, then if you are called to replace any

5    of the 18, instead of my and the attorneys having to reask all

6    of the questions over again -- and there are going to be a lot

7    of them -- I can just ask you, "Did you hear and understand

8    the questions that were previously asked and did you form an

9    answer in your own mind?  Did you hear the answers given by

10    your fellow prospective jurors?"  And "If so, would you have

11    answered any questions differently or would want to say

12    anything more?"

13          And that would help move the process along.

14          Okay.  So if, as we are concentrating on the 18 in

15    the box, if you are not able to hear the questions or the

16    answers, please just speak up and remind us to keep our voices

17    up.

18          And those of you in the jury box area, I want to make

19    sure you keep your voices up so everyone can hear, including

20    your fellow prospective jurors.  There is a hand-held

21    microphone that will be handed to you.  Make sure before you

22    speak, you have the microphone in front of you.

23          With that then, I'm going to be asking you a number

24    of questions and, after I'm done, I'm going to give the

25    attorneys an opportunity to ask questions.  The questions are

not designed to embarrass you, put you on the spot, or argue

with you about your own personal beliefs.

        The bottom line is the questions that are being asked

are simply for the purpose of you determining whether or not

in this particular case you can be fair and impartial to both

sides.  That is, you are looking at the plaintiff's side, you

are looking at the defense side.  Right now, you are saying,

"I have an open mind because I don't know anything about the

case."

        But understanding that, and we all recognize that you

are all fair and impartial in your own minds, but we also

recognize that all of you come into this courtroom with your

own life's experiences, which might affect how you view a

particular case.

        Let me give you an example.  Let's say this was a

civil case involving a traffic collision, a horrific traffic

collision where there were a lot of injuries.  And you or a

family member have recently suffered a traffic collision,

maybe gone to the emergency room, maybe had to talk to the

police there, the hospital personnel.  Even now, when you hear

the screeching of tires, you know, you sort of get jarred.

Maybe you have nightmares that sort of thing, okay.

        So if I were to tell you, okay, this is a personal

injury case involving a traffic collision in which there were

horrific injuries, people went to the hospital, you would

1    think, "Oh, I just went through that, I just couldn't sit

2    through a case like that."

3          That's totally understandable.

4          Or it may well be that you learned information at the

5    emergency room that you can't get out of your mind, and that

6    no matter what happens in this trial, no matter what the

7    hospital people say or the medical people say, you will still

8    remember what you learned and you will take that as the facts

9    instead of the facts that you hear in the courtroom.  Okay.

10         So that's sort of a general example of how we

11   understand that your life's experiences might affect how you

12   serve as a juror or whether or not you can serve as a juror in

13   a particular case.

14         Now, in this case, obviously, you don't know anything

15   about the evidence that's going to be presented.  I only read

16   a brief statement.  Again, just so you understand what the

17   case is about.

18         So when I ask you questions, if you are not sure what

19   I'm asking, just ask me to repeat or rephrase it.  If I ask

20   you questions you don't want to answer in open court for

21   whatever reason, let us know.

22         Then what happens at the next break, after your

23   fellow prospective jurors are out in the hallway area, then

24   you can go ahead and respond just to the parties that are

25   involved in the case and the Court personnel.

1    Okay.  I am just going to start off, just by getting

2 a little bit of background information from each of you.  And

3 I will tell you when I ask you questions, I will try to give

4 you an idea, okay, this is why I'm asking this particular set

5 of questions, so they are not just to pry into your personal

6 lives.

7    But I'm going to ask you a number of preliminary

8 questions first just to get you comfortable about actually

9 speaking in open court, okay.

10    And we are going to start with Prospective Juror

11 Number 1.  And if I mispronounce your name, please correct me.

12    And these are the questions I'm going to ask each one

13 of you.  First of all, I'm going to ask, "Where do you live?"

14    Okay.  Now, the reason I ask -- and I don't want your

15 home address.  I just want to know where:  Fresno, Modesto,

16 two miles outside of Lemoore, whatever.

17    The reason I ask the residence question is sometimes

18 cases are location-specific.  For example, my traffic

19 collision scenario might have occurred in the city where you

20 live, and you might go by that intersection every day.  And

21 that's sort of important for us to know, whether or not that

22 might cause you to have some concern about putting that aside

23 for the purposes of the case.

24    The next several questions I'm going to ask you

25 really relate to employment, either present or former

1   employment.

2          The reason I ask the employment questions are that

3   sometimes you may be employed or have been employed in an area

4   that is significant in the case.

5          For example, if this were that traffic collision case

6   and you actually worked in an emergency room, obviously, we

7   need to follow up with you on that because it could be that

8   all of the training and experience you have received in the

9   emergency room, you wouldn't be able to set aside when you

10  hear someone testify from the emergency room in the case

11  itself.  So we just need to be aware of that.

12         Obviously, because you might be employed in some area

13  that might be involved in the particular trial does not

14  disqualify you.  It is a question of whether or not you can

15  set aside your own personal experiences and rely solely on

16  what you see and hear in the courtroom itself, okay.

17         The next question I'm going to ask then is your

18  marital status.

19         The reason I ask that is if you are married, whether

20  or not your spouse is employed outside the home or is retired,

21  whatever, again that goes to the employment question.  You

22  might not be employed in the emergency room, but your spouse

23  might be.  Okay, so we need to follow up.

24         The next question is any children.  I'm not concerned

25  about school age children.  So all you have to say is, "I have

1  got a son, eight, and a daughter, six," or something like

2  that.  That's all I need to know.

3       I'm more concerned again about adult children working

4  outside the household.  And again, that's the employment

5  question.  They might be employed in a hospital setting or an

6  emergency room setting, and you might have had conversations

7  with them about their work experience.

8       The next question, is there any other adults living

9  in your household, such as a roommate, significant other,

10  mother, mother-in-law, whatever.  And again that goes to the

11  employment question.

12       And then the next question will be your highest level

13  of formal education, or if you have a certificate in some

14  area, that's fine.

15       So those are the questions I'm going to be asking the

16  first three of you.  I'm going to ask each question

17  separately, even though you might remember some of them, so

18  that everybody understands the questions, and you aren't

19  thinking, oh, my, what is your answer going to be, because we

20  will pass the microphone down, I won't repeat the questions,

21  you can go ahead and give me your responses to each of those

22  questions without my prompting.

23       However, if you don't remember all the questions, not

24  a problem, I will just go ahead and tell you what the question

25  is.

BY THE COURT:

**Q.** First of all, we will start then with Juror 001. And let me ask you first, where do you live?

**A.** Kingsburg.

**Q.** Do you work outside the home?

**A.** Yes.

**Q.** What do you do?

**A.** I'm a registered nurse. I work as a school nurse.

**Q.** Very well. And your marital status?

**A.** Married.

**Q.** Does your spouse work outside the home?

**A.** Yes.

**Q.** What does he do?

**A.** Optometrist.

**Q.** Any children?

**A.** Three children, adult.

**Q.** Do any of them work outside the house?

**A.** Yes.

**Q.** What do they do?

**A.** Well, I have a son in D.C., that works for the U.S. Aid Department, for the State Department. I have a son here in Fresno that's a medical resident at CRMC. And I have a daughter that's a Pilates instructor and professional dancer down in L.A.

**Q.** Let me mention, because you have a child that's employed

1    in government, this is just to get background information.  I

2    will probably do a lot of followup questions with you a little

3    bit later on, but right now, I appreciate those responses.

4            And I'm sorry.  I cut you off.  Highest level of

5    education?

6    **A**.  Well, I have my Bachelor's, with my school nurse

7    credential, so I went another two years beyond that.

8            THE COURT:  Thank you, Juror 001.  If you could pass

9    the microphone over to Juror 002.

10   BY THE COURT:

11   **Q**.  Juror 002, where do you live?

12   **A**.  I live in Taft, California.

13   **Q**.  Do you work outside the home?

14   **A**.  Yes, I do.

15   **Q**.  What do you do?

16   **A**.  I'm a Human Resources Specialist at a community college.

17   **Q**.  Your marital status?

18   **A**.  I'm married.

19   **Q**.  Does your spouse work outside the home?

20   **A**.  Yes, he does.

21   **Q**.  What does he do?

22   **A**.  He is a health and safety advisor for Shell Oil.

23   **Q**.  Any children?

24   **A**.  I have two sons.  One is 31 and another, 33.

25   **Q**.  Do they work outside the home?

1  **A.** Yes, they do.

2  **Q.** What do they to?

3  **A.** My oldest works in the oil fields, and my youngest is an

4  officer with the San Diego Sheriff's Department.

5  **Q.** Great, thank you.  And then your highest level of

6  employment?

7  **A.** I have an Associate degree and a certificate in Human

8  Resources.

9  **Q.** Any other adults living in your household?

10  **A.** No.

11          THE COURT:  Thank you.

12  BY THE COURT:

13  **Q.** Juror 003, first of all, where do you live?

14  **A.** Lemoore.

15  **Q.** Do you work outside the home?

16  **A.** Yes.

17  **Q.** And what do you do?

18  **A.** I'm a bookkeeper for a farmer.

19  **Q.** And your marital status?

20  **A.** Married.

21  **Q.** Does your spouse work outside the home?

22  **A.** Yes.  We work for the same farming entity.

23  **Q.** Okay.  And any children?

24  **A.** Together, we have four.  My two are seven and ten, and his

25  two are adults.

1    **Q.**   Okay.  Do the adult children work outside the home?

2    **A.**   Yes.

3    **Q.**   What do they do?

4    **A.**   My stepdaughter works for Fresno Pacific.  I don't know

5    exactly what she does, something with MB missions.

6            And my stepson is about to graduate college, and he

7    is working for an agronomist out of Lemoore.

8    **Q.**   Any other adults living in your household?

9    **A.**   No.

10   **Q.**   Your highest level of education?

11   **A.**   Bachelor's of Science.

12   **Q.**   Any particular major or emphasis?

13   **A.**   Ag business.

14           THE COURT:  Thank you.

15   BY THE COURT:

16   **Q.**   Now I will turn the microphone over to Juror 004.  If you

17   could give us some background information on yourself?

18   **A.**   Yes.  I live here in Fresno.  I'm not married.  And my

19   highest -- well, where I work at, I'm a certified home health

20   aide.

21           And what were the other questions?

22   **Q.**   Not a problem.  First of all, any children?

23   **A.**   No children.

24   **Q.**   Any other adults living in your household?

25   **A.**   Yes.  I have a older sister.  She works in the medical

1 field at Valley Children Hospital.

2 **Q.** What did you say your educational background?

3 **A.** The highest was high school diploma.

4 THE COURT: Great. Thank you.

5 BY THE COURT:

6 **Q.** Juror 005?

7 **A.** I am a geologist with the State of California. I have a

8 Master's degree in Geology.

9 I am married. My wife is retired, in the home.

10 I have three sons. One is in Chicago, working in

11 advertising. One is in Viet Nam, teaching English. And one

12 is in San Francisco, teaching -- or with a software firm.

13 I have three stepdaughters. One is a stay-at-home

14 mom. One is an accountant in Los Angeles, and another is a

15 bicycle messenger in San Francisco.

16 No other adults in the house.

17 Anything left?

18 **Q.** What did your wife do before she retired?

19 **A.** She was in the dental industry.

20 THE COURT: Great. Thank you very much.

21 BY THE COURT:

22 **Q.** Juror 006?

23 **A.** I live in Los Banos. I work. And I work in Gilroy,

24 California, for a nonprofit organization.

25 I have three children. They are all adults. They

1   work.  My daughter works as a manager at a retail store.  My

2   son, oldest son, works in a body shop, mechanics.  And the

3   other one, he stays at home and goes to school.

4            What else?

5   **Q.**  Okay.  And then your highest level of formal education?

6   **A.**  I went to the university, but I never graduated.  I did

7   college in Gilroy, graduated in Texas, and just college.

8   **Q.**  Did you have an emphasis or major in college?

9   **A.**  It was criminal justice, and I also did child development,

10  and that's for the agency that I work for, and also I do

11  accounting, so I did a lot of accounting.

12  **Q.**  All right.  Did you ever follow up on the criminal justice

13  segment of your education?

14  **A.**  No.  I would love to still, but no, I haven't.

15  **Q.**  And any other adults living in your household?

16  **A.**  Yes.  I have a sister-in-law who is blind and deaf.

17  **Q.**  All right.  What agency did you work with?

18  **A.**  It is Go Kids there in the area of Santa Clara County.  We

19  do Santa Clara, Santa Cruz, Monterey, and San Benito County.

20  We have 1500 children.  We serve 146 daycare providers, aid

21  centers.  So I work in the fiscal department.

22  **Q.**  Is it private nonprofit or is it attached with a city,

23  county or region?

24  **A.**  We have contracts with the State.

25  **Q.**  Okay.  And then your child that lives at home and is going

1  to college, does he have a major?

2  **A.**  He would like to be an engineer, but he is very quiet, he

3  doesn't speak.  Almost mute.

4          THE COURT:  Got it.  If you would pass the microphone

5  down and all the way over to Juror 007, on the far end there.

6  BY THE COURT:

7  **Q.**  If you could give us some background information on

8  yourself?

9  **A.**  I work for Porterville Ed Sports Center.

10          And I can't remember your other questions.

11  **Q.**  I will go through them with you and I will go through all

12  of them.  First of all, where do you live?

13  **A.**  Porterville, California.

14  **Q.**  And you have already gone through your employment.

15  Marital status?

16  **A.**  Single.

17  **Q.**  Any children?

18  **A.**  One.

19  **Q.**  Adult or school age?

20  **A.**  Adult.  He is 32.  He is on his own.

21  **Q.**  Does he work outside the home?

22  **A.**  Construction.

23  **Q.**  Okay, great.  Any other adults living in your household?

24  **A.**  I have got two roommates; one, 60 and one, 50.

25  **Q.**  Do they work outside the home?

1    **A.**  One is retired and the other one, I work with.

2    **Q.**  Now, the one that is retired, what did that roommate do

3    before retiring?

4    **A.**  Bartender.

5    **Q.**  And the other one that works with you in the --

6    **A.**  He is a mechanic.

7    **Q.**  Got it.  And then your highest level of formal education?

8    **A.**  High school.

9         THE COURT:  Okay.

10   BY THE COURT:

11   **Q.**  Let's pass the microphone down to Juror 008.

12   **A.**  Hi.  I live in Fresno.  I'm unemployed.  My husband does

13   route sales for Frito-Lay.  No other adults or children in the

14   house or at all.  And my highest level of education is I have

15   my Master's in Public Administration.

16   **Q.**  Great.  Now, between jobs, were you employed outside the

17   home previously, like, say, within the last five years or so?

18   **A.**  No.  Maybe ten years.

19   **Q.**  What was that?

20   **A.**  Family owned automotive repair.

21        THE COURT:  Got it.  Thank you very much.

22   BY THE COURT:

23   **Q.**  We will pass the microphone then to Juror 009.

24   **A.**  I live in Fresno.  I have two sons.  One is 34.  One is

25   26.  34 is living in the Colorado Springs as traffic

controller, working the base, Peterson Base.  And then 26,

living in Texas, San Antonio base, as a medical student.

        And I'm a cook at Fresno Heart Hospital Surgical.  My

education, only high school.

**Q.**  Great, okay.  Now, both your sons, apparently, are they on

military bases?

**A.**  Yes, but the older one is out already, but work inside the

base.

**Q.**  Okay.  So he was in the military, but is now working as a

civilian at the base?

**A.**  Yes.

**Q.**  And your other son is medical?

**A.**  Student in the base too, Air Force base.

**Q.**  Is he in the military?

**A.**  Yes.

        THE COURT:  Great.  Thank you very much.  If you

could pass the microphone to Juror 010.

        JUROR 010:  I'm married and I'm retired.  My last

position was as an administrative assistant.

        I have two grown sons.  One is a manager of a

warehouse.  The other is in excavation.

        There is no other adults living at our home.  And my

highest education is really high school.  I had one year of

college.

BY THE COURT:

1  **Q.** And then on your employment position, I'm sorry, you are

2  in administration?

3  **A.** I was an administrative assistant.

4  **Q.** For a public or private entity?

5  **A.** Private.

6  **Q.** Okay.  It was like a business or whatever?

7  **A.** It was a church.

8  **Q.** Got it, okay.  And your spouse, does he work outside the

9  home?

10  **A.** Yeah.  He is retired.

11  **Q.** From?

12  **A.** He worked for Utility Trailer Sales, which is the

13  over-the-road trailers.

14         THE COURT:  Thank you.

15  BY THE COURT:

16  **Q.** Let me ask, I don't know if you pronounce it Juror 011?

17  **A.** Juror 011.

18  **Q.** Juror 011, can you give us some background information?

19  **A.** I live in Clovis.  I'm married.  I work with the City of

20  Fresno, in the Recreation Department.

21         My husband works at Fresno County Federal Credit

22  Union.  No kids.

23         Education is Bachelor's in Kinesiology.

24         And no other adults living with us.

25         THE COURT:  Pass the mike down.

BY THE COURT:

**Q.** How do you pronounce your last name?

**A.** Juror 012, French. I live in Clovis. I'm unemployed. I used to be a server in a restaurant.

I have two children, 12 and 15. I live alone with them. I am divorced. And I have an AA college degree.

**Q.** Did you have an emphasis or major?

**A.** No, general.

THE COURT: Great. Thank you.

Pass the microphone.

BY THE COURT:

**Q.** And we are going all the way over to everyone's left to Juror 013. Yes?

**A.** I'm from Merced. My wife and I are both retired. I work for Costco Wholesale, in a variety of positions. My wife worked for Merced County Office of Education, in payroll.

Let's see. I have two children outside the home. My daughter is a chemical engineer, working for Dow Chemical. And my son is a estimator, working for ATI Restoration, for when people have fire damage and stuff like that to their homes.

**Q.** Right.

**A.** Let's see, my mother-in-law is currently living with us. And then --

Were there any other questions?

1  **Q.** Does your mother-in-law work outside the home?

2  **A.** No, no. She is retired.

3  **Q.** What did she retire from?

4  **A.** She retired from Farmers Insurance.

5  **Q.** And then your highest level of formal education?

6  **A.** Bachelor's degree.

7  **Q.** Did you have a major or emphasis?

8  **A.** Aviation management.

9  **Q.** And I'm sorry, your employment?

10  **A.** Costco Wholesale was my last employment.

11  **Q.** You have been retired?

12  **A.** Yes, for about three years now.

13  BY THE COURT:

14  **Q.** Juror 014?

15  **A.** I live in Clovis. My partner works in Social Services. I

16  work at the Internal Revenue Service. No children.

17  **Q.** Education?

18  **A.** High school. Some college, just one year.

19  **Q.** Okay. What is your job title classification with the IRS?

20  **A.** Tax examiner.

21  **Q.** Okay. Thank you.

22  BY THE COURT:

23  **Q.** Juror 015?

24  **A.** I live in Modesto. I am a sales rep for a tobacco

25  company. I have a husband who is a mechanic at a bottle

1  labeling place nearby.  Two boys, nine and 12.  And high

2  school is the highest.  I think that's it.

3  **Q.**  Perfect.  I'm sorry, your husband works with?

4  **A.**  Oh, a bottle, like water bottles and coke bottle labeling.

5  He is a mechanic for those machines.

6          THE COURT:  Thanks.

7  BY THE COURT:

8  **Q.**  Juror 016?

9  **A.**  I live in Fresno.  I'm a civil engineer.  My wife is a

10 civil engineer.  We both work for different companies, but

11 private companies.  Two kids, two small kids still in school.

12 And Bachelor's in Civil Engineering.

13         THE COURT:  Great.

14 BY THE COURT:

15 **Q.**  Juror 017?

16 **A.**  It is pronounced (last name redacted.)

17 **Q.**  (Last name redacted)?

18 **A.**  I live in Fresno.  Bachelor of Music, Education.  I teach

19 music in the public schools in Fresno.  I am single.  I live

20 alone.  No children.

21 **Q.**  Your highest level of education?

22 **A.**  Bachelor of Music, Education.

23 BY THE COURT:

24 **Q.**  Juror 018?

25 **A.**  Could you ask the questions?

1    **Q.** Sure. Where do you live?

2    **A.** Atwater, California. I'm divorced. I have two daughters,

3    28, 26. One works for a hunting company lodge, in Montana.

4    My other daughter is a nanny in Modesto for an attorney.

5         High school education, I'm a retired California

6    Highway Patrol officer.

7    **Q.** How long have you been retired?

8    **A.** Almost two years.

9    **Q.** How long were you in the service?

10   **A.** 30 years. And my sister lives with me. She is an

11   administrator for Doctors Medical Center, in Modesto. My

12   daughter lives with me. Her husband lives there, he is a

13   driver. And my significant other is a truck driver. And I

14   think that's everyone.

15   **Q.** And what was your last position with the Highway Patrol?

16   **A.** Commercial officer.

17        THE COURT: Thank you.

18        Okay. Now, what I'm going to do next is just to ask

19   you folks -- I mentioned a number of names at the outset. Do

20   any of you know or on are acquainted with anybody that I

21   mentioned by name so far? Anybody strike a bell with you?

22   All right.

23        The next question I'm going to ask you is do you know

24   anything about this case at all? And if you do, just raise

25   your hand.

1       Let me start with the front row first.  First of all,

2 in the front row, do any of you know anything at all about

3 this particular case?

4       JUROR 014:  I have seen it on the TV.

5       THE COURT:  We need to pass the microphone down to

6 you.

7       JUROR 014:  I have seen stuff on the news regarding

8 it.

9       THE COURT:  Okay.  And I want to make sure that you

10 just answer the questions that I ask specifically because you

11 might have some information or knowledge that the other folks

12 don't.

