Michael McKneely (State Bar No. 214896)
McKNEELY LAW FIRM
2300 Tulare Street, Suite 115
Fresno, California 93721
Telephone: (559) 443-7442
Facsimile: (559) 860-0150
mike@fresnocriminalattorney.com

Attorney for Defendant
KEITH FOSTER

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:15-CR-00104-AWI-SKO |
| Plaintiff, | **KEITH FOSTER'S MOTION TO UNSEAL JUROR INFORMATION; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF MICHAEL McKNEELY** |
| v. | |
| KEITH FOSTER, | **[Fed. R. Evid. 606(b)]** |
| Defendant. | |

    The *Fresno Bee* published an article after the conclusion of the first day of Keith Foster's trial in which they incorrectly reported that defense counsel argued that Mr. Foster was "deep undercover" during the events at the heart of the coming trial. After the publication of the article, transcripts show that both government and defense counsel began addressing this phantom argument, and oftentimes mentioned the phrase "deep undercover" as though the jury had heard it. Now that new defense counsel has been retained for the purpose of challenging this conviction, and based on a review of the transcripts, defense counsel believes the standard of care requires him to investigate the possibility that jurors turned to extraneous information to explain this continual reference to a phantom issue. Evidence of prejudicial extraneous materials being improperly brought to a juror's attention, and outside influences improperly brought to bear, are the subjects of permitted testimony from a trial juror under Rule

KEITH FOSTER'S MOTION TO UNSEAL JUROR INFORMATION     -1-

1 606, subdivisions (b)(2)(A) and (B) of the Federal Rules of Evidence.

2 Defendant therefore moves for an order directing the confidential disclosure of juror identifying information for the limited purpose of a defense investigator contacting the trial jurors and investigating this issue. This information would be material to the Defendant's anticipated Rule 33 Motion for New Trial. Separately, in another document filed concurrently, Defendant requests a final continuance of the deadline to file Rule 29 and 33 motions for acquittal and new trial based on this motion and on the need for additional time to prepare the latter motions.

Respectfully submitted,

DATED: September 6, 2017      McKNEELY LAW FIRM


By: /s/ Michael McKneely
    Michael McKneely
    Attorneys for Keith Foster

McKNEELY LAW FIRM
2300 TULARE STREET, SUITE 115
FRESNO, CALIFORNIA 93721
TELEPHONE: (559) 443-7442
FACSIMILE: (559) 860-0150

## MEMORANDUM OF POINTS AND AUTHORITIES

Though not explicitly prevented by the Federal Rules of Criminal Procedure, the Local Rules of this District, or the Federal Rules of Evidence, case law appears to suggest that best practices require counsel to petition the Court for access to juror identifying information and for permission to make contact with them.

The transcripts of this trial available to new defense counsel do not contain any identifying information of any of the jurors in this trial.

After a careful review of the transcripts of this trial, as documented in the attached Declaration of Michael McKneely, counsel believes that an extraneous issue was injected into the trial by an article in the *Fresno Bee* and that it is entirely possible that jurors were improperly influenced by this extraneous information, especially since both Defendant's trial counsel and the government's counsel frequently referred to this issue thereafter.

Counsel respectfully requests that the Court release juror identifying information to the defense, under such conditions as the Court deems appropriate, for the limited purpose of contacting the trial jurors to investigate whether prejudicial extraneous materials were improperly brought to a juror's attention, or outside influences improperly brought to bear. (Fed. R. Evid. 606(b.)

Counsel additionally requests, as is specified in another motion filed herewith, for a final brief extension of time to complete this issue prior to the filing of post-trial Rule 29 and 33 Motions.

DATED: September 6, 2017          McKNEELY LAW FIRM


By: /s/ Michael McKneely
    Michael McKneely
    Attorneys for Keith Foster

# **DECLARATION OF MICHAEL McKNEELY**

I, Michael McKneely declare:

1. I am an attorney at law, duly admitted to practice in the United States District Court for the Eastern District of California, and I am counsel for Defendant Keith Foster.

