UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. ANTHONY W. ISHII

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 1:15-cr-104 AWI-SKO |
| Plaintiff, ) | |
| ) | TRIAL CONFIRMATION |
| vs. ) | |
| ) | |
| KEITH FOSTER, RANDY FLOWERS, ) | |
| and RICKY REYNOLDS, ) | Fresno, California |
| ) | |
| Defendants. ) | Monday, April 17, 2017 |

REPORTER'S PARTIAL TRANSCRIPT OF PROCEEDINGS

**APPEARANCES OF COUNSEL**:

For the Government:  **DAWRENCE W. RICE, JR.**
**MELANIE L. ALSWORTH**
Assistant U.S. Attorneys
2500 Tulare Street, Rm. 4401
Fresno, California 93721

For Defendant Foster:  LAW OFFICES OF E. MARSHALL
HODGKINS III
1186 W. Shaw, Suite 103
Fresno, CA 93711
BY: **E. MARSHALL HODGKINS III**

For Defendant Flowers:  LAW OFFICES OF YAN E. SHRAYBERMAN
P.O. Box 506
Fresno, CA 93709
BY: **YAN E. SHRAYBERMAN**

For Defendant Reynolds:  **DANIEL A. BACON**
Attorney at Law
2445 Capitol Street, Suite 160A
Fresno, CA 93721

REPORTED BY: PEGGY J. CRAWFORD, RDR, CRR, Official Reporter

Proceedings recorded by mechanical stenography, transcript produced by computer-aided transcription.

```
 1   Monday, April 17, 2017                    Fresno, California
 2   1:30 p.m.
 3             THE CLERK:  Court calls item 1:15-CR-0104, United
 4   States versus Keith Foster, Randy Flowers, and Ricky Reynolds.
 5             MS. ALSWORTH:  Good afternoon, your Honor.  Melanie
 6   Alsworth and Duce Rice appearing for the government.
 7             MR. BACON:  Dan Bacon, appearing for Ricky Reynolds,
 8   who has a waiver on file.
 9             MR. SHRAYBERMAN:  Yan Shrayberman on behalf of
10   Mr. Flowers.
11             MR. HODGKINS:  Marshall Hodgkins on behalf of Keith
12   Foster.  He is present.
13             THE COURT:  Let me just go ahead and get an update on
14   status of each defendant so that we can proceed in the most
15   efficient manner.
16             MR. BACON:  Your Honor, regarding Ricky Reynolds, I
17   have presented a signed plea agreement to the People, the
18   government, this afternoon.  I was hoping to enter a plea on
19   the 24th, but talking to your Clerk, that may present somewhat
20   of a problem.
21             THE COURT:  No, I think we are okay.
22             MR. BACON:  Can we do it in the afternoon, your
23   Honor?
24             THE COURT:  Yes.
25             MR. BACON:  What time?
```

1    THE COURT: 1:30.

2    MR. BACON: That would be great. Thank you.

3    THE COURT: All right. So all I would do on your
4 client, Mr. Bacon, is to set his trial confirmation and trial
5 status date to next Monday, April 24th, at 1:30, in the
6 afternoon. The trial date will remain as set. Time has
7 already been excluded to that date and time, so there is no
8 need for me to further exclude time. If the matter is not
9 resolved by next week, obviously, we will just confirm it for
10 trial.

11    MR. BACON: If the matter is not resolved, your
12 Honor, we are going to have a problem, but I anticipate it
13 will be resolved.

14    THE COURT: All right. So Mr. Bacon, on behalf of
15 Mr. Reynolds, anything else today?

16    MR. BACON: No, your Honor.

17    THE COURT: I anticipate him being here next Monday,
18 at 1:30.

19    MR. BACON: Thank you.

20    THE COURT: As to either Mr. Foster, Mr. Flowers, I
21 will leave it to counsel as to which party you wish to have me
22 heard next.