13       And I appreciate that, Juror 014.  Let me ask, how

14 many times do you recall seeing or hearing news accounts, just

15 number wise?

16       JUROR 014:  Like three times.

17       THE COURT:  When was the most recent news account

18 that you recall?

19       JUROR 014:  It's been probably about a year, maybe.

20       THE COURT:  All right.  Now, and that's perfectly

21 fine.  And I want everybody to understand, it is perfectly

22 fine if you have seen or heard anything about the case, okay.

23 And if you have, I'm just going to ask you some very narrow

24 questions.

25       But the bottom line for you, Juror 014, and everybody

1     else, do you think -- well, whatever you saw or heard on the

2     media or from any other source, would you be able to put that

3     out of your mind and just focus strictly on whatever might be

4     presented here in the courtroom?

5             JUROR 014:  Yes, yes.

6             THE COURT:  Yeah.  And sometimes, you know, you

7     might, you know, like "It is hard to remember anything about

8     what I heard or read," and then as the trial goes on, you

9     might think, "Oh, now I remember something, but that's not

10     what I remember on the news account," or whatever.

11             You can't say, "Well, I will rely on the news

12     account," not that they are unreliable, because they are, but

13     we have to focus on what's going on in the courtroom.

14             During the course of the trial you realize, "Oh, now

15     I remember something about what I heard or saw," you still

16     have to disregard it for the purposes of this case, even

17     though it might be contrary to what you are seeing here in the

18     courtroom.  Do you understand that?

19             JUROR 014:  Yes, I do.

20             THE COURT:  I saw another hand raised.  I will do the

21     bottom row first and I will move up to your row next.

22             Juror 018?

23             JUROR 018:  Yes, your Honor.  I saw it on the news.

24             THE COURT:  How long ago?

25             JUROR 018:  It's got to be at least a year.

1          THE COURT:  How many times?

2          JUROR 018:  Probably twice.

3          THE COURT:  And again, would you be able to put out

4    of your mind, what you might have seen or heard in any outside

5    information other than this courtroom?  Would you be able to

6    put that out of your mind?

7          JUROR 018:  Yes, I could.

8          THE COURT:  If you do during the course of the trial

9    realize, "Oh, I remember something that these folks didn't

10   mention that I thought was sort of important," or, "Oh, that's

11   different from what I saw or heard," you have to disregard

12   whatever it was that you might have recalled and just focus in

13   on whatever is presented here in the courtroom.

14         Are you okay with that?

15         JUROR 018:  Yes, I am.

16         THE COURT:  By the way, I will mention to all of you

17   folks, just in general, during the course of the trial if you

18   are not sure of something, whether it was something you might

19   have recalled or anything or you have a question, we will give

20   you a notepad and you can write the question down and then

21   present it to me and I will present it to the attorneys.

22         Sometimes they can't answer your questions, either

23   because I made a legal ruling or neither side believes that

24   they have the ability to present that evidence.

25         It is not that they are going to ignore any question

1   that you have of them.  They understand how important it is to

2   you; therefore, it is important to them, but sometimes they

3   are just not in a position to answer.

4           However, you do have the right to write down any

5   question during the course of trial that you would like to

6   present to the attorneys, okay.

7           Now, anybody else in the front row heard or seen

8   anything, know anything about the case?

9           We will go -- as we go along with questions, you

10  might realize that you do remember something, and that's okay.

11  Just raise your hand.  Not a problem at all.

12          We will go to the middle row.  Any of you have seen

13  or heard anything about this case?  We have a person here.

14          Juror 008, first of all, where did you see or hear or

15  what medium or person?

16          JUROR 008:  The local television news and the

17  Internet.

18          THE COURT:  Great, okay.  On the Internet, were you

19  looking for it or were you looking at basic news, et cetera.

20          JUROR 008:  Yes, I was specifically searching for it.

21          THE COURT:  How long ago was that?

22          JUROR 008:  As recent as yesterday.

23          THE COURT:  And again, the same question, and I

24  appreciate your interest, but do you think that what you saw

25  or heard or researched would have an impact on your being --

1  use the general term -- fair and impartial?  Would you be able

2  to put all of that out of your mind?

3       JUROR 008:  I would like to say I would, but I feel

4  like I'm pretty well versed.

5       THE COURT:  And again, without going into any detail,

6  do you think that the fact that you have actually researched

7  this and have more information, do you think that that

8  would -- or would that actually cause you then to be -- and

9  this is a real broad phrase, but it is a legal phrase -- that

10 you wouldn't be fair and impartial; that is, that maybe you

11 have already formed an opinion of this case or aspects of the

12 case?

13      JUROR 008:  I don't know about formed an opinion.  I

14 don't think so.

15      THE COURT:  Let me ask you this then.  Whatever you

16 might have seen or heard, again, as I mentioned, if it is

17 different from what you saw or heard or if whatever is

18 presented in the court, that there is more information that

19 you felt was available from other means, would you still be

20 able to limit yourself to what you see and hear in the

21 courtroom as opposed to what you recall seeing on any other

22 medium?

23      JUROR 008:  I think so.

24      THE COURT:  Now, these are a "need to know."  The

25 parties need to know because they don't want to be towards the

1   end of the trial, and you are sitting there thinking, "I know

2   something they don't know, and wait until I tell the jury what

3   I know about this case that they didn't tell me."

4        Now, I'm not saying that's going to happen, but this

5   is what the lawyers have got to be thinking now, that this

6   potential juror may have some information that we are not able

7   to present or maybe we presented it and she feels that the

8   information she had on the outside is more reliable or

9   whatever.

10        Especially in closer cases, when everyone is

11  struggling, and you are thinking, "Okay, I know I'm not

12  supposed to," but sometimes on a three-week trial, it blends

13  into what you personally researched versus what you heard in

14  open court, so that could be a problem.

15        So the bottom line, Juror 008, is what impact do you

16  believe that your information that you already possess would

17  have on your service as a juror?

18        Sometimes lawyers couch it in, well, if you were

19  sitting in either one of their seats, knowing what you know,

20  would you want you on the jury.  So that's sort of, you know,

21  another way of putting that aspect.

22        So I just need to know, or they need to know,

23  basically, what impact the information you have received so

24  far would have on your service as a juror in terms of relying

25  solely, solely on the evidence presented in this court.

1          JUROR 008:  I think -- is this on?

2          I think that the best way that I could answer that

3     question is anything that I could potentially hear here would

4     trump what I previously know, but if something that I thought

5     I already knew never came up at all, I would have a hard time

6     forgetting that.

7          THE COURT:  That's important for a number of reasons.

8     Media reports, Internet are oftentimes reliable and sometimes

9     they are not.  And sometimes people will express an opinion --

10    and people do it all the time.  They express an opinion, and

11    we don't know whether it is really true or not because we

12    haven't had a chance to meet them face to face.  We haven't

13    had a chance to say, "Are you sure about this?  What is your

14    source of information?  You know, do you have a grudge against

15    this person?  Why are you putting this stuff on the Internet

16    in the first place?"

17         So there are a lot of things that happen in a

18    courtroom where the lawyers and then the jury can assess the

19    credibility based upon all the information available in the

20    courtroom that we don't get, especially when we go on the

21    Internet, because we don't have that opportunity to actually

22    confront that person and say, "Is what you put on here?  Is

23    that really true?"  That sort of thing.

24         I guess a real problem would be if anybody relies in

25    any regard on anything outside of the courtroom, the parties

have never had an opportunity or have not had the opportunity

to explore that source, which is why, in a trial, we require

witnesses to come in so that the lawyers can question them and

the jury can see their demeanor, check that out with the other

evidence that is presented, et cetera.

So that's why this process generally works. But it

doesn't work on social media, unfortunately.

Juror 008, you really need to know for yourself. You

need to know for yourself. As you said, if information that

you hear in the courtroom is contrary to or not exactly what

you might have seen or heard, if you rely in any respect on

any outside information, you just can't do it. No one is

allowed to do that.

So if you think that you would or might, then this

might not be the case for you. But again, you have to decide

that and you have to be comfortable that that's what you are

going to do.

But if you think, "Look, I shop on the Internet. I

correspond on the Internet. I found it to be generally

reliable. Why would I doubt something like what I saw or

heard?"

So that's something you have got to decide. But you

have to let us know, and you probably have. But if you think

at all that it might have an influence in any regard, this

might not be the case for you.

1           So I leave that to you.

2           JUROR 008:  I believe I could be fair and impartial,

3   but it is just a difficult question to answer, not having ever

4   had to be in that situation before.  I just want to --

5           THE COURT:  Oh, no.  I appreciate your candor on

6   that.  If you do serve as a juror and you are dealing with the

7   evidence -- and this applies to all jurors, and you will get a

8   jury instruction on this -- you cannot rely on outside

9   information.

10          The instruction, I will give you a very specific

11  instruction.  You can't look at anything on the outside.  You

12  can't go to a dictionary.  You can't go on the Internet.

13          Even if you had the burning question that you know

14  that you could get the answer on the Internet or whatever

15  while you are a juror, you can't do that.  You can't even read

16  newspapers or watch the news, anything relating to this case,

17  if you are a juror.

18          Juror 008, what I'm going to ask you to do if you are

19  serving as a juror, first of all, when you are deciding what

20  the facts are, you have to make sure that the facts that you

21  determine individually are in this case are not, quote, facts

22  that you learned from the outside.

23          You have to be able to, in your own mind, point to

24  who said what in the courtroom, and that's what you rely on.

25          But if you are thinking, "The witness didn't quite

1   say that, but they did a better job on the Internet," so
2   sometimes it is hard to distinguish between what was said in
3   the courtroom or whatever.  Sometimes it is like more of an
4   inference rather than a specific word for word.

5          But you have to look and see, and you can't tell
6   other jurors, "Well, let me tell you something.  What they
7   didn't bring out is this.  And I learned it" --

8          And I'm reminding all of you.  If you serve as a
9   juror, and any of the other jurors try to tell you something
10  that they learned that wasn't in the courtroom, you have got
11  to tell them, "You can't do that," and you have to report it
12  to the Court.

13         And that would cause that juror to be dismissed from
14  the case, so that is how serious it is, because otherwise, it
15  could result in a mistrial, and we would have to start this
16  trial all over again.  That's how important it is.

17         So Juror 008, we are going to go through a lot of
18  other questions.  The bottom line is as we are moving along,
19  think about that.  If at some point in time, you think, "Look,
20  I had this chat with the Judge, but I can't erase in my mind
21  what I have learned and I can't guarantee that come jury
22  deliberations, that I'm not going to think about what I
23  heard."

24         So keep that in mind.  Right now, what you are saying
25  is that you can put that out of your mind, that you would not

1  rely on or use it in any way as a juror in deciding what the
2  case is.
3          But if at any point in time, even at the middle of
4  the trial, if you can decide you can't do it, you just have to
5  let us know.  It is that important.
6          Middle row.  Anybody else seen or heard anything
7  about this case?
8          Let me go to the back row.  Anybody in the back row
9  seen or heard anything about this case?
10         Juror 003?
11         JUROR 003:  The front page of Sunday's Fresno Bee.
12         THE COURT:  Any other media?
13         JUROR 003:  No.
14         THE COURT:  And I assume you read it.
15         JUROR 003:  I didn't read the whole thing.
16         THE COURT:  Got it.  Now, let me ask you, having read
17  that, or at least seen it, skimmed it, saw the headlines,
18  whatever, does that, as you are seated there now, do you --
19  have you already formed some kind of opinion about the case?
20         JUROR 003:  No.  I'm going to be open-minded.
21         THE COURT:  And you understand -- and I have gone
22  through it quite a bit with Juror 008; I'm not going to insult
23  her or your intelligence -- you understand how important it is
24  to the parties and to the fairness that you totally disregard
25  whatever you might have seen or heard from any outside source,

1   even if it is contrary to what you hear in the courtroom or it

2   isn't brought out in the courtroom.  Are you okay with that?

3          JUROR 003:  Yes.

4          THE COURT:  Thank you.

5          Anybody else in the back row?

6          All right.  By the way, if, during the course of the

7   trial, any one of you realize, "Oh, you know, I told the Judge

8   this in jury selection, but now I realize I do know something

9   in the case or I do know somebody in the trial," or something,

10  anything, please let us know.

11         It doesn't disqualify you.  We have to ask you some

12  followup questions, but it is better to let us know during the

13  trial than, of course, after the trial, which is too late.

14         All right.  So I'm going to move on now and I'm going

15  to ask you a number of questions that really relate about what

16  you know about the court system.

17         I'm going to ask you some specific questions, first

18  of all, whether or not you have ever served as a juror before.

19  The second question is whether or not you have ever been a

20  party to or witness to any legal proceedings, and the third is

21  a catchall question, any other relationship with the courts or

22  the legal system.

23         So I'm going to start with the back row and ask

24  anybody in the back row, have you ever served as a juror

25  before?  Okay.  Three of you have.

So we will go ahead and start with Juror 001. Generally, there are two kinds of juries that you serve on. One is a criminal law case when you are asked to find whether somebody is guilty or not guilty of crime or crimes.

The other is a civil law case, usually someone or some persons or entities are suing the other side. Usually it is for money damages or return of property or something like that.

Juror 001, let me ask you, how many times have you served as a juror?

JUROR 001: Twice.

THE COURT: Were they criminal or civil?

JUROR 001: Criminal.

THE COURT: Without getting into any detail, what kinds of cases were they?

JUROR 001: The first one was drugs. The second one was a theft.

THE COURT: How long ago was the most recent one?

JUROR 001: Mmmmm, seven years ago maybe.

THE COURT: All right. Were verdicts reached in both those cases?

JUROR 001: The first one, the defendant pled guilty. He changed his mind.

The second one, we were in a deadlock.

THE COURT: All right. The first one, was it during

1 the trial that the case settled?

2        JUROR 001: Correct.

3        THE COURT: Let me ask you. First of all, was there

4 anything that occurred during the trial, anything the judge

5 did, the lawyers, the parties, the witnesses, whatever, the

6 jury deliberations, that bothered you, concerned you, or upset

7 you to the extent that it might spill over to your service as

8 a juror here today?

9        JUROR 001: No.

10        THE COURT: Sometimes when you have a hung jury, a

11 deadlocked jury, sometimes there are a lot of emotions

12 involved in that.

13        Was there anything during that deliberation process

14 that wound up not being able to arrive at a verdict that

15 concerned you, upset you, bothered you to the extent that it

16 would spill over to this case?

17        JUROR 001: No.

18        THE COURT: Now, the first case was a drug-related

19 case. There are some implications on drugs in this particular

20 case. Now, the case did settle during the trial, but you

21 might have heard testimony from maybe law enforcement agencies

22 or experts, whatever.

23        Whatever you might have learned on either case, you

24 have to totally disregard for the purposes of this case. Are

25 you okay with that?

1           JUROR 001:  Yes.

2           THE COURT:  Okay.  And the other thing is, again, if,

3     during the course of this trial, you hear something and it

4     wasn't exactly what you might remember the witness testifying

5     in the other cases, you have to disregard the other case.

6           JUROR 001:  Sure.

7           THE COURT:  Okay.  And then it has been quite a

8     while, but you might remember some of the jury instructions

9     that the Court -- well, let's see, hung jury.  You have

10    wouldn't have gotten concluding instructions, so you are okay

11    on that.

12          Thank you.  Anybody else on the back row?

13          Juror 002, how many times have you served as a juror?

14          JUROR 002:  Criminal, once.

15          THE COURT:  What kind of case was it?

16          JUROR 002:  It was a theft.

17          THE COURT:  How long ago?

18          JUROR 002:  Probably five, seven years ago.

19          THE COURT:  Was a verdict reached?

20          JUROR 002:  No.

21          THE COURT:  Were you on the same jury?

22          Okay.  Anything about that case that would affect

23    your service as a juror here?  Anything anybody did?

24          JUROR 002:  No.

25          THE COURT:  Can you put out of your mind anything you

1  might remember about that case for the purposes of this case?

2          JUROR 002:  Yes.

3          THE COURT:  Juror 003?

4          JUROR 003:  It was a criminal case, armed robbery of

5  a taco truck, and we were a hung jury.

6          THE COURT:  How long ago?

7          JUROR 003:  Five years ago.

8          THE COURT:  Anything about that experience, anything

9  about the fact that it was a hung jury?  As I mentioned to

10 Juror 001, sometimes there is a lot of back and forth, when

11 you get a hung jury, between jurors.

12         Was there anything about that situation, that case

13 that would affect you in this particular case?

14         JUROR 003:  No.

15         THE COURT:  Can you totally disregard what you

16 remember about that case if you serve on this case?

17         JUROR 003:  Yes.

18         THE COURT:  Anybody in the back row?

19         Middle row?

20         One person.  Pass the microphone to Juror 010.

21         JUROR 010:  It was a criminal case.  Theft of a truck

22 and a utility trailer.  About ten years ago.  And we found the

23 gentleman guilty.

24         THE COURT:  Anything about that experience that would

25 affect your service as a juror here?

1          JUROR 010:  No.

2          THE COURT:  You can disregard whatever you remember

3    about that case?

4          JUROR 010:  Don't remember much about that case.

5          THE COURT:  Middle row?  Front row?  Juror 013?

6          JUROR 013:  Yes.  Criminal, DUI.  One charge was the

7    jury agreed to.  The other charge, we were deadlocked on.  I'm

8    very satisfied with the way everything turned out.  It was a

9    very fair jury.

10          THE COURT:  How long was it?

11          JUROR 013:  Probably seven years ago.

12          THE COURT:  Can you put aside whatever you might

13    remember about that case for the purposes of this case?

14          JUROR 013:  Yes.

15          THE COURT:  Anybody in the front row?

16          Let me go to the next question then.  Have you ever

17    been a party to or witness to any legal proceedings?  Now, it

18    could have been an administrative hearing, it could have been

19    where you contested a traffic ticket, small claims, or even a

20    larger case than those.

21          So anybody in this front row ever been a party to or

22    witness to any legal proceedings?

23          Juror 013?

24          JUROR 013:  Yes.  I was involved in a rollover

25    accident.  And so we were involved with the insurance company

1    on that type thing.

2           THE COURT:  Did it ever go to trial or did it settle?

3           JUROR 013:  No.  It was settled out of court.

4           THE COURT:  Did you attend what we call a

5    "deposition"?

6           JUROR 013:  No.

7           THE COURT:  You did not.  Anything about that

8    experience that would affect your service as a juror here?

9           JUROR 013:  No.

10          THE COURT:  Whatever you might have learned, heard,

11    whatever about that case, you have to disregard for the

12    purposes of this case.  Are you okay with that?

13          JUROR 013:  Yes.

14          THE COURT:  Perfect.  Pass the microphone down.  I

15    believe Juror 017.

16          JUROR 017:  (Last name redacted.)

17          THE COURT:  Okay.

18          JUROR 017:  Contested a traffic ticket.

19          THE COURT:  Okay.  How long ago?

20          JUROR 017:  Roughly 35 years.

21          THE COURT:  Anything about that experience that would

22    affect your service as a juror here?

23          JUROR 017:  None whatsoever.

24          THE COURT:  Perfect.  Thank you.

25          Juror 018?

1       JUROR 018:  Numerous court cases for DUI, traffic

2  citations, depositions.

3       THE COURT:  All right.  Anything about any of those

4  experiences that would affect your service as a juror here

5  today?

6       JUROR 018:  No, sir.

7       THE COURT:  Now, in cases -- and this is for

8  everyone's information -- but I want to focus in on you, a lot

9  of times, or maybe I should say sometimes, when you are on the

10  witness stand, the side that calls you may be very polite,

11  kind, et cetera.

12       The other side that is what we call "cross-examining"

13  you, asking you questions, maybe you are thinking, "They are

14  trying to shake me up, trick me," whatever, the other side

15  might be not quite as polite.

16       Did you ever have any experiences with attorneys

17  where you would think, "I could wring that person's neck"?

18       JUROR:  No, sir.

19       THE COURT:  Okay.  Now, the reason I ask you that

20  question is a lot of times when people are involved in

21  lawsuits or legal proceedings and they are in court or their

22  deposition is taken, again, one side that calls them may be

23  very polite.  The other side, on the other side may not be

24  quite as polite.  And sometimes that affects people's

25  perception of attorneys.

1          Now, in this case, we have very experienced attorneys

2    on both sides, and they are going to be asking questions.

3    They are going to be doing their jobs for their respective

4    clients, but in deciding the case, it is not a popularity

5    contest amongst the lawyers.

6          In other words, you may like one lawyer, you may not

7    like another lawyer.  You may like what one lawyer does, you

8    may not like what another lawyer does.

9          They are just doing their jobs, and you don't focus

10   in on the lawyers.  You have focus in on the evidence that's

11   presented.  Are you okay with that?

12         JUROR 018:  Yes, I am, your Honor.

13         THE COURT:  I assume that's what occurred in your

14   case, is you presented the facts as you saw them.

15         JUROR 018:  Yes, I did.

16         THE COURT:  Anybody else in the front row been a

17   party to or a witness to any legal proceedings?

18         Middle row?  Same question.  We have one person.

19   Juror 008?

20         JUROR 008:  I have a DUI.

21         THE COURT:  Did it actually go to court?

22         JUROR 008:  Yeah, but it was a no contest kind of,

23   you know.

24         THE COURT:  Okay.  Were you represented by an

25   attorney?

1        JUROR 008:  I was.

2        THE COURT:  How long ago was that?

3        JUROR 008:  Oh, probably seven or eight years.

4        THE COURT:  Was there anything that anybody did on

5    the other side, that is, the officer that maybe wrote the

6    citation or the prosecutor, the Court, anybody in the system

7    that bothered you, upset you?

8        JUROR 008:  No.

9        THE COURT:  Would that affect your service as a juror

10   here today?