2. I have read and reviewed the transcripts of Mr. Fosters jury trial held in May, 2017.

3. Opening statements were given by Plaintiff and Defendant on May 10, 2017.

4. On the evening on May 10, 2017, the Fresno Bee published to its website, and then printed in its May 11, 2017 edition, a story about the trial headlined "Fresno's former No. 2 cop was 'deep undercover' when he talked of buying pot, attorney says." (Pablo Lopez, "Fresno's former No. 2 cop was 'deep undercover' when he talked of buying pot, attorney says" *Fresno Bee* (2017), http://www.fresnobee.com/news/local/crime/article149735959.html (last visited Sep 6, 2017).

5. The headline on the print version is depicted here, a true and correct photograph of the May 11, 2017 *Fresno Bee* cover page.



KEITH FOSTER'S MOTION TO UNSEAL JUROR INFORMATION -4-

6. The *Bee* article proclaimed in the first paragraph that Defendant "was working as an undercover investigator when he was recorded on a wiretap talking about buying marijuana, his attorney told jurors during opening statements Wednesday in Foster's federal drug trafficking trial."

7. Mr. Foster's Counsel has read and reviewed the Defendant's opening statement and no such claim was made. The phrase "deep undercover" does not appear in the transcript of the opening statement.

8. Mr. Foster's counsel at trial, E. Marshall Hodgkins, did say "I'm going to tell you about undercover narcotics operations." (TT 5-10-17, pg. 239, lines 11-12.)

9. Mr. Hodgkins later said, in discussion of his theme that language used on the recorded telephone calls is appropriate to the setting of the conversation, that "This is serious business. You better be able to walk the walk if you are working undercover. You better be able to talk the talk. And Denny could do that." (Id., pg. 247, lines 23-25.)

10. Expanding on the theme, Mr. Hodgkins said:

> When you suit up as a law enforcement officer to work undercover narcotics and to work what is called "weight," a lot of undercover narcotics, not a dime bag or not something else like that, and part of the way you work, as I told you, is you don't stand in front of somebody and say, "Can I have a pound of cannabis sativa L.?" You would be killed right there.
> What you do, even if you are talking to your confidential informant, you say, "Hey, I want four OG," or "I want four IG."

(Id., pg. 260, lines 14-23.)

11. Mr. Hodgkins later said, on the point regarding the difference in the way Mr. Foster sounds on the telephone versus his anticipated testimony in court:

> You know, you are going to see a very articulate individual up here talk your language. Forgive me for saying that, but, you know, you can ask him to go into -- and you will hear it on the tapes.
>
> Because even when you are talking to somebody who is a confidential informant, you don't ask them, "Sir, we would like to set you up probably tomorrow. See if you can buy from Mr. X."

> You don't talk like that, even when you are talking over the phone to your CI and even if you know that nobody is around, you, say "Hey, man."
>
> You should hear it. It is the way they talk. They don't understand what you are talking about if you don't use their same talk. And Keith can do that because Keith now has over 1,000 undercover operations, in which he has been the narcotics officer who has either been undercover or assisted somebody undercover.

(Id., pgs. 274:13 through 275:4.)

12. The day after the opening statements, the day the *Fresno Bee* article ran, the government asked co-case agent Sherri Reynolds: "Based on your education, training, and experience, would a law enforcement agency authorize an *undercover officer* to contact a relative who was a drug dealer to buy marijuana for another person?" (TT 5-11-17, pg. 383, lines 10-13.)

13. Neither the word "undercover" nor the word "deep" appear in the transcript of Day 4 of the trial. (TT 5-12-17.)

14. On Tuesday, May 16th, day 5 of trial, government counsel asked Lieutenant Michael Brogdon of the Fresno Police Department the following:

> There has been the assertion by defense counsel in his opening statement that Former Deputy Chief Foster was acting in an undercover capacity with informants during the wiretaps in this case in November 2014 through March 2015. Could that assertion be true?