23    MR. HODGKINS: On behalf of Keith Foster, we are
24 prepared to confirm it for trial on the date set.

25    THE COURT: All right. Let me just cover a couple of

1  things. If I could just have Mr. Foster just come forward.
2  Obviously, as you know, there are a couple of things I do need
3  to cover with any party in a criminal law matter who is
4  proceeding to trial, so I'm just going to cover those very
5  quickly.
6        THE DEFENDANT: Good afternoon, your Honor.
7        THE COURT: Good afternoon. Mr. Foster, there are a
8  number of things that I need to discuss with you very briefly.
9  If you have any questions or concerns before you answer, since
10 it is on the record, stop me, and consult with your attorney.
11 I really don't want any responses in detail. I just want to
12 make sure that I have covered some preliminary matters with
13 you so that there is no confusion.
14       One is I have received a document entitled,
15 "Stipulations to Facts and Admissibility of Certain Evidence."
16 Now, I'm not sure if you have had a chance to review that
17 document with your lawyer.
18       THE DEFENDANT: Yes.
19       THE COURT: Okay. And so in the stipulation, and
20 basically, as I'm sure your lawyer has explained this to you
21 and I'm sure you are aware of it, but basically, with respect
22 to stipulation of facts and admissibility on the items that
23 are listed specifically in Document Number 197, if both
24 sides -- well, both sides have stipulated and agreed.
25       I want to make sure that you are aware and you

1  personally agree that basically that stipulation and
2  admissibility means that it is going to come into evidence.
3  It is my understanding that you, your attorney, and the
4  government attorneys, are going to have that admitted to the
5  jury as Joint Exhibit number 1.
6          Do you understand that?
7          THE DEFENDANT:  I do.
8          THE COURT:  You have had a chance to review all of
9  the proposed stipulated facts that are contained in this
10 document?
11         THE DEFENDANT:  Yes.
12         THE COURT:  Okay.  And you agree then that those
13 facts are facts that will be presented to the jury as
14 conclusive facts, and that they will be admitted to the jury
15 more likely in the form of a Joint Exhibit; do you understand
16 that?
17         THE DEFENDANT:  Yes.
18         THE COURT:  Do you agree to that?
19         THE DEFENDANT:  Yes.
20         THE COURT:  All right.  The other thing that I'm
21 required to do -- and again, I don't want any detail from you
22 on this -- but there were two United States Supreme Court
23 cases that came out in 2012.  And I am just going to sort of
24 paraphrase the conclusion.
25         The first one is *Missouri versus Frye*.  It is

```
 1  566 U.S., at 133.  In that case the United States Supreme
 2  Court has made it clear that defense counsel, in this case
 3  your attorney, has a legal duty to communicate any formal
 4  offers presented to you by the prosecution.
 5           And I am not sure if that was done in this case, but
 6  if so, I need to go over the litany on that.
 7           MR. RICE:  No, your Honor.  I don't believe there has
 8  been a formal offer, other than a long time ago, which I
 9  believe --
10           Do you remember what it was?
11           THE COURT:  Okay.  No.  If there was no formal
12  agreement pending, then I don't have to worry about this.
13           MR. HODGKINS:  Well, there was an agreement, and I
14  received it in writing, and we have reviewed that.  It was
15  rejected by my client.
16           THE COURT:  Okay, all right.
17           MR. RICE:  Do you remember what it was, Melanie?
18           MS. ALSWORTH:  I believe it was an offer to plead to
19  the three conspiracies.
20           MR. RICE:  Okay.
21           THE COURT:  All right.  So and basically, what the
22  first case, the *Frye* case says, and the trial courts have to
23  do, is make sure that you are aware that a formal offer has
24  been presented to you and you have had a chance to consult
25  with your attorney regarding that.
```

1                Do you understand that?
2                THE DEFENDANT:  Yes.
3                THE COURT:  Did that occur in this case?
4                THE DEFENDANT:  Yes.
5                THE COURT:  Very well.  And you had a chance to fully
6     discuss that offer with your attorney; is that correct?
7                THE DEFENDANT:  Yes.
8                THE COURT:  Very well.
9                The other case that's related, in fact it came down
10    at the same time, was *Lafler versus Cooper*, also 2012 case,
11    566 U.S. 156.
12               In that case, there is also a related obligation to
13    your attorney, and that is with respect to reviewing any plea
14    offer, to paraphrase the case authority, the lawyer can't
15    coerce you, force you, or even persuade you, to take a plea
16    offer that you don't want to take or that you -- I'm sorry,
17    that you want to take.
18               In other words, if there is a plea offer and you are
19    saying, "Hmm, I'm considering this," and your lawyer says,
20    "No, no, no, we will go to trial," and you say, "Okay, if
21    that's what you say.  I've been thinking about it, but if
22    that's what you say, I will take your advice."
23               So at any rate, that case really provides to make
24    sure that in terms of rejecting any formal plea offer, that
25    you are doing it of your own volition, your own free will, and