11       JUROR 008:  No.

12       THE COURT:  Let me ask the obvious question.  Because

13   you were a party at one time, do you find yourself leaning for

14   or against one side or the other in this particular case

15   because of their status in the case?

16       JUROR 008:  No.

17       THE COURT:  Anybody else in the middle row?

18       How about the back row?  Ever been a party to or

19   witness to any legal proceedings?  Juror 002?

20       JUROR 002:  Yes.  I was a witness in an

21   administrative hearing.

22       THE COURT:  How long ago was that?

23       JUROR 002:  Two weeks ago.

24       THE COURT:  Were there lawyers on the various sides?

25       JUROR 002:  Yes.

1    THE COURT:  Without getting into great detail, what
2  was your role?  Were you being called in a professional
3  capacity?
4    JUROR 002:  Yeah.  It was a non reelection for a
5  faculty member, and so I had to testify to the process for the
6  evaluation for the faculty member.
7    THE COURT:  Anything about that experience or the
8  questioning, the process, that concerned you at all?
9    JUROR 002:  No.
10    THE COURT:  Would you be able to set that aside for
11  the purpose of this case?
12    JUROR 002:  No.
13    THE COURT:  Okay.  Juror 001.
14    JUROR 001:  It was about 20 years ago.  Embezzlement
15  against my husband with an employee, and we were deposed, and
16  then she pled guilty.
17    THE COURT:  Anything about that experience that would
18  affect your service as a juror here today?
19    JUROR 001:  No.
20    THE COURT:  We have Juror 003.
21    JUROR 003:  Does family court count?
22    THE COURT:  Yes.
23    JUROR 003:  I got divorced.
24    THE COURT:  Was there actually a court proceeding?
25  Was it resolved?

1        JUROR 003:  We went to court.

2        THE COURT:  How long ago was that?

3        JUROR 003:  It's been final six years.

4        THE COURT:  I realize that all family law matters

5 have an emotional context to it, but as far as the process

6 itself, maybe what the lawyers said or did or even what the

7 Court said or did, did that concern you, bother you, upset you

8 to the extent that it would spill over and affect your service

9 here today?

10       JUROR 003:  No.

11       THE COURT:  Thank you.

12       And then a couple other hands?  Yes, Juror 005?

13       JUROR 005:  I was deposed in a case as a geological

14 consultant as an expert witness, comparing a process with

15 another engineer.

16       Beyond that, the only experience I have is my wife

17 was in a traffic accident and had -- was involved in a lawsuit

18 for that.

19       THE COURT:  All right.  Did the traffic collision

20 with your wife, did that ever actually go to court?

21       JUROR 005:  It was settled out of court.

22       THE COURT:  Was your deposition taken?

23       JUROR 005:  Mine was not, no.  Just my wife.

24       THE COURT:  Was there anything about either your or

25 her experience that concerned you, bothered you, upset you

1   that would spill over and affect your service as a juror here

2   today?

3         JUROR 005:  No.

4         THE COURT:  As an expert witness, to your knowledge,

5   were you challenged by the other side in terms of your

6   qualifications, your report, what you had to say or anything

7   like that?

8         JUROR 005:  We did have a difference of opinion, not

9   based on qualifications, but on how -- it was a case where I

10  did the work, and he was coming in and had some issues with

11  how I did my work.

12        THE COURT:  So were you retained by one side then?

13  Or was it part of your duty within an agency or organization?

14        JUROR 005:  This was as I was a private consultant

15  working for the landowner.  And it was -- honestly, I forget

16  who was suing who, but the county agency at that point was

17  saying that things could have been done differently, and I was

18  saying it was done just fine.

19        THE COURT:  All right.  So one of the parties

20  retained you as the expert witness in your field; is that

21  correct?

22        JUROR 005:  Yes.

23        THE COURT:  And one other side retained someone else?

24        JUROR 005:  Yes.

25        THE COURT:  To basically go through and either

1    question your methodology, your conclusions, your findings, et

2    cetera, I assume.

3              JUROR 005:  Yes.

4              THE COURT:  All right.  Was there anything about that

5    process or procedure that concerned you or bothered you to the

6    extent it would spill over today in this case?

7              JUROR 005:  Other engineers, yeah.

8              THE COURT:  Okay.  And that's a good point.  And I

9    will just use that as a springboard to do -- to go into a

10   similar or related area.

11             And that is in most cases, you are going to have

12   witnesses called who are designated as expert witnesses.

13   Oftentimes, these witnesses were not at the scene.

14             For example, in the traffic collision scenario, there

15   might be experts retained.  Obviously, they weren't there at

16   the time of the collision, but they go in, they interview

17   witnesses, they look at the damage to the automobiles, they

18   look for any skid marks or, you know, gouge marks in the

19   pavement or whatever, and based on that, they would form an

20   opinion.

21             Courts in civil and criminal law cases do provide for

22   expert witnesses.  Now, an expert witness can be designated,

23   but basically, you treat an expert witness just like any other

24   witness.  You can believe all of their testimony, some of

25   their testimony, or none of their testimony.

1        And sometimes there are competing expert witnesses.

2   Now, sometimes people will think, "Well, expert witnesses are

3   just hired guns.  If you pay anybody enough money, they will

4   say whatever you want them to say."

5        Sometimes people will say, "Expert witness, that's,

6   you know, Court has designated that person as an expert; who

7   am I to question an expert witness?"

8        So there are these possible extremes as to how jurors

9   view expert witnesses.

10        First of all, you need to be aware that expert

11   witnesses are authorized and that you don't automatically

12   believe or disbelieve them or give them more or less weight

13   simply because they are designated as experts.

14        You can, as I mentioned earlier -- and you will get a

15   jury instruction on this, and this applies to all witnesses --

16   you can believe everything, a part, or absolutely nothing from

17   that person.

18        So even a person designated as an expert witness, you

19   have a right, assuming that you gathered up the relevant

20   facts, to totally disregard what they have to say.  It might

21   be because of other expert witnesses that are contrary.  It

22   might be because the evidence doesn't support his or her

23   analysis or conclusions, et cetera.

24        Is everyone okay with that?

25        All right.  And Juror 005, you are okay?  That's

1   basically the parameters of expert witnesses.  Are you okay

2   with that?  Even though the other side or both sides might

3   call people who are designated as experts, you can't

4   automatically give them more or less weight based on your own

5   personal experiences.  Do you think you would be okay with

6   that?

7           JUROR 005:  That's fine.

8           THE COURT:  Anybody else in the back row ever been a

9   party to or witness to any legal proceeding?  Okay.

10          The next question that I need to ask you folks is in

11  terms of scheduling, I have asked the attorneys what they

12  believe the duration of the trial is.  I think you all

13  understood at the outset this would be a relatively lengthy

14  trial.

15          First of all, the trial schedule in the courtroom

16  here is Tuesdays through Fridays, from 9:00 to noon, with a

17  break in the midmorning, and 1:30 to 4:30, with a break in the

18  afternoon.

19          And the reason it is only Tuesday through Friday is

20  that Monday is the day that I set aside for hearing legal

21  issues on other cases.

22          So that's basically the time frame, four days a week,

23  for jury service.  The attorneys believe that the duration of

24  the trial will be somewhere between 12 and 14 court days,

25  which would be -- this is May 9, so it would be the 9th

1    through 12th, 16th to the 19th, 23rd to the 26th.

2          Now, it might go over to Memorial Day, but we

3    wouldn't be going until Wednesday that week if we spill over

4    into a 13th or 14th day.

5          That's a fairly long time frame.  I'm limited in

6    excusing folks, but basically what I need to know is on a

7    trial like this -- and probably what we do on Fridays, a lot

8    of times on Fridays -- and I will check with the attorneys --

9    I will do three one-and-a-half hour sessions.  There is no

10   noon break.  So we go from 9:00 to 2:00 o'clock.  There are

11   two breaks in between.

12         You don't get a lunch hour, but the advantage is on

13   2:00 o'clock on a Friday, you are out of here.  But other than

14   that, the court days are $9 to noon, 1:30 to 4:30.

15         In terms of scheduling, sometimes if you have like an

16   appointment or something early in the morning or late in the

17   afternoon, sometimes we can accommodate that.  Maybe start a

18   little bit later, end a little earlier, whatever, but what the

19   lawyers need to know is if there are any scheduling issues

20   that we need to account for for any of you folks.

21         So let me start in the back row.  Any scheduling

22   issues that we need to address for you in the back row?

23         Yes.  Juror 001?

24         JUROR 001:  Two things.  One, I'm working as a school

25   nurse, so I'm finishing out this year.  I still have a few

1  projects left to do.

2      The second thing is I just broke the crown of one of

3  my molars, so maybe I can schedule it on a Monday, but I would

4  like to get it repaired.

5      THE COURT:  Okay.  So if you can work that out, and I

6  totally --

7      JUROR 001:  It just happened too.

8      THE COURT:  Totally understand.  In terms of your

9  role as a school nurse, assuming that you are selected to

10  serve as a juror in this case, would you be able to fulfill

11  your jury duty even though, you know, you may -- I don't know

12  how many weeks you have left of school.

13      JUROR 001:  About four weeks, but yes.

14      THE COURT:  You can?  I appreciate your letting us

15  know that.

16      Anybody else in the back row that we need to

17  schedule?

18      Middle row?  Juror 009.

19      JUROR 009:  I have two thing, you know.  My personal

20  thing, one is I'm scheduling for my surgery.  And secondly,

21  I'm the middle of buying house, closing the escrow any day,

22  so.

23      THE COURT:  In terms of surgery, do you have that

24  scheduled yet?

25      JUROR 009:  Not yet.

1      THE COURT:  Again, I don't want to get into great

2   detail.  Sometimes surgery, you can have surgery and still be

3   able to function the next day.  Sometimes you can't do it.

4   But is it a surgery that can be done in, say, June, as opposed

5   to within the next few weeks?

6      JUROR 009:  The doctor is very busy.  They were going

7   to look at the schedule for me, but they have not got the

8   answer yet.  And closing my house on the 16th.

9      THE COURT:  All right.  Now, in terms of the surgery,

10   if you have a choice, if you contacted your doctor's office

11   today and, say, if you are going to schedule it, it needs to

12   be scheduled in June, it can't be scheduled in May, are you

13   physically okay if you --

14      JUROR 009:  It is okay for me.

15      THE COURT:  Great, okay.  You need to let the

16   doctor's office know right away because if they are in the

17   process of scheduling and they are going to try to schedule it

18   in May, then they need to know right away that it needs to be

19   after May.

20      Now, in terms of buying a house, I will tell you when

21   I was buying our house, I was actually out of state, so I can

22   understand, I can empathize with you.

23      But I don't prohibit you folks from bringing in a

24   cell phone or whatever if you need to communicate with the

25   outside world during -- you obviously cannot use it for

1  anything dealing with the trial itself.

2          But if it closes on the 16th, does that mean you have

3  to go on the 16th and sign papers?

4          JUROR 009:  Yes.  And then the main thing is they are

5  missing some document.

6          THE COURT:  So you need to get those documents to the

7  title company or whatever?

8          JUROR 009:  Yes.

9          THE COURT:  Now, so the bottom line is on buying the

10 house and getting the documents, would that interfere with

11 your ability to serve as a juror in this particular case?

12         JUROR 009:  Like yesterday, I was still running

13 around, you know, until 6:00 o'clock, back and forth.  And I'm

14 afraid because now the document at the underwriter, so

15 underwriter is really checking.  I hope by now it is complete,

16 the document.

17         THE COURT:  All right.  Anybody else in the middle

18 row then, scheduling?

19         Yes, Juror 011.

20         JUROR 011:  I have been put in charge of a large

21 event on the 19th, but if we are out by 2:00 p.m., then that

22 should be fine.

23         THE COURT:  I forgot to mention to counsel, but my

24 Friday schedule is three hour-and-a-half sessions, no lunch

25 break, but we end at 2:00 o'clock.

1          MR. RICE:  That's fine, your Honor.

2          THE COURT:  And remind us if we forget.  May 19th, we

3     are going to be out of here by 2:00 o'clock.

4          JUROR 011:  Thank you.

5          THE COURT:  Front row?

6          JUROR 013:  Can I approach the bench on a medical

7     issue?

8          THE COURT:  It is about time for us to take our

9     morning recess.

10         Juror 009, I will check with the attorneys on your

11    issue.  And you will need, when you come back in, you will

12    need to let us know whether you can get all that accomplished

13    and still be a juror.

14         And obviously, while you are in court, while you are

15    in the courtroom, you have to focus in totally on the trial

16    itself and not think, "Oh, God, I have to get this document or

17    check my kids or whatever."  Keep that in mind.

18         We are going to take a morning recess.  It is going

19    to be about 20 minutes because we are going to stay in

20    session.  So at 11:20, if you could be back.  Now you folks

21    have to be back in your seats that are assigned.

22         Those of you in the audience, sit where you can find

23    room, and we will resume the jury process at 11:20.

24         Please do not talk about this case at all.  Even

25    though you don't know anything about it, don't talk to

1    anybody.

2           I have advised the attorneys and parties they are not

3    to talk about the case outside of this courtroom.  And so this

4    is a big building, but small in terms of available area to us.

5    There is a hallway, restrooms.  There is a cafe downstairs, a

6    lobby.  It is more than likely you are going to run into these

7    folks in the building.

8           They are not allowed to talk to you.  So if you are

9    thinking, "Oh, I recognize that's a lawyer, that's a party,

10   that's a witness," and you say hello, at best, they are going

11   to acknowledge you, but they can't say anything else because

12   for you, it is innocent.  You might ask them, "Is there a good

13   place to have lunch," or something, but to an outsider, they

14   are thinking, "Uh-oh.  Look at that lawyer.  They are trying

15   to influence a juror," and it messes everybody up.

16          Once you become jurors, you will get your badge

17   showing you are a juror, but they really can't tell,

18   especially with the audience there, who is a jury panel member

19   and who is not.

20          So they will probably try to ignore you.  It is not

21   that they are being snobbish or anything.  They cannot

22   communicate with you at all.

23          Now, if, inadvertently, though, they, a party or

24   witness, is chatting about the case, try to get away from

25   them.  And then report it to me and I will remind the parties

1    to make sure that nobody talks about this case outside the

2    courtroom.

3          My caveat -- and I apologize to you, Juror 017, is

4    don't talk to anybody who is wearing a neck tie.  Okay?

5    (Laughter)

6          So with that, then, we will go ahead and take a

7    recess until 11:20.

8          Juror 013, if you could just remain.

9          JUROR 012:  Excuse me.  I also have a medical issue I

10   would like to discuss.

11         THE COURT:  You can stay in also.

12         JUROR 006:  I also wanted to talk to the judge

13   privately.

14         THE COURT:  You folks can stay in the front row.

15   Have a seat, and we will get to you one at a time.

16     (The courtroom was cleared and sealed proceedings are

17       continued to the next page without interruption, to be

18       filed separately.)

19

20

21

22

23

24

25

1          (The following proceedings were had in open court.)

2          THE COURT:  We will take our 15-minute break now,

3     which is a little later than now.  But -- stop.

4          Before we take our break, there were a couple of

5     people that had some concerns.  I think we dealt with the

6     three that had the most immediate.

7          Is there anything about jury selection, anything the

8     jury panel members have said so far that you wish to address

9     while they are not here?

10          Plaintiff's side, anything?

11          MR. RICE:  Juror 009, that had the closing of the

12     house.  It seemed from the tone of her voice that she is quite

13     stressed over that.  And so we would stipulate as to that.

14          MR. HODGKINS:  I agree.

15          THE COURT:  Okay.  When she comes back in, we will

16     excuse her.  Basically, there are going to be four open seats.

17          And so what we will do is when they come back, I will

18     excuse Juror 009 -- I'm sorry.  Three open seats.

19          So we will fill Seat Number 9, Juror 009, Seat Number

20     12, Juror 012, fill Seat Number 13, Juror 013.  And is that

21     it?  Those three.

22          And then we will continue on with the voir dire

23     process.

24          We will take 15 minutes from now, and then we will

25     resume with jury selection.

1    (Recess)

2         THE COURT:  All right.  Back on the record.  We are

3    going to fill three seats that have been vacated, so let me

4    just go ahead and have Ms. Kusamura go ahead and fill those

5    seats.

6         THE CLERK:  Juror 019.

7         MR. RICE:  Your Honor, I believe we need to thank and

8    excuse Juror Number 009.

9         THE COURT:  I'm sorry.  Juror 009, we did speak with

10   the attorneys and they agreed you would be excused because of

11   your circumstances.

12        JUROR 009:  Thank you.

13        THE COURT:  You still need to check with the 800

14   number after Friday, but you can check with the clerk's office

15   on that also.

16        Juror 019, go ahead and take that seat.  That is seat

17   number 9.

18        THE CLERK:  Juror 020.

19        THE COURT:  If you would take that seat there in the

20   middle row on the end.  That is seat number 12.

21        THE CLERK:  Juror 021.

22        THE COURT:  Go ahead and take that first seat there.

23        Now, for the three of you who have just joined us, I

24   need to get you up to speed.  The questions I have asked so

25   far are very individual, so I'm going to go over them with you

1   individually.

2           Get the microphone up to juror seat number 9, Juror

3   019.

4   BY THE COURT:

5   **Q.**   Juror 019, I'm just going to go over all the questions I

6   have asked so far.  We should go through this fairly quickly,

7   and see.

8           Juror 020 and Juror 021, if you listen carefully.

9           Juror 019, where do you live?

10  **A.**   Modesto.

11  **Q.**   Do you work outside the home?

12  **A.**   Yes I do.

13  **Q.**   What do you do?

14  **A.**   I retired 30 years at the Post Office, and I'm now a

15  part-time bus driver.

16  **Q.**   Your marital status?

17  **A.**   I'm married.  My wife is a pharmacist.

18  **Q.**   Any children?

19  **A.**   Two sons.  One is going to University of Santa Barbara.

20  One is going to University of Reno.

21  **Q.**   Do they have majors?

22  **A.**   My Santa Barbara is a math major.  My Reno is a computer

23  major.

24  **Q.**   Any other adults living in your household?

25  **A.**   No.

1   **Q.** Your educational background?

2   **A.** Bachelor of Science in Business Management.

3         THE COURT: We will pass the microphone down to Juror

4   020.

5   BY THE COURT:

6   **Q.** Where do you live?

7   **A.** I live in Dinuba.

8   **Q.** Do you work outside the home?

9   **A.** Yes. I'm a overnight store manager in a retail store.

10  **Q.** Marital status?

11  **A.** Single. Four children, two seven-month-olds, a

12  four-year-old and a eight-year-old.

13  **Q.** Any other adults living in your household?

14  **A.** My mother.

15  **Q.** Does she work outside the home?

16  **A.** No.

17  **Q.** Your educational background?

18  **A.** High school.

19        THE COURT: So if you could pass the microphone all

20  the over to Juror 021, on the first row.

21  BY THE COURT:

22  **Q.** Where do you live?

23  **A.** Visalia.

24  **Q.** Do you work outside the home?

25  **A.** I do. I'm an administrator for the Tulare County Office

1  of Education.

2  **Q.**  Marital status?

3  **A.**  Married.

4  **Q.**  Does your spouse work outside the home?

5  **A.**  He does.  He is employed with Costco Wholesale.

6  **Q.**  Children?

7  **A.**  Yes.  I have two school-aged children and an infant.

8  **Q.**  Any other adults living in your household?

9  **A.**  No.

10  **Q.**  Your educational background?

11  **A.**  Master of Arts in Education.

12  **Q.**  I will leave the microphone with you, and I will go ahead

13  and ask you, do you know anybody I have mentioned by name so

14  far?

15  **A.**  No.

16  **Q.**  Do you know anything about this case?

17  **A.**  No.

18  **Q.**  Have you ever served as a juror before?

19  **A.**  I haven't.

20  **Q.**  Ever been a party to or witness to any legal proceeding?

21  **A.**  No.

22  **Q.**  Any other relationship with the Court to the legal system?

23  **A.**  No.

24  **Q.**  And any scheduling issues that we need to address?

25  **A.**  I don't have any.

1    THE COURT:  Thank you.  I'm going to pass the
2  microphone back up to Juror 019 there.
3  BY THE COURT:
4  **Q.**  Ask you, Juror 019, do you know anybody I have mentioned
5  by name so far?
6  **A.**  No.
7  **Q.**  Do you know anything about the case?
8  **A.**  Not at all.
9  **Q.**  Have you ever served as a juror before?
10  **A.**  Twice.  Once civil, once criminal.
11  **Q.**  What kind of cases were they?
12  **A.**  The civil case was a contested will.  The criminal case
13  was a drug case.  These were both 15 to 20 years ago.
14  **Q.**  Okay.  Were verdicts reached in each of those cases?
15  **A.**  Yes, they were.
16  **Q.**  Anything about either one of those experiences that would
17  affect your service as a juror here today?
18  **A.**  No.
19  **Q.**  Now, whatever you might remember about either or both of
20  those cases, you have to totally disregard for the purposes of
21  this case.  You okay with that?
22  **A.**  I'm fine.
23  **Q.**  Ever been a party to any legal proceeding?
24  **A.**  Yeah.  I got a DUI 45 years ago.
25  **Q.**  All right.  Anything about that experience?  Maybe the

1   officer --

2   **A.**  I don't really remember it.

3   **Q.**  Okay.  Excellent.  Any other relationship, knowledge with

4   the legal system or the court system?

5   **A.**  No.

6   **Q.**  Scheduling?

7   **A.**  I have no scheduling issues.

8          THE COURT:  Now we will pass the mike down to Juror

9   020.

10  BY THE COURT:

11  **Q.**  All right.  Do you know anybody I mentioned by name so

12  far?

13  **A.**  No.

14  **Q.**  Know anything about the case?

15  **A.**  No.