(TT 5-16-17, pg. 662, lines 10-14.) No such assertion was made.

15. In a question to Deputy Police Chief Pat Farmer, government counsel asked:

> During the many meetings you attended with Keith Foster, did Keith Foster ever tell you that he was acting in an undercover capacity in a narcotics investigation in 2014 through 2015?

(Id., pg. 690, lines 17-20.)

16. Government counsel also asked Mr. Farmer:

> There was an assertion by defense counsel in his opening

statement that former Deputy Chief Foster was acting in an undercover capacity with informants during the wiretaps in this case.

(Id., pg. 692, lines 19-22.) Again, no such assertion was made by Defendant's trial counsel.

17. Mr. Hodgkins then addressed this topic in his direct examination of the Defendant:

> Q. Okay. Did you go undercover in this case?
>
> A. No. That's absurd.
>
> Q. Okay. You heard the words "deep cover"?
>
> A. I heard that phrase, and that was absolutely absurd. It was absurd.
>
> Q. Okay. So you didn't go undercover, take off your coat and tie, and actually go out and try to buy narcotics?
>
> A. Absolutely not.

(Id., pg. 722, lines 4-11.) Defense counsel is asking the Defendant to address an argument that was not made in court, but was instead published in the *Fresno Bee*.

18. Jurors had not in fact heard this phrase "deep undercover" or "deep cover" in this trial to this point.

19. The following day, Chief of Police Jerry Dyer was asked by government counsel:

> During any of the many meetings you attended with Keith Foster when he was Deputy Chief, did he ever tell you that he was acting in an undercover capacity in a narcotics investigation in 2014 through 2015?

(TT 5-17-17, pg. 1030, lines 9-12.)

20. In his closing argument, defense counsel said "Now, I'm going to talk to you about 'undercover' and 'deep undercover...'" (TT 5-18-17, pgs. 1157:25-1158:1.) Counsel was addressing an issue injected into the trial by the *Fresno Bee*.

21. Defense counsel in closing argument also says: "I said something regarding undercover. I said something regarding, apparently, deep cover." (Id., pg.

1165 lines 10-11.) And then he references the questioning on this point by government counsel: "[T]ime and time and time again, it was repeated. 'Well, Keith's attorney said this.' 'Well, Keith's attorney said that." (Id.)

22. Defense counsel repeats his version of the government's argument: "'But his attorney said he was undercover. His attorney said he was deep cover." (Id.)

23. Mr. Foster's current counsel is concerned that jurors might have seen this coverage, or sought it out to explain to them an argument that was not actually made. This is a particular concern because the Court made statements during the *voir dire* proceedings that may have accredited the media in the jurors' minds, while trying to ask them not to read or listen to the same stories.

24. In a dialogue with prospective juror 16 the Court said: "You can't say, 'Well, I will rely on the news account,' *not that they are unreliable, because they are…*" (TT 5-9-17, pg.56, lines 11-12, emphasis added.)

25. In response to an answer from prospective juror 8, the Court said: "Media reports, Internet *are oftentimes reliable* and sometimes they are not." (Id., pg.61, lines 8-9.)

26. After swearing in the jury panel, the Court noted: "Now, the media is interested in this case, of course, and they will be reporting it. They will be reporting…" (Id., pg. 195, lines 17-18.)

27. In preparing the anticipated Motions for Acquittal and Motion for New Trial, counsel has discussed this issue with other federal practitioners and believes the standard of care for defense counsel requires an investigation to resolve this matter prior to the litigation of the other post-trial motions.

28. Counsel anticipates retaining experienced investigator David Schiavon to use such juror contact information as the Court may provide for the limited purpose of questioning the jurors on this subject as permitted by Rule 606(b) of the Federal Rules of Evidence.

29. Counsel would abide by any protective order and time limitation the Court

orders to ensure the integrity of the investigation and the privacy of the trial jurors.

Dated: September 6, 2017                      /s/ Michael McKneely

                                                        MICHAEL McKNEELY