1  not because your lawyer has talked you into it or something
2  like that.  That you have reviewed it, you've reviewed it with
3  your lawyer, and you have rejected it of your own free will.
4       Do you understand that?
5       THE DEFENDANT:  Yes.
6       THE COURT:  Is that what occurred in this case?
7       THE DEFENDANT:  Yes.
8       THE COURT:  Very well.
9       All right.  So with that, the other thing -- and
10 this, we can deal with a little later -- there is a
11 stipulation regarding jury instructions.
12      Obviously, even though there is a stipulation, during
13 the course of the trial and after the trial, issues might
14 arise or not arise that would cause us to modify the jury
15 instructions, but at least at this point in time, the parties
16 have agreed to certain jury instructions.
17      Obviously, there won't be a final decision made until
18 the parties have been heard on our final jury instruction
19 conference, but I just want to make sure the record is clear.
20 I have received and reviewed the jury instructions, and I will
21 be discussing those instructions with counsel during the
22 course of the trial.
23      And if counsel believes that certain instructions
24 should be added or deleted during the course of the trial,
25 that's perfectly fine with me.  We can take that up outside

1  the presence of the jury.

2  And obviously, again, we will have a final
3  instruction conference at the end of the presentation of the
4  evidence, and which both parties will have an opportunity to
5  address the Court as far as final instructions.

6  And then what I am going to ask, and maybe you have
7  already done this, Mr. Rice and Ms. Alsworth, but if you could
8  also prepare, if you haven't already, a proposed verdict form
9  so that you can start discussing the verdict form.

10  And obviously we will have discussions, if necessary,
11  during the course of the trial, but again, the final verdict
12  form will not be determined until counsel has had an
13  opportunity to be heard on the record on the issue of the
14  verdict form.

15  So with that then, let me ask, first, Mr. Hodgkins,
16  on behalf of defense, are there any other issues, anything
17  else you wish to place on the record at this point in time?

18  MR. HODGKINS: Well, not at this time. This case has
19  been pending for sometime. I would say that the cooperation
20  on discovery by the U.S. attorney has been very, very good.

21  But I'm going to answer that not at this time,
22  because as we move closer, things seem to happen. I cannot
23  present to you one issue at this second that would cause us
24  not to be prepared and ready to go.

25  THE COURT: All right. Government, anything else at

this time?

MR. RICE: Your Honor, the only thing I have is we have a CHP officer, Officer Kinsey, up in Merced. He has training on May the 9th, but he will be back and available on May 11th, so that's the only witness I'm aware of right now. We might have a scheduling issue and might have to juggle him a little bit.

THE COURT: I will leave it to counsel with respect to witnesses, taking them in order or out of order, whatever.

As counsel is aware, at the beginning of the trial and then at the end of each trial day, I do ask whoever is presenting the case to disclose to the Court and opposing counsel your prospective witnesses who will be appearing and any exhibits that you intend to admit through that witness or those witnesses so that if there are any issues, we can take those up either that evening or the first thing in the morning outside the presence of the jury.

Now, with respect to jury selection -- I guess I should back up a little bit. In terms of a time estimate, and I'm not going to hold you to the exact time frame, and we will talk about that a little more on the morning of trial, but right now, in terms of a time estimate in terms of numbers of days, do you have a rough estimate?