16  **Q.**  Have you ever served as a juror before?

17  **A.**  Yes, about five years ago, but I was dismissed on the

18  second day.

19  **Q.**  You were on the jury panel?

20  **A.**  Yes.

21  **Q.**  Anything about that experience that would affect your

22  service here today?

23  **A.**  No.

24  **Q.**  Ever been a party to or witness to any legal proceedings?

25  **A.**  No.

1   **Q.**  Any other relationship you might have had with the court
2   system or the legal system?

3   **A.**  No.

4   **Q.**  Any scheduling issues that we need to address?

5   **A.**  No.

6        THE COURT:  All right.  Let me get back then to the
7   entire group, get back to the basic questions.

8        Just another followup.  Any scheduling issues that we
9   need to address by any of the 18 of you?  Okay.

10        The next area I'm going to cover is really the basic
11   rules that govern a criminal law case.  Now, I'm going to
12   mention to you some basic principles, and most of you have
13   heard of, and I'm going to try to put it into context of how
14   it applies in this particular case.

15        The basic rules that govern a criminal law case,
16   whether you are in the state court or federal court, are as
17   follows:  First of all, anyone who is charged with a criminal
18   offense is presumed to be innocent.  And that just dates back
19   historically since the beginning of our country, and other
20   countries have had similar sorts of principles.

21        But as far as that presumption of innocence, it is a
22   legal principle, but it is also a practical principle.  In
23   other words, as he is sitting there, Mr. Foster is presumed by
24   law to be innocent.

25        The fact he is on trial is what actually gets you

1   into court.  Ultimately, you can only make a determination

2   after hearing all of the evidence.

3          So my question to you is do you have any questions,

4   qualms, or concerns about the legal principle of the

5   presumption of innocence?

6          And, secondly, are you in fact affording Mr. Foster

7   that presumption of innocence?

8          So let me ask, first of all, in the back row, any of

9   you have any questions, concerns, qualms about either the

10  legal principle or applying it here right now?

11         In other words, are you looking around and looking at

12  Mr. Foster and saying, "You know, he must be guilty of

13  something; otherwise, he wouldn't be here"?  Any thought like

14  that.

15         Anybody in the back row, have any qualms or concerns

16  about the legal principle and the application as you are

17  sitting here?

18         How about the middle row, any concerns?

19         The front row?  Okay.

20         The next basic principle is what we call the "burden

21  of proof."  In every dispute, someone has the burden of proof.

22  They have to tell you something to persuade you to do

23  something or not do something.  It is something you do every

24  day in your own lives.  Before you take any kind of action,

25  whether it is a major thing, like buying a house, or just the

1   day-to-day something.  Maybe there is a dispute amongst your
2   children, amongst your family members, at work, whatever, you
3   are supposed to resolve it.  Someone has to prove something to
4   you before you take action, right?

5          And the same thing applies in the legal system.
6   Someone has the burden of proof.  In other words, someone has
7   to prove something to you before you take action.

8          In a civil case, whether you find for the plaintiff
9   or the defendant; in a criminal case, whether or not you find
10  someone guilty or not guilty.  Okay.

11         So in this case, the plaintiff's side has the burden
12  of proof, okay.  All plaintiffs have the burden of proof.  So
13  that's nothing unusual.

14         The distinction in a criminal law case, which is
15  different from maybe your own interactions as you decide to do
16  something based upon what people are telling you, is that the
17  burden of proof in a criminal case is solely on the
18  plaintiff's side.

19         So what that means is a defendant has no burden of
20  proof.  The defendant is not required to testify.  The
21  defendant is not required to present any evidence.

22         Now, that doesn't mean the defendant is not actively
23  involved.  You will see his attorney, regardless of whether
24  they call any evidence or regardless of whether he testifies,
25  is going to be actively involved actively and has been

1    actively involved pretrial in this particular case, whether it

2    is calling witnesses, cross-examining witnesses, opening

3    statements, closing arguments, working with me on legal

4    issues, et cetera.

5            But that is the burden of proof in a criminal law

6    case.  So basically what we have is burden of proof on the

7    plaintiff's side.  Burden of proof solely on the plaintiff's

8    side.

9            Defense has no burden of proof at all.  Defendant

10   does not have to testify or put on any evidence at all.

11   That's the basic legal principle.

12           Is everyone okay with that?  Okay.

13           Now, as a practical matter, what that means is you

14   hear all the evidence in the case.  Plaintiff's side puts on

15   the evidence.  Defense side cross-examines.  You hear opening

16   statements, closing arguments, jury instructions, et cetera.

17           But after the plaintiff's side presents their

18   case-in-chief, Mr. Foster consults with his attorneys, and

19   they say, "You know, I don't think they have proven the case.

20   I'm not going to put on evidence and I'm not going to

21   testify," so the case comes to you as jurors.

22           While you are deliberating, let's say it is a close

23   case.  You are just not sure, but somebody says, "Well, wait a

24   minute.  You know, I don't know if the government has proven

25   its case or not, but Mr. Foster didn't testify."

1      That has nothing to do with your decisionmaking

2  process.  If the defense feels that the government has not

3  proven its case, they don't have to present anything, and all

4  you deal with is did the government prove its case or not.

5      Whether or not Mr. Foster testifies or put on any

6  evidence, that is not a factor for you in deciding guilt or

7  innocence, whether or not Mr. Foster testifies or not, whether

8  or not he presents any evidence or not.

9      Anyone have a problem with that?  Everyone okay with

10  that?

11      Finally, the last principle is, okay, plaintiff's

12  side has the burden of proof.  What is their standard of

13  proof?  What do they have to prove?  What is the level of

14  proof?

15      The standard of proof in a criminal law case, state

16  court and federal court is a beyond a reasonable doubt.  Okay.

17      Now, I can't really -- we have a jury instruction on

18  what reasonable doubt is.  It is helpful.  That doesn't really

19  give you the black and white.

20      You know like, for example, on a civil case, the

21  burden is what we call a "preponderance of the evidence."  I

22  could sort of give you the visual of that.  A preponderance of

23  the evidence on the scale is when the one side tips the scale

24  just a little bit.  That's a preponderance of the evidence.

25      I can't tell you where it is with respect to a

1    criminal law case, where the burden of proof is on this

2    imaginary scale.  There is no such thing.

3          It is that state of the case, after you have heard

4    all the evidence, that you are convinced that the government

5    has proven its case to you.

6          Now, I can also tell you that it is the highest

7    standard of proof we have in the whole legal system.  There is

8    a reason for that, obviously, because possible consequences to

9    a person charged with a criminal offense could be pretty,

10   pretty great.

11         So that's why we impose the standard of proof as high

12   as it is, beyond a reasonable doubt.

13         Now, I will tell you that beyond a reasonable doubt

14   is not beyond all possible doubt, because everything in life

15   is subject to some possible doubt.

16         So when you deliberate on a case, you look at

17   whatever evidence has been presented, and regardless of

18   whether or not defense presents any evidence, you have to

19   weigh it and you have to decide, okay, is there some doubt as

20   to whether or not the government has proven its case here?

21         If you have some doubt, maybe it is because

22   conflicting testimony by witnesses.  Maybe there just wasn't

23   quite enough evidence, whatever.

24         If the defense did present some evidence, maybe it is

25   either through cross-examination or affirmatively presenting

1   evidence, that there is really some conflict, "There is doubt

2   in my mind."

3        Then you have to decide, is it reasonable or not.

4   "Under all the evidence, I do have some doubt, but in thinking

5   about the doubt, I still believe that the government has

6   proven its case beyond a reasonable doubt.  I have some doubt,

7   but not a reasonable doubt."  And that would mean that the

8   government has proven its case as far as that particular

9   charge.

10       If you have some doubt in your mind, however, and as

11  you think about it, consider all the evidence, the jury

12  instructions, and you have this doubt, and you believe that it

13  is a reasonable doubt, then the government has not proven its

14  case and you must find a defendant not guilty.

15       Okay.  Does anyone have any concern about that?  The

16  highest standard of proof is beyond a reasonable doubt.  It is

17  the highest standard.  It is not beyond all possible doubt,

18  because there may be some doubt in your mind, but you have to

19  decide whether or not any doubt is reasonable.

20       If it is not reasonable, and the government has

21  otherwise proven the charge, then you would find guilty.  If

22  the doubt is there in your mind and it is a reasonable doubt,

23  you find not guilty.

24       Okay.  All right?  Is everyone okay?

25       All right.  Governing those basic principles then is

1    how we proceed on a criminal law case.  Then the next thing

2    is, okay, so those are the basic principles.  Then I will give

3    you jury instructions at the end of the case that will provide

4    the law that you will apply.

5           But a critical role for you as a jury is, obviously,

6    your sole province, which is to decide what are the facts in

7    this case.  What are the facts?

8           And you determine those facts from basically a couple

9    of things.  One, witnesses on the witness stand.  Two,

10   exhibits that are received into evidence.  And there might be

11   some agreement, stipulations by the parties as to what the

12   facts are.

13          But basically, and let me focus in on facts from

14   witnesses.  I mentioned this a little bit earlier with respect

15   to expert witnesses and I'm going to generalize with all

16   witnesses.  Any person who comes in to testify on a particular

17   fact, evidence in this case, you have to decide whether or not

18   to believe all of their testimony, just a part of their

19   testimony, or none of their testimony.

20          In other words, you are the sole deciders of the

21   credibility or believability of every witness who comes in to

22   testify.

23          Now, part of the problem with that is that you are

24   going to be seeing a bunch of strangers that you have never

25   seen before in your lives and will probably never see again.

1  They might be on the witness stand for five minutes or five

2  hours.  From that time frame, when they are on a witness

3  stand, you have to decide whether or not to believe them or

4  not believe them or just believe a part of it.

5        Obviously, you will have the benefit of other

6  witnesses and other evidence to either buttress or contradict

7  what that witness has to say, but you do have to decide the

8  credibility or believability of every witness in order to

9  allow you to determine what the facts are.

10       Is everyone okay with that?  Is anyone, for whatever

11  reason, moral, religious or whatever, that cannot make these

12  credibility determinations?  Okay.

13       Now, with respect to credibility or believability, I

14  will give you a jury instruction that has some guidelines, but

15  basically, we rely on your individual and collective common

16  sense to determine creditability or believability.

17       Having said that, there are a few things that you are

18  not allowed to use in determining credibility or

19  believability.

20       One, for example, is which side calls the witness.

21  Just because the plaintiff's side calls a witness doesn't mean

22  you automatically give that witness more or less weight.

23       The fact that the defense might call a witness

24  doesn't mean that you give that witness more or less weight

25  depending on whether or not either side calls them, whether or

1  not we call them a "plaintiff's witness," "a government

2  witness," "a prosecution witness" or whatever, or a "defense

3  witness."

4          Those sorts of things as to who calls a witness is

5  not relevant.  It is really what they have to say.  Is

6  everyone okay with that?

7          Now, another thing that we cannot use to decide

8  credibility or believability is simple job titles.  Okay.  For

9  example, let's say a witness were to appear to testify and the

10  witness testifies that he or she happens to be whatever your

11  occupation is or was; for example, a person testifies I'm a

12  schoolteacher or a school administrator, and you happen to be

13  a schoolteacher or school administrator.

14          You don't give that witness more or less weight

15  because they happen to be in the same occupational area as

16  you.

17          Is everyone okay with that?

18          The next thing, it is obvious, but I'm getting to a

19  point.  The other thing is that you don't make a determination

20  on credibility or believability based upon title because you

21  happen to like or dislike that particular profession or

22  occupation.

23          For example, on my traffic collision scenario, if a

24  witness were to appear to testify and he or she says, "I'm a

25  physician," and you are in the medical field, or you really

1    like your doctor, you really like the medical profession, you

2    don't automatically give that witness more weight simply

3    because you like that particular witness's profession.  Is

4    everyone okay with that?

5            Now, obviously that differs from the quality of the

6    testimony.  In other words, if a witness were to appear to

7    testify and the first thing you find out is he or she is a

8    physician, again, you don't think in your own mind, "I'm going

9    to give that witness more or less weight because they have

10   identified themselves as a physician."

11           But if they go on to testify to their background,

12   training and experience, that they were in the emergency room

13   at the time after the traffic collision, as I talked about

14   earlier.  People were coming into the emergency room.  That's

15   the doctor that treated them, and his diagnosis was that the

16   person suffered a broken leg okay.

17           If you believe that doctor's testimony, you can

18   conclude that the person suffered a broken leg.  Okay.  But

19   that doesn't have anything to do with his or her title itself.

20   It is the quality of testimony.  It is what they have to say,

21   and you compare that are with all the other evidence, and if

22   you believe what he or she has to say, then you can believe

23   that the person suffered a broken leg.

24           Is everyone okay with that?

25           Okay.  People do not have a problem with that

1   scenario.

2         There is a particular profession, however, that

3   sometimes people do have a problem with, and that is when a

4   person comes in to identify themselves as a law enforcement

5   officer, the same ground rules apply.  You don't automatically

6   give that person more or less weight simply by job title.

7   Okay.

8         Now, you may know people in law enforcement.  You may

9   be involved in law enforcement.  You may like law enforcement.

10   You may respect law enforcement.

11         But again, the mere fact that someone comes in and

12   testifies and says, "I'm in law enforcement," doesn't mean you

13   automatically give that person more weight simply because of

14   their job title.

15         Is everyone okay with that?  It is like everyone

16   else, doctors, judges, whatever.

17         Obviously, in terms of quality of testimony, if a --

18   say a highway patrol officer were to appear to testify, and he

19   or she went out to the accident scene, gave you the person's

20   background, training and experience, in terms of accident

21   reconstruction, and said, "I went out there.  I looked at the

22   damage to the vehicles.  I looked at gouge marks, skid marks,

23   et cetera, et cetera, and my conclusion was the point of

24   impact was here within the intersection."

25         Now, if, in considering all the evidence, you

1   conclude that that testimony was truthful and you believe it,

2   you can conclude that's where the collision occurred.

3        Is everyone okay with that?

4        Again, like the doctor scenario, it is the quality of

5   the testimony, not the mere job title.  Is everyone okay with

6   that?

7        The other side of that is sometimes people have bad

8   experiences relating to law enforcement that might spill over.

9   For example, you, a family member or close friend might have

10  had some negative encounter with law enforcement.

11       It could be because you got a traffic ticket.  You

12  thought you didn't deserve it or you thought the officer was

13  rude when they issued the ticket, or it might have been you, a

14  family member or a close friend might have actually been

15  stopped and arrested for something, maybe prosecuted, maybe

16  convicted, whatever.  And that might have left a bad taste in

17  your mouth.

18       So there are two sides to this in terms of people who

19  identify themselves as law enforcement officers.  One, is you

20  don't automatically believe them simply because of job title

21  and you don't automatically disbelieve them, discount or

22  disregard their testimony because their job title is law

23  enforcement and you might have had a bad experience relating

24  to law enforcement.  Is everyone okay with that?

25       What I'm going to do -- and it is going to be fairly

1   brief and straightforward -- I'm going to ask you if you know

2   anybody related to law enforcement.  You can say, "I have a

3   cousin, a brother-in-law, a neighbor, you know, who is in the

4   police," whatever.

5         And the bottom line question is when I ask you this,

6   is think in your own mind, do you think that your relationship

7   with someone in law enforcement might affect how you view a

8   witness who comes in and indicates that they are in law

9   enforcement, okay.  That's really why I'm asking the question.

10        Let me go ahead, and what I'm going to do is -- I'm

11  not sure where the microphone is.  Let me do this.  If you

12  could pass the microphone up to the top.

13        If you know people in law enforcement, just let me

14  know.  If you don't, just pass the microphone down to the next

15  person.

16        We will go ahead and start with Juror 006 and work

17  our way down the top row.

18        JUROR 003:  My brother is a highway patrol.  Did you

19  hear me?

20        THE REPORTER:  Not very well.

21        THE COURT:  Have you discussed any of his

22  experiences, things like that?  Sometimes they tell

23  interesting stories.

24        JUROR 003:  Yes, they do.

25        THE COURT:  Do you think because of that

1  relationship, do you think, "Okay.  I understand what you are

2  saying, but, you know, based upon my relationship, I really,

3  really like the guy, and depending on who calls them, I give

4  that side more weight or give that person more weight or when

5  I'm in the jury room deliberating and I'm not sure the

6  government has not proven their case beyond a reasonable

7  doubt, and I'm going to see this relative this weekend, and I

8  hate to tell them, I think I'm going to vote not guilty"?

9         Do you think your relationship might affect your

10 service as a juror here?

11        JUROR 003:  No.

12        JUROR 002:  My son is an officer with the San Diego

13 Sheriff's Department.

14        THE COURT:  Have you chatted with him about any of

15 his experiences?

16        JUROR 002:  He shares nothing.

17        THE COURT:  Do you think that relationship would

18 affect your service here?

19        JUROR 002:  No, I don't.

20        JUROR 001:  We have close family friends that are in

21 law enforcement, detective, policemen, but no, it wouldn't

22 affect what I hear.

23        THE COURT:  Thank you.

24        Pass the microphone down to Juror 007, and we will

25 work our way over.

1      JUROR 010:  My niece's husband is a Highway Patrolmen

2  and his policy is he never discusses anything with family.

3  And no, that wouldn't affect.

4      THE COURT:  Thank you, Juror 010.

5      JUROR 011:  My brother-in-law's father-in-law is in

6  law enforcement.  It wouldn't affect.

7      THE COURT:  Thank you.

8      JUROR 020:  I have a cousin that's a police officer

9  and a family friend that's a police officer as well and, no,

10  it wouldn't affect them.

11      THE COURT 020:  Thank you, Juror 020.

12      JUROR 018:  My brother was a lieutenant on the

13  California Highway Patrol, retired.  And my nephew, his son,

14  is a sergeant with Sac P.D., and I was retired CHP, and no, I

15  don't.

16      THE COURT:  In this case, you would not lean one way

17  or the other?  If the government doesn't prove its case, would

18  you be able to say, "I vote not guilty"?

19      JUROR 018:  Yes.

20      JUROR 017:  A former student of about 20 years ago,

21  in law enforcement.  I have not seen him in ten years, and he

22  discussed nothing.

23      THE COURT:  Thank you.

24      JUROR 014:  My partner is an ex correctional officer

25  before she became a social worker, and I do have a friend who

1  is in law enforcement.

2      THE COURT:  Would that affect your service as a juror

3  here?

4      JUROR 014:  No.

5      THE COURT:  Thank you very much, Juror 014.

6      Now, let me add, and I don't want any detail on this

7  part, whether it is you or somebody else, but the flip side of

8  that, as I mentioned a little bit earlier, is any bad

9  experiences that might relate to law enforcement.

10     Again, it could be a traffic ticket you got.  It

11 could be you might have been pulled over and you didn't think

12 you deserved it.  Might be a family member, close friend.

13 Maybe somebody was actually arrested and prosecuted.  Couple

14 people mentioned something.  You don't have to mention it

15 again.

16     But, basically, what I would like to know -- and

17 again, I don't want any detail on this -- is to whether or not

18 you, a family member or close friend have ever actually been

19 arrested or possibly prosecuted by law enforcement.  Again, I

20 don't want any detail.  And if you have already mentioned it,

21 you don't have to mention it again.

22     We will start with the front row and work our way.

23     JUROR 014:  DUI.

24     THE COURT:  How long ago was that?

25     JUROR 014:  Ten years ago.

1         THE COURT: Anything about that that would affect

2 your service as a juror?

3         JUROR 014: No.

4         THE COURT: Leaning for or against one side or the

5 other?

6         JUROR 014: No.

7         THE COURT: Did it go to court?

8         JUROR 014: No.

9         THE COURT: It was resolved?

10         JUROR 014: Yes.

11         THE COURT: The resolution was okay with you as far

12 as you know?

13         JUROR: Yes.

14         THE COURT: Thank you very much.

15         JUROR 016: My brother was arrested for murder and he

16 was eventually acquitted.

17         THE COURT: How long ago was that?

18         JUROR 016: At least 20 years. We don't talk

19 anymore. My family supported him, paid for a lawyer, but

20 after that, we lost contact.

21         THE COURT: Did you attend any of the sessions?

22         JUROR 016: No.

23         THE COURT: Would that experience affect your service

24 as a juror today?

25         JUROR 016: No.

1          THE COURT:  Juror 020?  No?

2          JUROR 019:  Yeah.  I have had no experiences that

3     would negatively affect how I think or feel about a case.

4          THE COURT:  So any experience that you, a family

5     member or close friend might have had relating to law

6     enforcement would not affect your service here as a juror; is

7     that correct?

8          JUROR 019:  That's correct.

9          THE COURT:  Thank you.  Back up to the top row.

10         Okay.  Having just talked about in terms of

11    witnesses, law enforcement, there are a number of individuals

12    in this case who will be testifying that are either current or

13    former agents, officers, or other employees of various

14    agencies, law enforcement agencies.

15         Now, some of you have indicated that either you, a

16    family member, have been involved with public entities, not

17    necessarily law enforcement, but what I would like to know is

18    if someone were to appear to testify who is employed by the --

19    or have been employed by the Federal Bureau of Investigation,

20    the Bureau of Alcohol, Tobacco, Firearms and Explosives,

21    and/or the California Highway Patrol, other than what you have

22    mentioned so far, do you know anyone in any of these agencies

23    that you haven't mentioned so far?

24         Any bad or adverse sorts of contacts either you or a

25    family member or close friend with any of these agencies that

1    I mentioned so far?  Okay.

2         Let me ask, have any of you actually ever had a

3    dispute, not simply an arrest or anything like that, but maybe

4    administrative or anything, any dispute with any law

5    enforcement agency of any kind that you can recall that you

6    haven't mentioned so far?  Okay.