Then we will talk about this more on the morning of trial because we need to let the jury panel know what their

1   time commitment might be in this case so that if there are any
2   hardship issues, we can go ahead and take those up.
3           A very rough time estimate in terms of number of
4   days?
5           MR. RICE:  I think I can speak to that, your Honor.
6   We have subpoenaed approximately 40 witnesses.  However, we
7   have resolved about ten of those by stipulations we entered
8   into that the Court has addressed earlier.
9           I would estimate, going ten witnesses a day, at the
10  most, probably the government's case would probably take four
11  days.  So we should be, I'm hoping, resting either Friday or
12  Monday the week we start trial, the following week.
13          THE COURT:  If you can meet and confer, I'm not
14  setting any time limits, but when we pick the jury, the first
15  thing I do is I give them an indication of the rough time
16  estimate so we can take care of any hardship issues, and I
17  will go ahead and have my jury administrator at least
18  initially perhaps screen for hardships so that we don't have
19  to worry about some of the folks during the jury selection.
20          MR. HODGKINS:  With your permission, let me just say,
21  I think that the government's estimate of two weeks, which is
22  in their trial brief, is optimistic.
23          I would be more inclined, if the Jury Commissioner is
24  going to screen those, to say that I think it is going to take
25  at least three weeks.

1  THE COURT: Okay. Fair. Again, obviously, on the
2  morning of trial, we can discuss further, if you think it will
3  be more. And when we talk about weeks, I just want to make
4  sure, my trial week, as you know, is Tuesday through Friday,
5  so it is a four-day week. So three weeks could be 12 days or
6  more, but we can talk about that the morning of trial so that
7  we can get a sense for the jury panel, but I will ask the jury
8  administrator to screen out at least hardships for at least a
9  three-week trial.
10        Obviously, if it is less than that, that's not a
11 problem at all. I just want to make sure we don't lose jurors
12 in the middle of trial because we underestimated the time
13 frame and then we will run into the Memorial Day weekend,
14 which might have some impact, but, again, we can deal with
15 that the morning of trial.
16        The other thing in terms of the jury selection, very
17 briefly, obviously, we will have a jury of 12. We can decide
18 whether or not we want to have two alternates or four
19 alternate jurors, depending on the duration, and your thoughts
20 on that.
21        But basically, on jury selection, as you know, on
22 jury selection, I seat 18; six in the top row, six in the
23 front row, and then six in the front. We voir dire all 18.
24        If any of the 12 in the box are excused for cause
25 during jury selection, then I will just go ahead and fill from

1  what would be seat number 13.  It goes 1 through 6, 7 through
2  12, 13 through 18 -- I'm sorry.  I don't move forward.  We
3  fill from the audience area so we don't mess up your charts,
4  your seating charts.  And so we will go ahead and voir dire
5  those.
6          On voir dire, you can submit proposed written
7  questions to me before the trial, the Thursday before trial.
8  During voir dire, my voir dire, if you have any questions you
9  want me to ask, go ahead and jot them down.  Once I'm done, I
10 will turn to counsel, ask you if you have any followup
11 questions you want me to ask.  I will go ahead and take care
12 of those.  Hopefully, between any written questions you might
13 have beforehand and any questions you might have during jury
14 selection, we can take care of those.
15         I will give each side a half an hour after that to do
16 your own individualized voir dire of the panel itself.
17         Okay.  I think that's pretty much it for now.  Now,
18 if either or both sides feel there is something you need to
19 discuss with the Court, let me know, and we will put it on
20 calendar and get it taken care of.
21         And then, obviously, if Mr. Foster wishes to be here
22 on any hearing that we have prior to jury trial, that's
23 totally up to him.  But again, if you think there is something
24 that we need to talk about, something that's come up late,
25 discovery or scheduling issues or anything else, let me know

1  so that we can calendar it and you can be heard on the record.
2  Okay?
3          But if there is nothing else for now and if I don't
4  hear from you in terms of requesting further court
5  appearances, then I would anticipate seeing the parties,
6  counsel, here on May 9th, at 8:30 in the morning.
7          Anything else today?
8          MR. HODGKINS:  No.
9          MR. RICE:  Nothing further.
10    (The plea of Randy Flowers was taken, but not transcribed
11     herein.)
12    (The proceedings were concluded.)
13         I, PEGGY J. CRAWFORD, Official Reporter, do hereby
14     certify the foregoing transcript as true and correct.
15
16  Dated:  19th of December, 2017     /s/ Peggy J. Crawford
                                        PEGGY J. CRAWFORD, RDR-CRR
17
18
19
20
21
22
23
24
25