7         Have any of you actually, other than stops, have any

8    of you have been questioned by a law enforcement officer?

9    Maybe because you were a witness to a traffic collision?  Or

10   maybe you haven't mentioned so far?

11        Juror 011?

12        JUROR 011:  I work in the parks in the City of

13   Fresno, so I often deal with law enforcement.

14        THE COURT:  Sure, sure, okay.  Does that affect your

15   service as a juror in any way?

16        JUROR 011:  No.

17        THE COURT:  You deal with them fairly regularly, I

18   assume?

19        JUROR 011:  Yeah.  If there is fights at the parks or

20   drugs or anything like that, I will be questioned.

21        THE COURT:  Now, let me mention.  Now, none of you

22   have to talk about your jury service at all once it is

23   concluded.

24        But let's say, for example, you have heard all the

25   evidence and you weren't convinced beyond a reasonable doubt

1  that the government has proven its case, so you are about to

2  vote not guilty, but then you are thinking, "Oh, you know, I'm

3  going to see these law enforcement people this weekend, God,

4  and I hate to think that they would know that I voted not

5  guilty."

6        Do you think that would concern you in terms of being

7  fair and impartial in this particular case?

8        JUROR 011:  No.  I don't have any personal

9  relationships with any specific officers.

10        THE COURT:  We are going to take a noon recess until

11  1:30 this afternoon.  We are going to continue our jury

12  selection process, which we hope to complete today.  Those of

13  you in the box, make sure you come back in the same seat.

14  Those of you in the audience, sit anywhere.

15        Please don't talk about the case.  Don't talk to

16  anybody that you don't recognize.  And then I will remind

17  counsel and remind your people and your witnesses, do not talk

18  about the case in the public areas.

19        Now, so we will resume at 1:30 this afternoon.  Have

20  a good lunch.

21        See you at 1:30.

22     (The prospective jurors exited the courtroom.)

23        THE COURT:  Are there any prospective jurors in the

24  courtroom?  No, okay.

25        All right.  Before we break for our noon break,

1  anything that we need to cover before 1:30, plaintiff's side,

2  anything?

3          MR. RICE:  No, your Honor.

4          THE COURT:  Defense side?

5          MR. HODGKINS:  No.

6          THE COURT:  1:30 this afternoon.

7          MR. RICE:  Thank you, your Honor.

8      (The lunch recess was taken.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    AFTERNOON SESSION

2    1:30 p.m.

3         THE COURT:  On the record outside the presence of the

4    jury panel.  Is there anything that you need for me to take up

5    or should take up before the panel comes back in?

6         Plaintiff's side, anything?

7         MR. RICE:  No, your Honor.

8         THE COURT:  Defense side, anything?

9         MR. HODGKINS:  No, your Honor.

10        THE COURT:  We will have the jury panel come back in.

11        Oh, before they do, I know it wasn't specifically

12   requested, although there was some mention of the possibility

13   that some people in law enforcement, including the Chief,

14   might be mentioned, I was thinking about delving into a

15   situation where, assuming it will come out that Mr. Foster is

16   or was in law enforcement, specifically, the police

17   department, and get into a little bit of background as to the

18   fact that some people in law enforcement might be mentioned.

19        I don't know if anybody was going to go there.  I can

20   certainly do that, though.

21        MR. RICE:  I think that would be fine.

22        MR. HODGKINS:  Me too.

23        THE COURT:  Okay.  We will have the jury panel come

24   in.

25   (The prospective jurors entered the courtroom.)

1          THE COURT:  All right.  The record will reflect that
2    the jury panel has returned.  All right.  Members of the jury,
3    I'm going to go ahead and continue on.
4          The next question I'm going to ask you, and again, it
5    relates to any involvement you might have had relating to law
6    enforcement or the court system, is separate and apart from
7    what you have already mentioned so far, have you ever been a
8    victim of a crime?  And again, I don't need any detail.  Maybe
9    a little bit of followup.  And it is basically if you
10   contacted law enforcement.
11         Anybody in the front row?
12         Yes, okay.  Why don't we pass the microphone to Juror
13   017.
14         JUROR 017:  Two stolen two-wheeled vehicles.
15         THE COURT:  Did you contact law enforcement?
16         JUROR 017:  Yes, I did.
17         THE COURT:  Did they come out?
18         JUROR 017:  Yes, they did.
19         THE COURT:  Was there any followup by them, to your
20   knowledge?
21         JUROR 017:  With the exception of them telling me
22   they did not find anything, no.
23         THE COURT:  Would that affect your service as a juror
24   here today in terms of anyone who might be called as a
25   witness?

1           JUROR 017:  No.

2           THE COURT:  Front row?

3           Middle row, victim of a crime where you contacted the

4  police?  Juror 011?

5           JUROR 011:  It's been through work again.  There have

6  been times with the Park, I've had to call.

7           THE COURT:  Exactly.  Anything about those

8  experiences that would affect your service?

9           JUROR:  No.

10          THE COURT:  Juror 003.

11          JUROR 003:  If you pick to use one last name to talk

12  to me, you can do that, you don't have to use both.  I answer

13  to either one.  My ex-husband shoved me one day when we were

14  in our divorce process, and I reported him.

15          THE COURT:  Was there followup on that?

16          JUROR 003:  No.

17          THE COURT:  Anything about that experience that would

18  affect your service as a juror?

19          JUROR 003:  No.

20          THE COURT:  Anybody else?

21          Now, in this case, I have chatted with you about law

22  enforcement, burden on the plaintiff's side, et cetera.

23          One thing I do want to turn to a little bit is as to

24  Mr. Foster.  Obviously, he is entitled to a fair trial.

25          In this case, I believe the evidence will show that

1    he is or was engaged in law enforcement himself in a

2    high-ranking position with the Fresno Police Department.

3         Again, the same ground rules apply. If he is called

4    as a witness or even if he is not, as a party in this case,

5    and you have thought about law enforcement in terms of whether

6    or not you would be biased for or against. Maybe your own

7    experiences or your own thoughts. The same ground rules apply

8    as to Mr. Foster. You cannot give an extra advantage because

9    he is or was engaged in law enforcement as a law enforcement

10    officer. And you can't hold that against him either.

11         Anybody have any concerns or problems about that?

12         Okay. Now, Mr. Foster is or was employed with the

13    Fresno Police Department. And I know you have responded as

14    far as knowing people in law enforcement, et cetera, or any

15    experiences relating to law enforcement.

16         I want to focus in specifically if I pose a question,

17    have any of you had any involvement with the Fresno Police

18    Department, either with individual officers or the agency,

19    that you have not mentioned so far?

20         Yes, Juror 003?

21         JUROR 003: I'm sorry.

22         THE COURT: No problem.

23         JUROR 003: I feel like a broken record.

24         I know three PD officers. I know them outside of

25    their work.

1          THE COURT:  Great.  Now, would that affect your

2     service as a juror in any regard here?

3          JUROR 003:  No.  We have never talked about their

4     work.

5          THE COURT:  During the course of the trial, it is

6     possible -- and I read you the witness list.  It doesn't mean

7     that everyone who is on that list will be called as witnesses.

8     It is also possible during the course of the trial there might

9     be some individuals that are called as witnesses who weren't

10    on the witness list.

11         And basically, if you see a person come in to testify

12    and it wasn't on the witness list, and you realize that you

13    know that person, all you need to do is let us know, and we

14    will obviously do the inquiry as to whether and what your

15    relationship is and whether or not that might affect your

16    continuing service as a juror.  So keep that in mind.

17         So there may be some people, may or may not be some

18    people called that are or were employed by the Fresno Police

19    Department.

20         It's also possible that certain individuals who are

21    or were employed with the Fresno Police Department might be

22    mentioned, maybe not called as a witness, but during the

23    course of the trial, their names might come up.

24         And if they do, the same ground rules apply,

25    basically.  If someone mentions someone who is or was employed

1   by the Fresno Police Department and you recognize that name,

2   again, if you believe that it might affect your service as a

3   juror, you just need to let us know.

4          The fact that you might have heard that name doesn't

5   really mean much unless it means something to you that you

6   should tell us about.  But if you happen to know the

7   individual that might be mentioned by name, please let us

8   know.

9          Obviously, and I'm just going to throw out the name

10  simply because it is perhaps the most prominent, but it could

11  be that Police Chief Jerry Dyer might be mentioned in this

12  case.

13         Now, if you know Chief Dyer or know of his name and

14  it might affect your service as a juror, that is, how you view

15  whatever witness might have mentioned his name or any other

16  person's name that might be engaged in the Fresno Police

17  Department, just let us know, okay.

18         But right now, just having mentioned that name or

19  anybody else, anything about the fact that the Fresno Police

20  Department employees, who are or were employed by the Fresno

21  Police Department, does that cause any concern for any of you

22  right now, without disclosing anything more?  Okay.

23         Now, in this case, Mr. Foster is or was engaged in

24  law enforcement.  We have heard a lot of publicity on the

25  media, not about this case, but about law enforcement.  Some

1  positive, some negative.

2  But based upon -- and I don't need detail on this,

3  but based upon what you might have heard or read relating to

4  law enforcement, positive or negative, do any of you feel that

5  whatever you might have heard about law enforcement in

6  general, nationwide, would that cause you to have some concern

7  about being fair and impartial to Mr. Foster?  Okay.

8  All right.  Obviously, in this case, Mr. Foster is

9  African American, and some of the publicity that we have heard

10  doesn't involve law enforcement who might be African American,

11  but perhaps were arguably victims.  But anything you might

12  have seen or heard or anything relating to Mr. Foster himself,

13  individually, either or his role in law enforcement, his

14  ethnicity or race, or anything like that?

15  As you are sitting there, do you think any of that

16  would influence you at all in terms of being fair and

17  impartial to Mr. Foster?  Anybody have any concerns?  Okay.

18  Now, in this case, you will hear evidence regarding

19  some drugs, some legal, some not.  Possibly heroin, possibly

20  marijuana, possibly a prescription pain reliever.  And the

21  prescription pain reliever might be something that you,

22  yourself, have taken.

23  But drugs are going to be mentioned.  Obviously, as I

24  mentioned in this little paragraph, this does involve certain

25  charges relating to drugs.

1    Without getting into any detail, have any of you had

2 any bad or negative experiences relating to drugs or that you

3 have not mentioned that might affect your service as a juror

4 simply because you hear that drugs may be involved?

5    I mean that's just one aspect of the case, but do you

6 think if someone were to testify heroin, marijuana, or a

7 prescription drug that's a pain reliever, that would cause you

8 not to be able to continue to be fair and impartial in this

9 case?  Anybody have any concerns?  Okay.

10    Now, one aspect, of course, is with respect to

11 marijuana.  There has been a lot of publicity about marijuana,

12 legal, illegal.  State say it's legal.  Feds say it's illegal,

13 et cetera.  And California, the voters have made medical

14 marijuana and personal use marijuana, possession of marijuana,

15 legal.

16    Now, and there is a dispute, a debate, which is not

17 before you, as to the relationship between the federal laws

18 and the state laws.

19    For your purposes, you are bound by federal law.

20 Federal law makes marijuana illegal.  And so you are in

21 federal court, and that's what you have to go by.

22    Now, however, there may be some of you who feel very

23 strongly about marijuana, marijuana laws, et cetera, and if in

24 this case there is a charge that involves marijuana, do you

25 think any of you, based upon your own personal experiences,

1   maybe you would be -- I will get to that a little bit later,

2   but the fact that marijuana is part of an offense, do you

3   think any of you, because of your own personal beliefs about

4   marijuana, would say, "Wait a minute.  That's not a crime as

5   far as I'm concerned, so I don't care what the government

6   presents.  I don't care what the federal law says.  I cannot

7   convict someone of anything related to marijuana because I

8   believe it should be legal in all purposes"?

9          Anyone have that thought or concern?

10         All right.  You are bound to follow federal law, and

11  I will give you the jury instructions on that.  You do have to

12  follow the law in the federal court system.

13         Okay.  Do any of you belong to any group or

14  organization that advocates, one way or the other, regarding

15  marijuana, legality or otherwise?  Okay.  All right.

16         Okay.  Now I have gone through a number of specific

17  questions with you, trying to focus in on areas that I thought

18  you needed to think about in terms of being fair and impartial

19  without, obviously, knowing anything about this case at all,

20  the facts in the case.

21         But let me ask you this, and this will be an

22  open-ended question.  I might -- there might be something that

23  you wished to tell the parties that you haven't had a chance

24  to mention because I didn't ask the right question or maybe I

25  was starting to ask the question and I moved on to another

1   question.

2            So I'm just going to ask you in general, is there

3   anything that you feel you should mention to the parties in

4   this case about your service as a juror that you have not had

5   an opportunity to mention so far?  Anybody?

6            Get the microphone down to you.  Yes, Juror 018?

7            JUROR 018:  Earlier, you had mentioned that the

8   California Highway Patrol was involved in this case.  And I'm

9   just interested if I could see the list of names so that I

10  want to let them know if I do know someone on the list, I

11  think that's very important.

12           THE COURT:  Sure, absolutely.  We have an

13  S.T. Kensey, K-e-n-s-e-y.

14           JUROR 018:  It might be Sean, is that the name?

15           MR. RICE:  Yes.

16           JUROR 018:  I do know him personally.

17           THE COURT:  If Officer Kensey -- let me back up a

18  little.

19           Are you strictly professional acquaintances or both?

20           JUROR 018:  Strictly professional.

21           THE COURT:  When is the last time you might have had

22  a conversation with him?

23           JUROR 018:  It's been at least two years.

24           THE COURT:  The fact that he appears to testify, do

25  you think you would give more weight to lean towards the side

1   that calls him, or do you think you would give him more weight

2   over anybody else who testifies, or when you are deliberating

3   and you don't think -- well, whoever calls him, you sort of

4   want to be on that side?  Do you think that that would be an

5   issue for you?

6           JUROR 018:  No, your Honor.

7           THE COURT:  Now, you might see Officer Kensey later

8   on.  You -- let's assume the government calls him, and you

9   vote not guilty.  And you might see him at a reunion six

10  months, a year from now, and obviously, he will recognize you

11  as a juror.

12          And he would say, "How could you do that," or

13  whatever?  Do you think that that, as a juror, in the jury

14  room deliberating, do you think that that would be an issue

15  for you, such that if the government, assuming they called

16  him, if the government does not prove its case beyond a

17  reasonable doubt, that you would say, "Well, I don't want a

18  bad relationship with Officer Kensey, and then he is going to

19  tell everybody else in the Highway Patrol, and I will be

20  blackballed," do you think then, "Okay, the government hasn't

21  proven its case, but I'm going to vote guilty because I don't

22  want the ramifications on that"?

23          JUROR 018:  No, sir.

24          THE COURT:  Basically, you will do what is right and

25  proper in this case?

1          JUROR 018:  Yes, your Honor, I will.

2          THE COURT:  I appreciate you mentioning that.  Thank

3     you.  I think, at least on the list that I have, that may be

4     the only CHP officer.

5          MR. RICE:  Yes, your Honor.

6          THE COURT:  Okay.

7          JUROR 018:  Thank you.

8          THE COURT:  Thank you for mentioning that.  Anybody

9     else?  Anything you have not had a chance to mention because

10    the question didn't come up?  Okay.

11         Let me ask, counsel, if you have any followup

12    questions for me to ask before your individualized voir dire,

13    go ahead, jot it down, hand it up to me, and I will ask it.

14         Plaintiff's side?

15         MR. RICE:  No, your Honor.

16         THE COURT:  Defense?

17         MR. HODGKINS:  No.

18         THE COURT:  Okay.  I'm going to allow attorneys to

19    ask questions of you.  Again, the same ground rules apply.  If

20    they ask a question and you are not sure, ask them to repeat

21    or rephrase it.

22         If they ask you a question you don't want to answer

23    here in open court, let us know at the next break when your

24    fellow prospective jurors are out, and then we will have you

25    give your response.

1        At this time, Mr. Rice, I will turn it over to the

2  plaintiff's side for voir dire.

3        MR. RICE:  Thank you, your Honor.

4        Does anyone out here have, yourself, anyone in your

5  family or any close friends that use marijuana or have a

6  medical marijuana card?

7        Okay.  I see a few hands there.  Sir, in the back --

8  get me list.  Juror 005, is that yourself that has a medical

9  marijuana card or somebody else?

10        JUROR 005:  Stepdaughter.

11        MR. RICE:  Stepdaughter.  How long has she had her

12  medical marijuana card?

13        JUROR 005:  I honestly don't know exactly how long.

14        MR. RICE:  Okay.  Would the fact that your

15  stepdaughter has a medical marijuana card cause you any

16  concern in hearing about marijuana trafficking in this case?

17        JUROR 005:  No.

18        MR. RICE:  Juror 006, did you have your hand up as

19  well?

20        JUROR 006:  Yes.

21        MR. RICE:  What is your circumstance?

22        JUROR 006:  It is for my oldest son.  He moved out of

23  the house and then he got a card.  And, no, that wouldn't have

24  no bearing whatsoever in the case.

25        MR. RICE:  Thank you.  Could I see the hands again?

1          There is quite a few, okay.

2          Juror 003?

3          JUROR 003:  My dad's cousin used to own a cannabis

4    store in San Francisco.

5          MR. RICE:  That's a little bit beyond having just a

6    medical marijuana card.  Would the fact that your dad's cousin

7    had a marijuana, kind of a dispensary, would that affect you

8    at all?

9          JUROR 003:  No.  No, it won't.

10          MR. RICE:  Sir, did you have your hand up still?

11    Yes, Juror 016?

12          JUROR 016:  Right.  The sister of one of the girls

13    that works at my office with me has a card.

14          MR. RICE:  Would that affect you at all in this case

15    listening to the evidence?

16          JUROR 016:  No.

17          MR. RICE:  Juror 001?

18          JUROR 001:  My husband has cancer and he is using

19    marijuana.

20          MR. RICE:  Oh, okay.  Would the fact that someone so

21    close to you is using marijuana to treat their cancer, would

22    that cause you any concern in listening to the testimony in

23    this case?

24          JUROR 001:  No.

25          MR. RICE:  Juror 020?

1    JUROR 020:  I do have a couple of friends that do

2  have their medical card, but no, it wouldn't affect it.

3    MR. RICE:  All right.  Is there anybody in the jury

4  panel that has any personal, moral, or religious beliefs that

5  would be a problem for you if you are selected as a juror in

6  this case?  Okay.

7    Juror 001, you are a school nurse, I believe you

8  said?

9    JUROR 001:  Yes.

10    MR. RICE:  What grade levels do you cover?

11    JUROR 001:  From three years old to 22.

12    MR. RICE:  Quite a range.

13    JUROR 001:  Yes.

14    MR. RICE:  Have you been involved in any substance

15  abuse training or anything like that as a school nurse?

16    JUROR 001:  By the Clovis Police.

17    MR. RICE:  As far as working with students at your

18  schools?

19    JUROR 001:  Yes.

20    MR. RICE:  You have?  Okay.  The fact that you engage

21  in substance abuse training for students, would that give you

22  any difficulty here in being fair to both sides, you know, on

23  a drug case?

24    JUROR 001:  No, I don't think so.

25    MR. RICE:  All right.  Let's see, Juror 002, you are

1  in Human Resources at a community college.

2          JUROR 002:  Yes.

3          MR. RICE:  Same sort of inquiry.  As part of the

4  Human Resources, have you had any experience with like

5  employees that had substance abuse problems or things like

6  that?

7          JUROR 002:  Yes.

8          MR. RICE:  Okay.  Would the nature of those

9  experiences, dealing with substance abuse problems with

10  employees, cause you any difficulty one way or the other with

11  being a fair juror in this case?

12          JUROR 002:  No.  Not at all.

13          MR. RICE:  Juror 006, I think you mentioned that you

14  work in a program called "Go Kids"?

15          JUROR 006:  Yes.  It is a nonprofit organization in

16  the child care system.

17          MR. RICE:  You have about 1500 kids?

18          JUROR 006:  Yes.

19          MR. RICE:  What's the age range?

20          JUROR 006:  We have from six weeks of age to 13 years

21  of age.

22          MR. RICE:  Does your organization or yourself engage

23  in any kind of substance abuse training for the kids?

24          JUROR 006:  No.

25          MR. RICE:  Okay.  Juror 018?

1          JUROR 018:  Yes.

2          MR. RICE:  You were with the Highway Patrol for 30

3    years?

4          JUROR 018:  Yes.

5          MR. RICE:  Were you involved in any of the drug

6    interdiction programs at the highway patrol?

7          JUROR 018:  I was not.

8          MR. RICE:  You were not?

9          JUROR 018:  No.

10         MR. RICE:  This is kind of a general kind of question

11   similar to what the Judge just asked you, but is there any

12   reason why any of you might not want to sit as a juror in this

13   case that Mr. Hodgkins or myself or Ms. Alsworth or the Court

14   should know about?  Okay.

15         Thank you very much.

16         THE COURT:  Defense.

17         MR. HODGKINS:  Good afternoon.  Can you imagine how

18   hard it is for either Mr. Rice or for me to stand here, not

19   knowing you at all, except for the questions -- and it was

20   very well done, what the Judge did -- and knowing the burden

21   that we have on us if there is something that's being hidden

22   that isn't being brought out?

23         Every attorney in this room has been in that

24   situation before, where it has come out after a jury is

25   already impaneled, that there was something underneath which

1  wasn't explained at this stage, okay.

2         And if I have one fear every time I step into a

3  courtroom, it is that.  Can you understand that?  Does that

4  sound unreasonable, for me to feel that way?

5         I'm not saying that any of you -- please.  I'm not

6  accusing.  I'm not saying that any of you are those type of

7  people.

8         But I am pointing my finger up -- not at you -- and

9  I'm saying this:  I want a shot in this case.  I want a fair

10 shot.  I have some things to say.  And if there are any of you

11 that, because of some predisposition, have already made up

12 your mind, then please, I am begging you to let me know right

13 now.

14        Let me tell you something.  When it comes to animals,

15 I know what the law is.  I know a defendant is presumed

16 innocent.  I know that the burden of proof is on the

17 prosecution, and I have as good an idea as anybody as to what

18 "beyond a reasonable doubt" is defined as.

19        But you put me as a juror on a case in which an

20 animal has been hurt in some way, I can't sit on it.  Okay.  I

21 know the law, but I can't sit on it.

22        So I'm asking you.  We have, and I will give you a

23 little bit more information, a Deputy Chief of Police of the

24 Fresno Police Department, second in command, 30 years'

25 experience.

1    Is there anything about that relationship because of

2    the police officer who wrote a ticket years ago -- was that

3    you?  Did you win?

4         JUROR 017:  Actually, no, I did not.

5         MR. HODGKINS:  Never ask a question you don't know

6    the answer to, okay.

7         But if there is something regarding police that I

8    need to know about that is in the back of your mind, okay, I

9    would like you to tell me now, because I don't know how to get

10   it out other than to simply ask you directly if there is

11   something here that I don't know.

12        So I assume since there is no raising of hands, that

13   none of you have something, when I tell you that it is not

14   only about a police officer, it is about a Deputy Chief of

15   Police, that would cause you to say, you know, "I'm sorry, but

16   I know you have a problem, Marshall, with sitting on cases

17   involving animals.  I have a problem with this."

18        And, you know, my next question to you is simply, can

19   you be fair?

20        I don't want to get into the details.  They are your

21   business.  Is there anybody who is thinking of anything that

22   they want to bring to my attention regarding all of that?

23        Okay.  You know, because the Judge has told you that

24   as Mr. Foster, as Keith Foster sits over there right now, he

25   is presumed innocent, okay.

1       And since he is presumed innocent, if, for example,

2 you were asked, we impaneled you as the jury, we said, "You're

3 the jury right now," okay.  You are the ones, the 12 of you,

4 and maybe a couple of alternates, because we are going to pick

5 those too, and we want you to go back to the jury room right

6 now, Juror 008, okay.  And we want you to go back to the jury

7 right now, and I want you to decide the case, all right.

8       And she smiles at me.  And the reason she is smiling

9 at me is, why?  "Well, Mr. Hodgkins, don't you have anything

10 to say?"

11       "Doesn't Mr. Rice have anything to say in this case?"

12       Isn't that what you are asking, Juror 008?

13       JUROR 008:  Correct.

14       MR. HODGKINS:  But that's not the facts I'm giving

15 you in my hypothetical.  Trust me, it ain't going to happen,

16 okay.

17       But just for purposes of illustrating a point, if you

18 were impaneled.  This is the witness stand right here.  Didn't

19 hear one word of evidence in this case.  And you would go back

20 and you are to decide the case, Juror 008, what would your

21 verdict be?

22       JUROR 008:  Not guilty.

23       MR. HODGKINS:  Anybody disagree with Juror 008?

24       The principle is that since he is presumed innocent,

25 if there was no evidence presented, then it's got to be not

1   guilty.  Okay.

2        Anybody have any problem with that at all?  Anybody

3   feel that, well, you know we have spent a lot of time and

4   effort here just to get where we have gotten today, and

5   because of the time and effort that we have put into this

6   today, that this is a case where we should give the

7   prosecution the benefit of the doubt?  Does anybody feel that

8   way?

9        You do understand -- and tell me if any of you

10  disagree.  You do understand that it is their burden to prove

11  him guilty.  And if they were to finish their entire case and

12  you weren't convinced, and I hadn't said a word, which would

13  be unlike me, okay, but if I hadn't said a word throughout the

14  entire thing, I would walk outside and brag that I did, okay,

15  and that I convinced all of you, okay, but if I hadn't said a

16  word and they sat down and they did their case and you went

17  back there, but you weren't convinced that Mr. Foster was

18  guilty beyond a reasonable doubt, Juror 008, again, what would

19  your verdict be?

20       JUROR 008:  Not guilty.

21       MR. HODGKINS:  Because you weren't convinced,

22  correct?  I find your curiosity with this particular case

23  interesting, Juror 008, that you would get on the Internet to

24  actually look up what the case is about.

25       Is there anything that I need to know in your

1   background on why you would find this particular case

2   something that you wanted to research?

3           JUROR 008:  I was still in school when something

4   started with this case.

5           MR. HODGKINS:  Two years ago?

6           JUROR 008:  Yeah.

7           MR. HODGKINS:  Two years ago.  Go ahead.

8           JUROR 008:  In a public administration program, so it

9   was of particular interest.

10          MR. HODGKINS:  There is no specific thing that has

11  happened with you or your life that would cause you to want to

12  be particularly interested in this?

13          JUROR 008:  No.

14          MR. HODGKINS:  Okay.  Nothing with regard to the

15  police department which would cause you to want to research it

16  further?

17          JUROR 008:  No.

18          MR. HODGKINS:  All right.  Do you all see what I said

19  when I first started out here, first stood up with you, about

20  wanting my shot?  You are entitled to that shot if you ever --

21  and I hope it never happens to you -- are charged with a

22  crime.

23          But so is he.  All right?  And again, I would beg of

24  you -- a few more questions -- but I would beg of you to let

25  me know if there is something that comes up while I'm talking

1   or while you are responding to my questions that I need to

2   know.

3        There is nothing worse than not even having a chance

4   and you didn't know it.  Okay.  Fair enough?  Okay.  All

5   right.

6        There is another thought process that is almost

7   difficult and almost too much to bear in a federal court.  We

8   are in a federal court.  We are trying a criminal case in the

9   federal court.

10       You know, when you try a criminal case in the state

11  court, the District Attorney of that county stands up as the

12  prosecutor and says, "The People of the State of California."

13  Okay.  That hurts a little bit.

14       But the prosecutor stands up in a federal court and

15  says, "On behalf of the United States of America."

16       Now, I'm as patriotic as the next person, but that

17  "United States of America" includes him too.  Okay.  You all

18  realize that?  Do you all have any problem with that at all?

19  These are designations, okay.  That's all they are, are

20  designations.

21       And we are going to put on a case.  I ask you, will

22  you please listen to the entire evidence.  You know, they have

23  the burden of proof, so they get to go first, okay.  You don't

24  get to hear my side of the coin first, although you will hear

25  my opening statement, okay.  They get to go first, and then we

1    respond to all of that.

2          Am I asking too much of any of you to listen to all

3    of it, all of it, all of the case that's involved here?

4    Because the prosecution isn't going to present evidence that

5    I'm going to present.  And that evidence will help you make a

6    decision in your case.

7          You okay with that?  Okay?  All right.

8          Now, there is something else I probably ought to say

9    right now too.  I am sorry if at any time during this trial,

10   including right now, if I rub you the wrong way.  It is not my

11   idea to rub the jurors, who have my client's life in their

12   hands, to rub them the wrong way, but you have a personality

13   and I have a personality, and this is the way I handle it.

14         You would agree with me that the object is to make up

15   your mind, if I have annoyed you in some way, based on the

16   facts of the case, not based on personalities?  Is that

17   correct?  All right.

18         Is there anything that any of you want to say to me

19   regarding what I have said to you up to right now?

20         Now, Juror 014.

21         JUROR 014:  Yes.

22         MR. HODGKINS:  I wrote down a number of things here,

23   and perhaps I wrote it down wrong, if you could help me.  You

24   said you had seen some of this on the news?

25         JUROR 014:  Yes.

1       MR. HODGKINS:  And I wrote down you weren't sure you
2  could be fair, is that correct?  Or did I write it down wrong?
3       JUROR 014:  You wrote it down wrong.
4       MR. HODGKINS:  You can be fair in spite of the news
5  you heard?
6       JUROR 014:  Yes.
7       MR. HODGKINS:  I will tell you as a juror in this
8  case, you will hear more than any reporter, whether they are
9  broadcast or print media, will hear in this case.
10      You see, they have certain deadlines, and so they are
11 out the door that I certain point in the day, okay.  Never
12 mind what happened the rest of the day, they are gone the rest
13 of the day.
14      Can you promise me, Juror 014, that you will make up
15 your mind based on this evidence?
16      JUROR 014:  Yes.
17      MR. HODGKINS:  And will you promise me that if you
18 are not convinced beyond a reasonable doubt on the guilt of
19 Mr. Foster, that you don't have any problem at all voting not
20 guilty?  Would you have any problem with that?
21      JUROR 014:  No.
22      MR. HODGKINS:  All right.  I am -- I want to bring up
23 something else because it's a little bit different in this
24 case.  I have done one or two cases in my life, okay.  And
25 usually, my clients just sit very dutifully next to me at the

1   counsel table, okay.

2          Because of Keith Foster's tremendous knowledge, which

3   you will hear about in this case, I'm going to be talking to

4   him during the trial.  I'm going to be whispering in his ear.

5          Another thing, there are four federal people at this

6   counsel table and one FBI agent sitting back there.  I don't

7   have that.  So you are not going to get the same technology

8   for a number of reasons from me, and you will see the way it

9   is played on things here.

10         But I will present the evidence to you.  It won't be

11  as technologically savvy as it is, but I'm asking you to

12  consider it as just as worthy of evidence as what is presented

13  from the other side.

14         Does anybody have any problems with that?  Okay.

15         This is perhaps my last question to you, okay.  And

16  the question is this.  Sometimes -- maybe all the time -- we

17  don't like to sit in judgment of any other human being, huh?

18  Maybe you wish you didn't have to.  Well, you picked a heck of

19  a place to sit if you don't want to do that, okay.  All right?

20         And my question is simply this:  Do any of you have

21  any religious, philosophical, otherwise, reason why you can't

22  sit in judgment of another human being?

23         You know, we are an interesting framework here.  We

24  just don't put on the evidence and say, "All right.  Go back

25  there and make up your mind as to whether somebody is guilty

1 | or not guilty.  We give you frameworks to work with.

2 | We tell you criteria that you can use to judge

3 | credibility of witnesses.  We tell you, as far as crimes are

4 | concerned, that there are certain elements, and that all of

5 | those elements must be found and met beyond a reasonable

6 | doubt.

7 | So we will give you instructions regarding all of

8 | that.  But do any of you have any reason why you feel that you

9 | could not sit in judgment of another human being in this case

10 | for any reason whatsoever?

11 | Okay.  Is there anything you want to ask me?

12 | Anything that's come to mind?  Okay.

13 | Thank you for, after lunch, staying awake.  I

14 | appreciate it.

15 | Thank you, your Honor.

16 | THE COURT:  Let me just ask counsel, are there any

17 | cause matters that you wish to approach sidebar on before we

18 | proceed with the next phase?

19 | MR. RICE:  No, your Honor.

20 | MR. HODGKINS:  No.

21 | THE COURT:  All right.  Any legal cause why the 18 of

22 | these individuals could not serve as jurors in this case?

23 | For the plaintiff's side?

24 | MR. RICE:  No, your Honor.

25 | THE COURT:  Defense side?

1        MR. HODGKINS:  No.

2        THE COURT:  Members of the jury panel, basically, we

3   went through a number of questions, and that is what we call

4   the "cause" portion of the trial itself; that is, if there is

5   any reason why you could not serve as a juror, this would have

6   been the time for that to be disclosed.

7        Now, what the attorneys have indicated, there are no

8   cause matters, means there is no legal reason, based upon your

9   responses, that the 18 of you could not serve as jurors in

10  this case.

11       And I do need to mention something.  We will have a

12  jury of 12.  That's traditional.  The reason we have 18 of you

13  in the jury box to question you is it is a little more

14  efficient to do 18 than 12 at a time, because now we are going

15  to switch over to the next phase of the jury selection

16  process, which is what we call the "peremptory challenge"

17  stage.

18       By law, both in the state court, federal court,

19  parties, civil, criminal cases, have the right to exercise

20  what we call "peremptory challenges"; that is, they can ask

21  the Court to thank and excuse any one of you, and they are not

22  allowed to state a reason, and they don't state a reason, but

23  because they pass for cause, you know that if you are excused,

24  it is not because you gave the "wrong" answer.

25       Okay.  It is just basically this part is very

1   subjective.  What they are looking at is you individually, but

2   also the jury as a whole, in terms of what they feel

3   subjectively is the balance in terms of geographic,

4   backgrounds, age, experiences, et cetera.

5        So what we do on the peremptory challenge stage is we

6   focus the 12 of you in the jury box itself.  Right now, the 12

7   of you are the jury.

8        However, we do now go to the peremptory challenge

9   stage.  The lawyers can ask to thank any one of the 12 of you.

10  And, again, it is very quick.  It is, thank and excuse

11  prospective juror number such and such, so and so, and if your

12  name is called, you can be excused.

13       Down side, of course, is you do have to call that 800

14  number after 5:00 p.m., on Friday to see if there is another

15  assignment for you.

16       If you need to check with the jury administrator on

17  the second floor, in case you need a note for employment

18  purposes or whatever, to verify that you were here, you can do

19  that.  If you have any followup questions of the jury

20  administrator, you can ask her or them on the way out.

21       Now, so what about the six of you in the front row?

22  Okay.  Now, if any of the 12 in the box are excused, then you

23  will take your place, and that will be starting with you,

24  Juror 021, and working down the line.

25       So basically, the lawyers know who their jury would

1  be as they go down the line.

2  Now, so those of you in the audience area, though, if

3  they exercise their peremptories and we run out of folks here,

4  and there are only 11 in the box, then we are going to call

5  the next batch up here and we will continue on with the jury

6  selection process.

7  Okay.  All right.  Let me ask if there is anything I

8  need to address or take up for counsel before we begin the

9  peremptory challenge stage?

10  For plaintiff's side?

11  MR. RICE:  No, your Honor.

12  THE COURT:  Defense side?

13  MR. HODGKINS:  No.

14  THE COURT:  Very well.  With that then, we will go

15  ahead and start the peremptory challenge stage.  We will start

16  with the plaintiff's side, and the plaintiff may exercise its

17  first peremptory.

18  MR. RICE:  Thank you, your Honor.  The government

19  would thank and excuse Juror Number 8, Juror 008.

20  THE COURT:  Juror 008, you are excused, with our

21  thanks.  And you can keep in touch with us on the Internet,

22  for sure.

23  So what we are going to do is we are going to have,

24  in a moment, Juror 021, you are going to take seat number 8.

25  It is the defense turn.

1        MR. HODGKINS:  Thank you, your Honor.  The defense

2  would ask to thank and excuse the Juror Number 2, Juror 005.

3        THE COURT:  That would be 5 because we are going

4  right to left.  So it would be 5?  Juror 005 is excused with

5  our thanks.

6        So then Juror 014, if you can go ahead and take seat

7  number 5.

8        Next, it is plaintiff's peremptory.

9        MR. RICE:  Your Honor, the government would thank and

10  excuse Juror Number 6, Juror 006.

11        THE COURT:  You are excused with our thanks.  Thank

12  you very much.

13        Juror 015, could you take seat number 6.

14        Defense peremptory.

15        MR. HODGKINS:  Defense passes.

16        THE COURT:  Plaintiff's peremptory?

17        MR. RICE:  Your Honor, the government will thank and

18  excuse Juror Number 6, Juror 015.

19        THE COURT:  You are excused with our thanks.  Thank

20  you very much.

21        Juror 016 will take that seat.

22        It is the defense peremptory.

23        MR. HODGKINS:  The defense would ask the Court to

24  thank and excuse Mr. Juror 016, please.

25        THE COURT:  Juror 016, you are excused with our

1   thanks.  Thank you very much.

2           Juror 017 will take that, please.

3           It is again the defense peremptory.

4           MR. HODGKINS:  The defense pass.

5           THE COURT:  Plaintiff's peremptory?

6           MR. RICE:  The government passes.

7           THE COURT:  All right.  Both sides have passed

8   consecutively.  Is there anything further for the jury itself

9   before I have the oath administered?

10          Plaintiff's side, for the 12 in the box?

11          MR. RICE:  No, your Honor.

12          THE COURT:  Defense?

13          MR. HODGKINS:  No, your Honor.

14          THE COURT:  All right.  Those of you in the jury box,

15  the 12 of you, you would be the jury.

16          Is there any reason why any of you could not serve as

17  a juror in this case?  Please, if there is, let me know.

18          If the 12 of you could stand right where you are at.

19          Ms. Kusamura will administer an oath to you.

20      (The jury was duly impaneled and sworn.)

21          THE COURT:  Please be seated.  We will now select

22  three alternate jurors.

23          And so with respect to first alternate, we have one

24  remaining, let's see, it is the -- oh, it is the defense

25  peremptory.

1    MR. HODGKINS:  The defense would ask the Court to

2  thank and excuse Juror 018.

3    THE COURT:  Juror 018, you are excused with our

4  thanks.  Thank you very much.

5    I'm going to ask Ms. Kusamura to fill the front row

6  with six new individuals.

7    THE CLERK:  Juror 022, Juror 023, Juror 024, Juror

8  025, Juror 026, Juror 027.

9    THE COURT:  Okay.  Now, for the six of you, we are

10  going to begin the process anew with the questions, but I'm

11  not going to repeat all the questions that I had previously

12  asked.

13    The reason for that is unless you tell me otherwise,

14  let me ask all six of you, and you can nod and acknowledge,

15  were all of you able to hear all the questions I asked and the

16  attorneys asked?  Okay.  Any of you were not able to do that?

17    Were you able to form an answer in your own minds as

18  you were sitting out there in the audience area?

19    Were you able to hear and understand all the answers

20  that were given by the other prospective jurors?

21    What I'm going to do is I'm going to be asking you

22  questions similar to what I asked the other prospective jurors

23  before they became jurors in this case.  I'm not going to ask

24  them all over again.

25    I think in sitting out there in the morning and all

1    afternoon, I think you realize what we are looking for.  We

2    are looking for you to think in your own mind, and that's why

3    we asked the question, "Can you be fair and impartial to both

4    sides?"

5            That is, as you are sitting there, are you already

6    thinking, "I'm sort of leaning for or against one side or the

7    other," et cetera?

8            And so if I don't ask a question specifically that I

9    have asked the other folks earlier, but you would want to give

10   an answer to, please speak up, because I don't want to

11   short-circuit this.

12           This is as important for you folks as it was for the

13   original individuals who were in the box when I asked all of

14   the questions specifically, but I don't want to insult your

15   intelligence by going over, rote, each one, understanding that

16   you have sat here the whole morning and understand basically

17   what we are trying to accomplish here.

18           We are not trying to embarrass you, put you on the

19   spot, or argue with you.  We just want to see whether or not

20   right now, sitting, looking at these folks, that you are fair

21   and impartial.

22           Again, we recognize that it is a possibility that you

23   might not be able to, in this particular case, because of

24   something in your own background.  It could be, as you heard

25   from other folks, maybe something you saw or heard or read

1  regarding the case.  It might be your thoughts about some of
2  the things that we talked about with the other jurors.
3        So we totally understand that.  And what we really
4  appreciate, would appreciate is your candor.
5        So again, if I don't cover all the questions
6  specifically, please speak up.
7  BY THE COURT:
8  **Q.**  I'm going to start off with the basic stuff first that's
9  individual to you.  I'm not sure where the microphone is.
10 Hand it all the way down to Juror 022.  And I will go through
11 the basic questions first, so it will refresh your memory as
12 to what they are.
13        And then Juror 023, when I get to the rest of you, go
14 ahead and give the responses.
15        First, Juror 022, where do you live?
16 **A.**  I live in Tehachapi.
17 **Q.**  Do you work outside the home?
18 **A.**  Yes, I do.
19 **Q.**  What do you do?
20 **A.**  I'm a manager of a water and sewer storm drainage company.
21 **Q.**  Your marital status?
22 **A.**  Married.
23 **Q.**  Does your spouse work outside the home?
24 **A.**  Yes.
25 **Q.**  What does she do?

1   **A.**   She is a teacher.

2   **Q.**   What grade level?

3   **A.**   Third.

4   **Q.**   Okay.  Any children?

5   **A.**   Four.

6   **Q.**   Adult or school?

7   **A.**   All adult.

8   **Q.**   Do they work outside the home?

9   **A.**   Yes, they do.

10  **Q.**   What do they do?

11  **A.**   Starting from the oldest, a ballroom dance teacher and

12  owner; a food service worker; carpenter; and a ranch hand.

13  **Q.**   Any other adults living in your household?

14  **A.**   No.

15  **Q.**   Your educational background?

16  **A.**   High school.

17          THE COURT:  Perfect.  If you could pass the

18  microphone down then.

19  BY THE COURT:

20  **Q.**   Juror 023, if you could give your background information?

21  **A.**   I blanked.

22  **Q.**   Where do you live?

23  **A.**   Bakersfield.

24  **Q.**   Do you work outside the home?

25  **A.**   I do.  I work for my husband.  I'm a food safety officer,

1  director.  My husband is a farmer, and we have a cold storage.

2  **Q.**  Perfect, great.  Any children?

3  **A.**  No children.

4  **Q.**  Any other adults living in your house?

5  **A.**  No.

6  **Q.**  Education?

7  **A.**  Went to college, left, went into health care, and working

8  for my husband.

9  BY THE COURT:

10  **Q.**  Juror 024?

11  **A.**  I'm from Visalia.  I have one kid.  I forgot the

12  questions.

13  **Q.**  Do you work outside the home?

14  **A.**  Yes.

15  **Q.**  What do you do?

16  **A.**  Dinuba, as a CNA.

17  **Q.**  I'm sorry, as a?

18  **A.**  CNA.

19  **Q.**  What is that?

20  **A.**  Certified nurse assistant.

21  **Q.**  Do you work with a hospital there or private, at a clinic?

22  **A.**  It is a clinic.

23  **Q.**  Okay.  And your marital status?

24  **A.**  Single.

25  **Q.**  You have already mentioned you have a child.  Any other

1 adults living in your household?

2 **A.** Yes, my mom.

3 **Q.** Does she work outside the home?

4 **A.** Yes.

5 **Q.** What does she do?

6 **A.** Ruiz Foods.

7 **Q.** And your educational background?

8 **A.** College.

9 **Q.** Did you have a major or emphasis in college?

10 **A.** Just the CNA license.

11       THE COURT: Got it. Thank you. If you could pass

12 the microphone down.

13 BY THE COURT:

14 **Q.** Let me, is it (last name redacted)?

15 **A.** (Last name redacted).

16 **Q.** Okay. Juror 025?

17 **A.** I live in Lemoore. I'm a homemaker, but I have done lots

18 of volunteer work through my children's school and at church.

19       I am married. My husband is retired from the

20 National Weather Service, but presently working in the

21 aviation field, instructing, examining, crop dusting.

22       I have three adult children. Two are still at

23 university level. One has graduated. He is a mechanical

24 engineer for Tesla.

25       No one else lives in the house.

1        And I have a Bachelor of Science in Business

2   Administration, specifically computer applications.

3        THE COURT:  Thank you very much.

4   BY THE COURT:

5   **Q.**  Juror 026?

6   **A.**  I live in Clovis.  I work for the Social Security

7   Administration as a Title 16 Claims Specialist Trainee.

8        I am married.  My husband is an immigration defense

9   attorney.

10        No children.

11        My mother-in-law lives with us.  She is currently

12   unemployed.  Before that, she was an office manager for a

13   pediatrician's office.

14        And highest level of education is a Juris Doctorate.

15   **Q.**  Let me ask you, working with the agency, are you working

16   in their legal department?

17   **A.**  No.  I take claims for SSI applications.

18   **Q.**  So you and your spouse both have a legal background and

19   training?

20   **A.**  Correct.

21   **Q.**  Have either one of you practiced criminal law?

22   **A.**  He does a little bit of criminal law in response to

23   immigration, just mostly post-conviction.

24   **Q.**  Okay, all right.  Now, let me ask you, either your

25   background, training and experience, or your spouse's

1  background, training and experience in the law, do you think

2  that would affect how you handle yourself as a juror in this

3  particular case?

4  **A.**  No, your Honor.

5  **Q.**  Now, and it's really important for everybody, but

6  certainly for you, during the course of the trial, you may

7  hear something, or, you know, that you are just not sure of.

8  It is very -- you are thinking, "Okay, it is very simple.  You

9  know, I don't know this definition specifically, but I can

10  look at it very quickly," or "I can ask my spouse," or

11  whatever.

12        You can't do that, okay.  And, again, if you have any

13  questions on the law, even though you know that you could find

14  that out in a heartbeat just by doing research, you can't do

15  it.

16        You have to write down the question and pose it to

17  the attorneys.  They may or may not be able to answer the

18  question simply because of rules of procedure or whatever.

19  And that doesn't give you license then to say, "Okay.  They

20  can't answer the question, they wouldn't answer it, so I'm

21  going to find the answer."  You can't do that at all.

22  **A.**  I understand that, your Honor.

23        THE COURT:  Perfect, great.  Pass the microphone

24  down.

25  ///

1   BY THE COURT:

2   **Q**. Juror 027?

3   **A**. I'm from Fresno, and I'm divorced. I have two grown

4   daughters and one grown son. My one grown daughter is a tech

5   person for a high school up in Washington. My other daughter

6   is a tech person for a computer firm up in the Bay Area. And

7   my son is the manager of the Fresno Monsters Falcons -- or not

8   Falcons, excuse me, the Fresno Monsters hockey team.

9         THE COURT: Thank you.

10        And we will go ahead and continue on since you have

11   the microphone. I will go ahead. Do any of you know anything

12   about this case at all? Any of you? Any of the six of you?

13        JUROR 027: No.

14        THE COURT: Now, do any of you know anybody that we

15   have mentioned by name so far? No, okay.

16        All right. Let me ask, have any of you ever served

17   as a juror before? Okay. Three of you have -- oh, four of

18   you have.

19        Juror 027, let me start with you. What kinds of case

20   was it?

21        JUROR 027: It was about 30 years ago, and it was an

22   armed robbery case.

23        THE COURT: Was a verdict reached?

24        JUROR 027: Huh?

25        THE COURT: Was a verdict reached in that case?

1          JUROR 027:  Yes.

2          THE COURT:  Anything that would affect your service

3     as a juror today?

4          JUROR 027:  No.

5          THE COURT:  You understand anything you might

6     remember about that case 30 years ago, you have to disregard

7     for the purposes of this case?

8          JUROR 027:  Yes.

9          THE COURT:  Pass the microphone down.

10         How many times have you served as a juror?

11         JUROR 026:  Once before, criminal.

12         THE COURT:  What kind of a case was it?

13         JUROR 026:  It was a theft and possession.

14         THE COURT:  Was a verdict reached?

15         JUROR 026:  Yes.

16         THE COURT:  Anything about that experience that would

17    affect your service as a juror here today?

18         JUROR 026:  No, your Honor.

19         THE COURT:  Can you totally disregard what you might

20    remember about that case for the purpose of this case?

21         JUROR 026:  Yes, your Honor.

22         THE COURT:  Juror 025.

23         JUROR 025:  Criminal case, two years ago.  Accident,

24    bike versus car, and a whatever was reached.

25         THE COURT:  Was a verdict reached?

1           JUROR 025:  Yes.

2           THE COURT:  Anything about that experience that would

3    affect your service as a juror here today?

4           JUROR 025:  No.

5           THE COURT:  You can totally disregard what you might

6    remember about that case for the purpose of this case?  You

7    okay with that?

8           JUROR 025:  Yes.

9           THE COURT:  Juror 023?

10          JUROR 023:  A criminal and a civil case.  The

11   criminal case, about three years ago.  A verdict was met and

12   reached.  And a civil claim about four years before that.

13          THE COURT:  What kind of case was the criminal case?

14          JUROR 023:  Attempted murder.

15          THE COURT:  Then the civil?

16          JUROR 023:  Lawsuit.  Medical.

17          THE COURT:  Was it medical malpractice?

18          JUROR 023:  Yes.

19          THE COURT:  Anything about either of those

20   experiences that would affect your service today?

21          JUROR 023:  No.

22          THE COURT:  Can you disregard what you heard in those

23   cases for the purposes of this case?

24          JUROR 023:  Yes.

25          THE COURT:  Have any of the six of you been a party

1 | to or witness to legal proceedings?

2 | We will start with Juror 022?

3 | JUROR 022: I had to sue somebody, and lost on that

4 | case.

5 | THE COURT: How long ago?

6 | JUROR 022: That was 17 years ago.

7 | THE COURT: What kind of case was it?

8 | JUROR 022: It had to do with rental property.

9 | THE COURT: All right. Anything about that

10 | experience that would affect your service as a juror here

11 | today?

12 | JUROR 022: No.

13 | THE COURT: All right. Thank you.

14 | Juror 023?

15 | JUROR 023: Public intoxication many, many years ago.

16 | And I'm a CASA advocate, so I have been to many of my cases.

17 | THE COURT: Would any of those experiences affect

18 | your service as a juror here today?

19 | JUROR 023: No.

20 | THE COURT: On the prior case, anything about that

21 | experience that would affect your service as a juror?

22 | JUROR 023: No.

23 | THE COURT: Thank you.

24 | JUROR 025: Two. One was 34 years ago. I was a

25 | passenger in a car accident.

1      And then one was about ten years ago.  I was a

2 prospective witness for an accused for sex with a minor.  I

3 was not actually called in; I was kept in the hallway the

4 whole time.

5      THE COURT:  All right.  Anything about either one of

6 those experiences that would affect your service as a juror

7 here today?

8      JUROR 025:  No.

9      THE COURT:  Thank you.

10      JUROR 026:  Just one routine traffic ticket.

11      THE COURT:  How long ago?

12      JUROR 026:  About three years ago.

13      THE COURT:  Anything about that experience that would

14 affect your service as a juror here?

15      JUROR 026:  No.

16      JUROR 027:  Mine was about 40 years ago, for civil

17 court, for suing for the wrongful death of my husband.

18      THE COURT:  Anything about that experience that would

19 affect your service as a juror here today?

20      JUROR 027:  No.

21      THE COURT:  In terms of the outcome -- and that is

22 very obviously emotional for you, however it wound up -- were

23 you okay, essentially, with the results of the proceeding

24 itself?

25      JUROR 027:  Uh-huh.

1          THE COURT:  Thank you.  Anything else about the legal
2    system or the court system that you have not had a chance to
3    mention as far as your exposure or experiences with any of
4    that?
5          I did go through a number of basic principles that
6    apply in a criminal law case.  The presumption of innocence, a
7    person charged with a crime or crimes is presumed to be
8    innocent by law.
9          The practical question for you is, as Mr. Foster is
10   seated there, are you actually affording him that presumption
11   of innocence?
12         First of all, as to the legal principle, anyone have
13   any questions, qualms, or concerns about that?
14         As to the practical matter, do any of you have any
15   qualms, concerns, or anything else about affording Mr. Foster
16   that presumption of innocence?
17         Okay.  The second principle is the burden of proof.
18   In a criminal law case, the burden of proof is solely on the
19   plaintiff's side.  That is the government.
20         The corollary rule is that the defendant does not
21   have to testify.  The defendant does not have to put on any
22   evidence.
23         So, again, the little scenario I gave you, that you
24   are selected as a juror, you heard the evidence.  You weren't
25   not convinced beyond a reasonable doubt that the plaintiff has

1   proven the case, but Mr. Foster chooses not to testify after

2   consulting with his attorney.

3           You can't say, "Well, the government hasn't proven

4   its case, but Mr. Foster didn't testify, so he must be guilty.

5   And I'm going to go ahead and find him guilty."

6           You can't do that, okay.  He is entitled by law to

7   require the government to prove its case all by itself.

8   Either proves it or it doesn't.

9           Does anyone have any concerns, qualms, problems about

10  that?

11          Then finally, the standard of proof is beyond a

12  reasonable doubt.  I can't quantify it for you specifically.

13  We do have a jury instruction on it.  But it is the highest

14  standard that we have in the legal system.

15          Anyone have any questions, qualms, or concerns about

16  the fact that in a criminal case, the government, plaintiff,

17  must prove its case or cases, charges beyond a reasonable

18  doubt?  Not beyond all possible doubt, but beyond all

19  reasonable doubt.  Is everyone okay with that?

20          And your role as jurors is to determine what the

21  facts are.  You are the sole deciders of the facts in this

22  case.  You will decide the facts from witnesses on the witness

23  stand, exhibits, any agreements made by the parties.

24          You have to decide credibility or believability of

25  every witness, including people that are designated as expert

1 witnesses.

2 Even with expert witnesses, you can choose not to

3 believe anything they have to say. The fact they are

4 designated as, quote, "experts" doesn't mean that you have to

5 lock-step follow what they have to say, okay? Because you can

6 disagree with what they have to say based upon all the other

7 evidence in the case.

8 Anyone have any concerns, qualms, or issues regarding

9 ability to determine credibility or believability of any

10 witness? Anyone have any problem with that?

11 Okay. As far as the standards, I will give you some

12 instructions on what to look for. You cannot base credibility

13 or believability solely on job title itself.

14 And I used as the primary example law enforcement.

15 We make the assumption everyone respects law enforcement, law

16 enforcement officers, et cetera, but when anyone who comes on

17 to that witness stand has the same basic criteria or you

18 exercise the same basic criteria as far as credibility or

19 believability.

20 Job title itself is not sufficient in terms of

21 credibility or believability. That relates to law enforcement

22 officers also.

23 Is everyone, as we were talking about that earlier,

24 anyone have any qualms, questions, or concerns about that as

25 you were sitting out in the audience area? Okay.

1    Of course, the flip side of that is bad experiences.

2 And again, we had talked about bad experiences, which could be

3 anything from being pulled over for a traffic ticket or being

4 actually arrested, maybe prosecuted.  You, a family member or

5 a close friend.

6    And so there is also that other side of maybe there

7 is a bad experience in your life that might cause you to give

8 less weight to a witness simply because of the job title of

9 someone in law enforcement.  Anyone have any questions, qualms

10 or concerns about that?

11    I'm going to ask you specifically, and Juror 027, we

12 will go ahead and start with you.  See if you know anybody in

13 law enforcement and whether or not that might impact your

14 service as a juror in this case.

15    So I will just ask you, the six of you in general, if

16 you know anyone in law enforcement?  If you do, you can just

17 give a basic description, neighbor, relatives or whatever.

18    If you don't know in law enforcement, pass the

19 microphone down.

20    We will start with you, Juror 027.  No?  Okay.

21    JUROR 025:  Members of our church, but we never speak

22 about issues.

23    THE COURT:  Would that relationship affect your

24 service as a juror?

25    JUROR 025:  No.  Not at all.

1         THE COURT:  Perfect.  Thank you.

2         JUROR 023:  No.

3         JUROR 022:  Just a couple of friends, but they are

4 retired, have been over 20 years, from law enforcement, but it

5 wouldn't bear any.

6         THE COURT:  In this case, it would not affect, okay.

7         We discussed with the jury a little bit about what

8 this case involves, drugs, possibly mention of heroin,

9 marijuana, a prescription drug for pain.

10        And as you were sitting out in the audience there

11 listening, and the -- Mr. Rice had talked about medical

12 marijuana.  And I want to just say that medical marijuana is

13 legal in the State of California.  Don't get me wrong on that.

14        But where there is a conflict between federal and

15 state laws in the federal courts, federal law prevails.  And

16 in this case, you don't have to worry about, "Okay.  Am I

17 illegal because I have a medical marijuana card?"

18        That's not what this case is about.  That's not what

19 we are dealing with.  We just want to know of any experience

20 you have had, you, a family member, close friend, with any

21 kind of drug, whether prescription or otherwise, that might

22 have an influence on you.

23        And sometimes, it is, "Oh, if somebody mentions

24 heroin, as far as I'm concerned, I don't care who is on the

25 defense side, I'm going to find them guilty because, you know,

1   my brother-in-law or somebody overdosed on heroin," or

2   whatever, those sorts of things.

3          So you heard the discussion on that.  I won't

4   necessarily elaborate.  But is there anything about the type

5   of charges these are, and specifically, with maybe indications

6   of heroin, marijuana, or a prescription painkiller drug, that

7   causes any of you any concern at all about being able to be

8   fair and impartial?

9          Now, the fact that there might be some mention of

10  drugs doesn't automatically find Mr. Foster guilty, okay.

11  That's just one aspect of the case.  Is everyone okay with

12  that?  Okay.

13         Again, I have gone through this obviously much more

14  quickly than we did this morning with everyone else, but

15  because you were attuned, it is almost hopefully like you were

16  actually in the jury box as you listened to all the questions.

17         But I may not have covered something with you because

18  I went over it a little more quickly.

19         Is there anything you have not had the chance to

20  mention?

21         Juror 025?

22         JUROR:  On scheduling, I just want to make sure that

23  we will be done by July 8th.  I cannot go past that.  It is a

24  month past our commitment.

25         THE COURT:  Absolutely.  I don't think that's going

1   to be an issue.

2           MR. RICE:  I hope not, your Honor.

3           THE COURT:  No, it will not.  And I'm glad you

4   mention that.

5           Anything else scheduling-wise that I need to address?

6   Yes, Juror 024?

7           JUROR 024:  I'm going out of town tomorrow.  I

8   already had vacations planned.

9           THE COURT:  Oh, mmmmm.  Is this something that's been

10  scheduled?

11          JUROR 024:  Yes.

12          THE COURT:  How long are you going to be gone?

13          JUROR 024:  For two weeks.

14          THE COURT:  Any inquiry?

15          MR. RICE:  We will stipulate.

16          THE COURT:  I'm sorry.  We should have known that

17  sooner.  Got it.  Juror 024, I'm going to go ahead and excuse

18  you from this case.

19          Let the jury administrator know downstairs you will

20  be gone for a couple weeks.  The basic thing is if a person is

21  excused from this trial, they have to call that 800 number on

22  Friday.  If you are going to be gone, you can't do that, so

23  check with the jury administrator on the second floor so she

24  can reschedule you for a second date to come back for trial.

25          I will go ahead and excuse you from this particular

1  case.

2         We will go ahead and fill that seat.

3         THE CLERK:  Juror 028.

4  BY THE COURT:

5  **Q.**  Juror 028, were you able to hear and understand all the

6  questions that have been asked so far?

7  **A.**  Yes.

8  **Q.**  And the answers that were given?

9  **A.**  Yes.

10  **Q.**  Okay.  Were you able to form an answer in your own mind?

11  **A.**  Yes.

12  **Q.**  Again, I'm not going to go over each and every question.

13  That doesn't mean they weren't important, but I do want you to

14  speak up.  If I do not cover something with you that you feel

15  the parties should be aware of, please speak up.

16         Now, there are some things that are unique to you

17  that I am going to ask you specifically, and they are as

18  follows:

19         First of all, where do you live?

20  **A.**  Bakersfield.

21  **Q.**  Do you work outside the home?

22  **A.**  Yes, I do.  I'm a teacher.

23  **Q.**  What do you teach?

24  **A.**  Fifth grade.

25  **Q.**  Marital status?

1  **A.**  Married.  Three young kids.  Nobody else in the home.

2  Just my wife and I.  She is a stay-at-home mom and works

3  part-time with her dad, who is an accountant.

4  **Q.**  As a teacher, your educational background?

5  **A.**  M.A. in Ed.  And also I'm working on my Admin credential.

6  **Q.**  Do you know anything about this case?

7  **A.**  No.

8  **Q.**  Do you know anybody we have mentioned by name so far?

9  **A.**  No.

10  **Q.**  Have you ever served as a juror before?

11  **A.**  Just once, recently, as an alternate, so yeah.

12  **Q.**  What kind of case was it?

13  **A.**  It was criminal.  It was guilty.  Didn't have the benefit

14  of the deliberations.  Kind of had an opinion at the end of,

15  you know of guilty -- actually, they found him not guilty, so.

16  **Q.**  And I'm sorry, what kind of case was it?

17  **A.**  Criminal, theft.

18  **Q.**  Okay.  Anything about that experience that would spill

19  over and affect you here today?

20  **A.**  No.

21  **Q.**  You had mentioned something, maybe I misunderstood.  Now,

22  the jury found the person not guilty.  You had an opinion

23  that -- and again, as far as the verdict is concerned, it

24  would not have any impact.

25          But was your opinion or thoughts contrary to what the

1  verdict came out?

2      JUROR:  Yes.  Again, I didn't, obviously, have the

3  benefit of discussing with others.

4  BY THE COURT:

5  **Q**.  Right.

6  **A**.  So by trial end, I had an idea, so.

7  **Q**.  All right.  And I will mention to you, that's the key of

8  jury deliberations.  I don't know if you ever saw the men,

9  such an old movie, "12 Angry Men."  So yeah, jury

10  deliberations is actually key.  That's when all 12 get to

11  talk.

12      And it is interesting to see how, when you talk to 11

13  others, you might or might not be persuaded.  And I will tell

14  you folks, there will be an instruction that says, look, if

15  you are the holdout, one to 11, if you still believe that you

16  have the correct decision, you don't change your mind, even

17  though 11 say the other way.  That will be part of the jury

18  instructions.

19      But based upon that experience, do you think -- and

20  I'm going to sort of make this up.  Let's say that you felt

21  strongly that the person should have been found guilty.

22      The jury, you think, and again, I'm embellishing

23  this, you thought they made a mistake, and this is now your

24  chance to rectify that.

25      No matter what, you are going to find Mr. Foster

1  guilty because this would be your opportunity to make right

2  what you felt was wrong.  Again, I'm sort of making it up.

3      Do you think that would be a thought process in your

4  mind?

5  **A.**  Not at all.

6  **Q.**  If the government doesn't prove its case beyond a

7  reasonable doubt in this case, you are okay with finding

8  Mr. Foster not guilty?

9  **A.**  I could be impartial.

10  **Q.**  Whatever might have occurred on that other case, you can

11  put out of your mind?

12  **A.**  Yes.

13  **Q.**  Perfect.  Have you ever been a party or witness to any

14  legal proceeding?

15  **A.**  No.

16  **Q.**  Any other experiences, contacts with the courts, or the

17  legal system?

18  **A.**  No.

19  **Q.**  Anything about the basic principles, presumption of

20  innocence, burden of proof, standard of proof beyond a

21  reasonable doubt, that would we talked about, that would cause

22  you some concern or hesitation as you were sitting out in the

23  audience area?

24  **A.**  No concerns.

25  **Q.**  Okay.  Are you in fact affording Mr. Foster that

1    presumption of innocence now?

2    **A.**   Yes.

3    **Q.**   Thank you.   Jury service, jury obligations, finding of the

4    facts, credibility, believability, are you okay with that?

5    **A.**   I am.

6    **Q.**   No advantage by or disadvantage by job title; that

7    includes law enforcement.   Are you okay with that?

8    **A.**   Yes.

9    **Q.**   You know people in law enforcement?

10   **A.**   Not very close, no.

11   **Q.**   Would that affect your service as a juror here today?

12   **A.**   No.

13   **Q.**   Anything about the nature of the case itself that may

14   involve some references to drugs, both illegal and legal?

15   **A.**   No.

16   **Q.**   Okay.   Anything that -- anything that I haven't mentioned

17   to you, asked you about that you feel, "He didn't ask the

18   right question"?   Anybody that you wish to mention?

19   **A.**   The only thing is maybe scheduling.   Again, it is further

20   back.   June 22nd, leaving out of the country.

21          THE COURT:   Okay.   Perfect.   You are good.   Anything

22   else?

23          Okay.   I'm going to allow counsel --

24          First of all, do you have any written followup

25   questions that you want me to ask?

1    MR. RICE:  No, your Honor.

2    THE COURT:  We will go ahead and conduct voir dire.

3    MR. RICE:  No questions, your Honor.

4    THE COURT:  Defense?

5    MR. HODGKINS:  I won't even take anything up here,

6    and I will be very brief.  You had an opportunity ad nauseam

7    to hear everything I said.

8    Is there -- you know the concerns I have and that I

9    still have.  No magical way to pick a jury.  You know, they

10   have people charge thousands of dollars to help you pick.

11   They don't know what they are doing either, you know.

12   Is there anything that you feel we should know that I

13   haven't asked you or that anybody has asked you?

14   You are going to be out of the country on the 22nd.

15   JUROR 028:  June 22nd.

16   MR. HODGKINS:  All right.  Thank you very much.

17   THE COURT:  All right.  As to the six in the front

18   row only, do counsel wish to approach sidebar on cause

19   matters?

20   MR. RICE:  Your Honor, I have no challenges for

21   cause.

22   THE COURT:  Defense?

23   MR. HODGKINS:  No, your Honor.

24   THE COURT:  The six of you, both sides have passed

25   for cause.  That means there is no legal reason why the six of

1   you could not serve as alternate jurors and, ultimately, as
2   jurors, as necessary.

3         So right now, before we continue on with the jury
4   selection process, is there anything by the six of you that
5   you have not had a chance to mention, any reason you could not
6   serve as a juror in this case?

7         We will continue on then with the peremptory
8   challenges as far as the alternate jurors are concerned.

9         And it is again the -- the first alternate would be
10  Juror 022.

11        Peremptory as to first alternate, first on behalf of
12  defense?

13        MR. HODGKINS:  Pass.

14        THE COURT:  Juror 022, first alternate on behalf of
15  plaintiff?

16        MR. RICE:  Pass, your Honor.

17        THE COURT:  Juror 022, you would be the first
18  alternate.  If you would please stand and raise your right
19  hand, the clerk will administer an oath to you.

20     (Alternate 1 was sworn by the clerk.)

21        THE COURT:  Juror 022, you can go up there and have a
22  seat in the first row there, first alternate.

23        Second alternate would be Juror 023.  Plaintiff's
24  peremptory?

25        MR. RICE:  Pass, your Honor.

1        THE COURT:  Defense peremptory.

2        MR. HODGKINS:  The defense would ask the Court to

3    thank and excuse Juror 023.

4        THE COURT:  Juror 023, you are excused with our

5    thanks.  Thank you very much.

6        Second alternate next would be Juror 028.  Defense

7    peremptory?

8        MR. HODGKINS:  The defense would ask the Court to

9    thank and excuse Juror 028.

10        THE COURT:  Juror 028, you are excused with our

11    thanks.  Thank you very much.

12        Second alternate, Juror 025, plaintiff's peremptory?

13        MR. RICE:  Pass, your Honor.

14        THE COURT:  Defense peremptory?

15        MR. HODGKINS:  The defense would ask the Court to

16    thank and excuse Juror 025.

17        THE COURT:  You are excused with our thanks.  Thank

18    you very much.

19        And so second alternate, Juror 026, plaintiff's

20    peremptory?

21        MR. RICE:  Pass, your Honor.

22        THE COURT:  Defense peremptory?

23        MR. HODGKINS:  Pass.

24        THE COURT:  All right.  Juror 026, you would be our

25    second alternate.

1    Any reason why you could not serve as an alternate

2  and then as a juror?  Stand right where you are at and the

3  clerk will administer the oath.

4    (Alternate 2 was sworn by the clerk.)

5    THE COURT:  If you could go have a seat up there on

6  the second row, that would be the second alternate.

7    The third alternate, plaintiff's side, third

8  alternate, Juror 027?

9    MR. RICE:  Pass, your Honor.

10    THE COURT:  Defense?

11    MR. HODGKINS:  Pass.

12    THE COURT:  All right.  Juror 027, you would be the

13  third alternate juror, and if called upon, you would serve as

14  a juror in this case.  Any reason why you could not do so?

15    JUROR 027:  No.

16    THE COURT:  Stand right where you are at.

17    (Alternate 3 was sworn by the clerk.)

18    THE COURT:  Please have a seat right where you are

19  at.  We will make arrangements for you to be seated in the

20  jury box also.

21    Now, we have the jury.  We have the three alternate

22  jurors.  I'm going to have them go back in the jury room.

23    Before I do that and I excuse the other prospective

24  jurors, is there anything further with respect to the jury

25  panel that we need to address before I excuse the remaining

1  panel members?

2           MR. RICE:  No, your Honor.

3           MR. HODGKINS:  No.

4           THE COURT:  Jury panel members, those of you who were

5  present, we have our jury, as you have seen, and so we are

6  ready to proceed.

7           Now, you weren't called, and you did spend the bulk

8  of the day here.  We appreciate that.  As you could see from

9  the process, if you hadn't been through this before, we do go

10  through a number of individuals, and so it is important that

11  you did attend.

12           Unfortunately, I have to tell you, you do have to

13  call the 800 number, after Friday.  If you need a note or have

14  any questions or concerns, check with the jury clerk down on

15  the second floor.  Otherwise, you are excused with our thanks,

16  and we thank you very much for coming in today.

17           Members of the jury, when I say that, I'm referring

18  to all of you, the members and alternate jurors.  Members of

19  the jury, as the remaining panel members are leaving, I'm

20  going to have my staff attorneys, it will be Mr. Sowards is

21  first.  He is one of my staff attorneys.  He will be helping

22  me, the Court, and the parties with the legal issues.  He will

23  be working with you as the jury, and there will be other

24  members of my staff who will also be assisting.

25           He is going to take you back to the jury room so you

1  will understand where your home will be for the next few weeks

2  and also to let you get the lay of the land.

3      You will get notepads, pens or pencils.  You will get

4  jury badges which will get you access into the jury room, et

5  cetera.

6      And if you have any questions of him or the jury

7  administrator, let us know, and we will take care of those.

8  You will be back in a little bit then.  I need to consult with

9  the parties, and then I will have you come back in here.

10      With that, if you could just go ahead and follow

11  Mr. Sowards back to the jury room, and we will get you back

12  here as soon as possible.

13     (The jury left the courtroom.)

14     THE COURT:  The jury has left for a break.  It is

15  almost the magic moment when I said if we are in the middle of

16  the afternoon, we will let them go.

17      I'm perfectly open to two possibilities.  One is we

18  just have the jury come back, I will read them an instruction

19  on what they are supposed to do and not do, and of course,

20  tomorrow morning, I will -- the next thing I would do is read

21  the preliminary instructions.

22      Or we can -- well, actually, there is three

23  alternates.  One is to come back in and send them home.

24      Two, is we go ahead and proceed on until 4:30.

25      Three, is we have them come in and I read the

1    preliminary jury instructions.

2         Either way, no matter what, I will read that one

3    instruction on duties as jurors, but whether I read the

4    preliminary instructions today or tomorrow morning, it is

5    okay.  If you want to send the jury home, that's fine with me.

6         Just your thoughts on that?

7         MR. RICE:  I have a witness here from Quantico,

8    Virginia, who won't be very long, so my preference would be to

9    proceed on.

10        THE COURT:  Okay.

11        MR. HODGKINS:  My preference is not to proceed on.  I

12   will tell you that if this jury comes back in at 3:15, I think

13   the chances of my argument alone being finished -- and I go

14   second -- is not going to happen.

15        I have a prepared statement.  I have already

16   estimated to my staff that it's going to take between an hour

17   and 15 minutes and two hours, and I stand by my original

18   request to you, that these things occur all in one day.

19        THE COURT:  Okay.  Yeah.  Given that time estimate,

20   again, even if you run short on that, by the time we do

21   preliminary -- come back from the break, do preliminary jury

22   instructions and opening statements, based upon that estimate

23   alone, we are not going to get to the witness.

24        I understand that you have a witness coming in from

25   out of state, Mr. Rice, and I sympathize with that, but, you

1    know, all I can tell you is he would be -- he or she would be

2    first up after preliminary jury instructions and opening

3    statements tomorrow morning.

4            MR. RICE:  That's fine, your Honor.  I understand.

5            THE COURT:  You folks can meet and confer as to time

6    frames.  Mr. Sowards has given you a copy of the proposed

7    preliminary instructions.  I don't know if you have any

8    thoughts about them now or if you want to address them at 8:30

9    tomorrow morning.

10           Either way, most of them are pretty standard, but you

11    might -- I don't know if you want to look them over in the

12    evening or if you have any concerns about them.

13           MR. HODGKINS:  I must confess, I have yet to look at

14    them, so I would ask for 8:30, tomorrow morning.

15           THE COURT:  8:30, tomorrow morning, we will go ahead.

16           I will ask you to do one thing.  If you happen to

17    look it over this afternoon or this evening and you realize

18    that there is something that you want to do, if you could just

19    e-mail everybody so that we would know, we would have a heads

20    up for 8:30, okay, this is an issue that one of the parties

21    has, and then I and Mr. Sowards can go ahead and work on it

22    before 8:30.

23           So with that then, I'm going to have the jury come

24    in.  I will read one instruction to them.  And let me let you

25    know which one that is.  It is Conduct of the Jury, Model

1   Instruction 1.8.  It is at page 11 of the proposed preliminary

2   instructions.  It is a standard instruction.  And that is what

3   I would read to the jury this evening before they leave, if

4   that's okay.

5         I will have the jury come in, I will read the one

6   instruction, and I will have the jury come back at 9:00

7   o'clock in the morning.  Mr. Sowards may be still working with

8   them.

9         MR. HODGKINS:  Do you get these back?

10        THE COURT:  Yes, we will gather those up.

11   (The following proceedings were had in the presence of the

12     jury, to wit:)

13        THE COURT:  The record will reflect that the jury is

14   present.  Please be seated.

15        Members of the jury, what we are going to do is I'm

16   going to read you one instruction.  Tomorrow morning, I will

17   read you the other instructions, and we will begin the case.

18   We will let you go home after I read this one instruction, and

19   you will return tomorrow morning, at 9:00 o'clock, to begin

20   the trial itself.

21        And again, if you have any questions process-wise,

22   how you get in, when you can get in, et cetera, that's fine.

23        Now, this morning, it might have been a little hectic

24   for you because we had 50 or 60 folks come in.  They are all

25   gone.  So you should not have whatever delays you might have

1  had this morning, parking, getting through the security, et

2  cetera, should not be an issue starting tomorrow because,

3  obviously, as you can see, the other prospective jury panel

4  members are gone and will not be back here tomorrow morning.

5  Now, and again, if, during the course of the trial,

6  if you have any questions at all, go ahead and jot it down,

7  give it to me, and I will present it to the attorneys.

8  It could be a question about witnesses, evidence, or

9  it could be a personal question you might have, whatever.  You

10  can go ahead and convey that to us.

11  I will now say a few words about your conduct as

12  jurors.  First, keep an open mind throughout the trial and do

13  not decide what the verdict should be until you and your

14  fellow jurors have completed your deliberations at the end of

15  the case.

16  Second, because you must decide this case based only

17  on the evidence received in the case and on my instructions as

18  to the law that applies, you must not be exposed to any other

19  information about the case or the issues -- or to the issues

20  it involves during the course of your jury duty.

21  Thus, until the end of the case or unless I tell you

22  otherwise, do not communicate with anyone in any way, and do

23  not let anyone else communicate with you in any way about the

24  merits of the case or anything to do with it.

25  This includes discussing the case in person, in

1   writing, by phone, or electronic means, via e-mail, text

2   messaging, or any Internet chat room, blog, web site or

3   application, including, but not limited to, Facebook, You Tube

4   Twitter, LinkedIn, Snapchat, or any other form of social

5   media.

6           This applies to communicating with your fellow jurors

7   and it applies to communicating with everyone else, including

8   your family members, your employer, the media or press, and

9   the people involved in the trial.  Although, you may notify

10  your family and employer that you have been seated as a juror

11  in the case and how long you expect the trial to last.

12          But if you are asked or approached in any way about

13  your jury service or anything about this case, you must

14  respond that you have been ordered not to discuss the matter,

15  and to report the contact to the Court.

16          Because you will receive all the evidence and legal

17  instruction you properly may consider to return a verdict, do

18  not read, watch, or listen to any news or media accounts or

19  commentary about the case or anything to do with it.

20          Do not do any research, such as consulting

21  dictionaries, searching the Internet, or using other reference

22  materials.  And do not make any investigation or in any other

23  way try to learn about the case on your own.

24          Do not visit or view any place discussed in this

25  case, and do not use Internet programs or other devices to

1   search for or view any place discussed during the trial.

2           Also, do not do any research about this case, the

3   law, or the people involved, including the parties, the

4   witnesses or the lawyers, until you have been excused as

5   jurors.

6           If you happen to read or hear anything touching on

7   this case in the media, turn away and report it to me as soon

8   as possible.

9           These rules protect each party's right to have this

10  case decided only on the evidence that has been presented here

11  in court.

12          Witnesses here in court take an oath to tell the

13  truth, and the accuracy of their testimony is rested through

14  the trial process.  If you do any research or investigation

15  outside the courtroom, or gain any information through

16  improper communications, then your verdict may be influenced

17  by inaccurate, incomplete, or misleading information that has

18  not been tested by the trial process.

19          Each of the parties is entitled to a fair trial by an

20  impartial jury, and if you decide the case based on

21  information not presented in court, you will have denied the

22  parties a fair trial.

23          Remember, you have taken an oath to follow the rules,

24  and it is very important you follow these rules.  A juror who

25  violates these restrictions jeopardizes the fairness of the

1 proceeding.

2        If any juror is exposed to any outside information,

3 please notify the Court immediately.

4        I do need to clarify a couple things about not

5 communicating with the jurors.  You can chitchat with each

6 other during the breaks, et cetera, but you can't talk about

7 the case.

8        Sometimes you would say, "What was it that witness

9 said?"  Or "What do you think about this?"

10        You can't even do that.  If you have any concerns

11 about what was said or done, you can always write a note, give

12 it to the parties, and say,  "You know, I need clarification

13 as to what this witness said," or whatever.

14        But you can certainly chitchat amongst yourselves,

15 just not about the case at all.

16        Same with family members.  You can carry on your

17 regular life outside the courtroom, but you can't talk about

18 the case with your family members.  Sometimes people say, "You

19 know, I have a spouse, significant other, best friend, and

20 when I'm in a quandary, I just like to talk it out with them."

21 You can't be do that.

22        The other thing is, in terms of this instruction, in

23 the past, before social media, this instruction was pretty

24 brief, but then we had a lot of situations nationwide about

25 people going on the Internet, Googling, whatever.

1       And it seems that we are also accustomed now to, "Oh,

2  I have a question," just boom, go on line.

3       Before, when you had hardbound stuff, if I said,

4  "Don't look at a dictionary or encyclopedia," you are

5  thinking, "Okay.  I have to walk in the den, get that, pull it

6  out and look it up."  That makes you think, "Okay.  I'm not

7  supposed to do that."

8       But it's almost instinctive.  If you have a question,

9  pull out your device, and before you know it, you are

10  researching.  And you didn't think, "I'm not supposed to do

11  that."

12       Unfortunately, we have had a number of cases

13  nationwide where this has happened.  So this instruction is

14  really more detailed about the things you are not supposed to

15  do in terms of other things like Internet, social media, et

16  cetera.

17       Now, the media is interested in this case, of course,

18  and they will be reporting it.  They will be reporting -- they

19  are allowed, as the public, to be in at all times, even when

20  you are not in the courtroom.

21       So it is important that you not read or look or

22  otherwise even have a family member say, "Hey, I saw this on

23  the news," or whatever.  You can't do that.

24       You have to -- and if you are exposed to it, let's

25  say, for example, you always watch the news when you get home.

1  You gotta turn it off, walk away, whatever.  And you are

2  surely not going to be penalized for that.  I mean you don't

3  know what's going to come on or whatever.  Same with newspaper

4  or otherwise.

5           So we are not saying, no, don't watch television for

6  the next four weeks.  We are just saying if you happen to see

7  something that looks like this case, move away from it, keep

8  away from it, et cetera.

9           Okay.  So I just wanted to elaborate a little bit

10  more on that instruction as a practical matter, but it is a

11  really important instruction to follow, which is why I'm

12  reading it to you now.

13          Again, as far as exposure to the parties, again, when

14  you come into court, maybe, or at the cafe, the restroom --

15  well, you will have your own restroom back in the back, but

16  you know, the common areas, you might run across some

17  individuals.

18          Some of these witnesses are coming in and, hopefully,

19  the attorney who is going to call them, advise them, "Hey,

20  don't talk about the case in the public areas."

21          But, again, please make sure that you don't come into

22  contact with anyone who might have something to do with the

23  case.  And if you do, just try to move away from them, if you

24  can.

25          But I can assure you, if there is any communication

1   outside the courtroom by a witness or whatever, they are not

2   doing it on purpose; it is inadvertent.  But you just never

3   know.

4          So with that, then, I'm going to go ahead and excuse

5   you for the evening.  Be back here by 9:00 o'clock.  We are

6   going to start up at 9:00 o'clock, so if you could be here

7   before 9:00 o'clock, that would be great, and Mr. Sowards

8   could go ahead and finish up with the briefing on you.

9          And you are free to leave for the evening.  We will

10  see you tomorrow morning here in the courtroom, at 9:00

11  o'clock.

12     (The jury left the courtroom.)

13     THE COURT:  The jury has left for the evening.  Go

14  ahead and have a seat.  This will take a couple minutes.

15         Basically, what we do at the end of each court day, I

16  will ask counsel if there are any legal issues that we need to

17  take up that evening, staying a little bit late, or first

18  thing next in the morning.

19         Just let me know.  And I always ask the party

20  presenting the evidence to let us know who the witnesses are

21  in order for the next day, so if there are any legal issues,

22  we can at least be aware of them.

23         But if nothing else, the other side will know who you

24  are going to call so they can prepare cross-examination.

25         If you have to switch witnesses for whatever reason

1 after you have disclosed to the other side your order of

2 witnesses, that's okay.  Sometimes scheduling happens.

3      But if it turns out that the other side wasn't

4 prepared; for example, maybe one witness went too long, and so

5 you are going to call in a different witness, I certainly

6 would give the other side an opportunity to prepare for

7 cross-examination if they were not aware that you are going to

8 take somebody out of order.

9      So with that then, first of all, other than the

10 preliminary jury instructions, are there any issues that we

11 need to take up tomorrow morning, at 8:30?

12      Plaintiff's side, anything you can think of?

13      MR. RICE:  No, your Honor.  I do have a list of

14 witnesses I can go ahead and give counsel.

15      THE COURT:  Okay.

16      MR. RICE:  We would first be calling FBI Supervisory

17 Special Agent Patrick Bowens after opening statements.  ATF

18 Special Agent Sherri Reynolds would be next.  Followed by ATF

19 Special Agent Bradley Dickey.  And then ATF Special Agent

20 Sherri Reynolds.

21      During the course of the case, I will be leaving

22 witnesses subject to recall, have them do one aspect as a fact

23 witness, and bring them back as a drug expert, with respect to

24 Sherri Reynolds.

25      And then we will have Bradley Dickey again.  And then

1    Nick Carter.  And I think that probably will take care of it.

2         MR. HODGKINS:  What was the last one?

3         MR. RICE:  Nick Carter.  That will probably take care

4    of tomorrow, I suspect.

5         THE COURT:  All right.  And so for the defense side,

6    any legal issues that we need to address tonight or first

7    thing tomorrow morning?

8         MR. HODGKINS:  No.

9         THE COURT:  We will reconvene tomorrow morning on the

10   preliminary jury instructions.  And then after we are done

11   with that, if it is okay then, I will leave and let you

12   prepare opening statements or whatever.

13        And then at 9:00 o'clock, we will start, have the

14   jury come in, and I will begin with the preliminary jury

15   instructions, opening statements.

16        And if it works out -- and, Mr. Rice, tomorrow, you

17   and Ms. Alsworth can tell me how long you think your opening

18   statement might be, because what I might do is do preliminary

19   instructions, opening statements.

20        I'll either move right into defense opening

21   statement, or take a break and start up with defense opening

22   statement, depending on the duration of the plaintiff's

23   opening statement.  If it is half an hour or less for the

24   plaintiff's opening statement, I may move right into defense

25   opening, with the understanding after an hour and a half, no

1   matter what, I will take a break.

2          MS. ALSWORTH:  For planning purposes, the

3   government's opening statement should be approximately 30

4   minutes.

5          THE COURT:  With that understanding, Mr. Hodgkins,

6   you will probably wind up at least starting your opening

7   statement before the first break.  And I will be sort of

8   watching, and if you stop and take a breath, I will take a

9   break right around 10:30.

10         MR. HODGKINS:  Understood.  Thank you.

11         THE COURT:  Tomorrow -- we had the public in a

12  separate room because, obviously, as you saw, we had the place

13  filled with jury panel members.  It will be open to the public

14  tomorrow, so the public will be allowed back into this

15  courtroom starting from tomorrow morning.

16         See you tomorrow morning, at 8:30.

17         MR. RICE:  Thank you, your Honor.

18      (The proceedings were adjourned 3:16 p.m.)

19         I, PEGGY J. CRAWFORD, Official Reporter, do hereby

20          certify the foregoing transcript as true and correct.

21

22  Dated:  14th of June, 2017        /s/ Peggy J. Crawford
                                      PEGGY J. CRAWFORD, RDR-CRR
23

24

25