KEKER, VAN NEST & PETERS LLP
BRIAN L. FERRALL - # 160847
bferrall@keker.com
NICHOLAS D. MARAIS - # 277846
nmarais@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   415 391 5400
Facsimile:    415 397 7188

Attorneys for Non-Party
Investigative Studios, Inc.

FILED

NOV 02 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
           DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KEITH FOSTER,<br><br>Defendant. | Case No. 15-CR-00104-AWI-SKO<br><br>**NON-PARTY INVESTIGATIVE STUDIOS, INC.'S NOTICE OF MOTION AND MOTION FOR ACCESS TO AUDIO RECORDINGS PLAYED AT TRIAL**<br><br>Date:     December 3, 2018<br>Time:    1:30 p.m.<br>Dept.:    2<br>Judge:   Hon. Anthony W. Ishii<br><br>Date Filed: April 9, 2015 |

**Filed By Fax**

NON-PARTY INVESTIGATIVE STUDIOS, INC.'S MOTION FOR ACCESS TO TRIAL AUDIO
Case No. 15-CR-00104-AWI-SKO

1306757

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD IN THIS ACTION:**

PLEASE TAKE NOTICE that on December 3, 2018 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 2, 8th Floor, of the United States District Court for the Eastern District of California, 2500 Tulare Street, Fresno, CA 93721, Non-Party Investigative Studios, Inc. ("Studios")[1] will and hereby does move the Court to order either (i) the Clerk of the Court or (ii) the United States Attorney's Office for the Eastern District of California to create copies of Trial Exhibits 4, 13, 25, and 68, and to make them available to Studios within seven days. This motion is based upon this notice, the attached memorandum of points and authorities, the record in this case, and any argument that may be made at the hearing on December 3, 2018.

In an effort to minimize burden on this Court, Studios first approached counsel for the United States and Mr. Foster directly to ask that they provide copies of these exhibits voluntarily. If Studios receives Trial Exhibits 4, 13, 25, and 68 from either party while this motion is pending, it will promptly notify the Court (and, to the extent possible, withdraw this motion).

Studios has also asked counsel for the parties whether they will oppose this motion. Mr. Foster's lawyers have indicated that he will not. The government has declined to take a position.

Respectfully submitted,

Dated: November 2, 2018

KEKER, VAN NEST & PETERS LLP

By: */s/ Nicholas D. Marais*
BRIAN L. FERRALL
NICHOLAS D. MARAIS

Attorneys for Non-Party
Investigative Studios, Inc.

---

[1] Studios and its undersigned counsel appear specially, solely to move for access to the trial exhibits identified in this motion. Studios is not a party to this action.

## I. INTRODUCTION

Non-Party Investigative Studios, Inc. ("Studios") is working with radio station KQED on a series of investigations into public corruption in California. As part of those efforts, Studios is investigating the charges brought against Keith Foster, Fresno's former Deputy Chief of Police. As this Court knows, Mr. Foster was criminally charged as part of a conspiracy to distribute oxycodone, heroin, and marijuana. After a nine-day trial, during which the government introduced and repeatedly relied on audio recordings (or wiretaps) of Mr. Foster's phone calls, he was convicted on two counts. Although transcripts of Mr. Foster's trial are publicly available, the court reporter did not transcribe those recordings when they were played to the jury in open court. Studios understands that those audio files (and transcripts that the government prepared of those phone calls) were introduced as exhibits; played (and published) in court; and lodged with the Court, where they now remain.

Through this Motion, Studios seeks access to the public wiretap recordings that were published in Court and moved into evidence. Specifically, Studios requests that the Court order either (i) the Clerk of the Court or (ii) the United States Attorney's Office for the Eastern District of California to create copies of Exhibits 4, 13, 25, and 68, and to make them available to Studios within seven days.

## II. BACKGROUND

### A. Indictment

In 2015, the United States filed a criminal complaint against Keith Foster, then-Deputy Chief of the Fresno Police Department, alleging that he had conspired with others to distribute marijuana, heroin, and oxycodone. *See* Dkt. 1 (Compl.) at ¶ 6. On April 9, 2015, the United States filed an indictment, charging Mr. Foster with violations of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846—again for possession and distribution of various drugs. Dkt. 55. Significantly, the government also accused Mr. Foster of "knowingly and intentionally us[ing] a ... telephone" to distribute controlled substances—a phone that the government wiretapped.[2] *Id.* at 10:4–12. On April 10, 2015, Mr. Foster and other defendants were arraigned and pled not guilty. Dkt. 59.

---

[2] *See, e.g.*, Dkt. 241 (Trial Tr. (May 10, 2017)) at 458:23–459:3 ("Q. Were calls intercepted and recorded between Keith Foster's phone and Randy Flowers' phone? A. Yes, they were.").

### B. Audio Recordings

In the run-up to trial, the parties agreed that various audio files—of phone calls that were "intercepted and recorded during the wiretaps in this case"—were authentic and could be admitted into evidence and played to the jury by either party. Dkt. 197 at ¶ 8. They also stipulated to the accuracy of transcripts of those wiretapped calls, which the parties agreed could be admitted into evidence, although only the audio itself (as "the actual evidence") would be made available in the jury deliberation room. *Id.* at ¶ 9. According to the government's exhibit list, there are four CDs of these wiretap recordings. *See* Dkt. 210 (identifying Exhibits 4, 13, 25, and 68 as CDs of "audio and transcript of calls") (collectively, the "audio recordings").[3]

Mr. Foster's trial began with jury selection on May 9, 2017, and lasted nine days. Almost immediately, the government began to introduce and rely on the audio recordings. *See, e.g.*, Dkt. 241 at 459:7–9 (describing Government's Exhibit 25 as "a CD of the audio transcripts and texts between Keith Foster and Randy Flowers"); *id.* at 460:17–461:6 (testifying to the authenticity and accuracy of audio recordings and call transcripts). The government moved all of the audio recordings and related call transcripts into evidence. *See, e.g.*, Dkt. 240 at 299:12–17 (moving Exs. 4 and 5 into evidence); Dkt. 241 at 359:10–19 (moving Exs. 13 and 14 into evidence); *id.* at 461:7–14 (moving Exs. 25 and 26 into evidence); Dkt. 244 at 922:17–5 (moving Exs. 68 and 69 into evidence). There were no claims that the CDs or transcripts were confidential, nor was there any effort to keep them under seal.

Early on, the Court explained that, with respect to these audio recordings, it would not "require the court reporter to take those down...." Dkt. 240 at 335:4–9. The parties agreed that "the audios themselves" would constitute "the record in the case." *Id.* at 335:10–12.

### C. Conviction and Appeal

On May 23, 2017, the jury found Mr. Foster guilty on two counts—one for conspiring to distribute heroin, the other for marijuana. Dkt. 225.

On November 21, 2017, Mr. Foster filed a notice of appeal. *See* Dkts. 291–93. The Ninth

---

[3] The government also moved into evidence—as related Exhibits 5, 14, 26, and 69—"transcripts of calls" involving Mr. Foster. Studios has received copies of those transcripts, but, because it is preparing radio reports, it still needs the audio files themselves.

3
NON-PARTY INVESTIGATIVE STUDIOS, INC.'S MOTION FOR ACCESS TO TRIAL AUDIO
Case No. 15-CR-00104-AWI-SKO

1306757

Circuit has docketed that appeal as case number 17-10496, and that matter is still in progress: the Ninth Circuit denied Mr. Foster's request for bail pending appeal; the government's opposition brief on the merits is due on December 17, 2018.

### D. Investigative Studios, Inc.

Investigative Studios is a reporting and production company formally affiliated with the University of California Berkeley School of Journalism. In recent years, it has produced documentaries for PBS and placed investigative reports in publications like The Atlantic and the Los Angeles Times. Recently, Studios has embarked on a collaboration with KQED, called the California Corruption Project, for which it is investigating the case against Mr. Foster (and other cases of public corruption).

Over the past few weeks, Studios—through its reporters and its outside counsel—has attempted to get copies of these wiretap recordings without burdening the Court. Its efforts have met with mixed success.[4] First, Studios has learned that the audio files are still in this Court's possession, and that the Court's preference is to resolve this request through a motion.[5] Second, it has received copies of the call *transcripts*, allowing it to narrow this request to focus solely on the audio files. And, third, Mr. Foster has confirmed that he does not oppose this motion. Marais Decl., ¶ 3. (The government has declined to take a position. *Id.*)

### III. ARGUMENT

Throughout the United States, courts recognize a "general right to inspect and copy public records and documents, including judicial records and documents." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)). Those privileges flow in part from the First and Fourteenth Amendments, which protect the public's right to attend criminal trials; today, more than ever, media organizations play an "indispensable representative role in gathering and disseminating to the public current information on trials." *See, e.g., Valley Broad. Co. v. U.S. Dist. Court for Dist.*

---

[4] *See generally* Marais Decl. at ¶¶ 2–3.

[5] *Id.* at ¶ 2; *see also* L.R. 138(f) ("All exhibits, including models and diagrams marked for identification or introduced in evidence … shall be delivered to the Clerk, who shall keep custody of the same…."); L.R. 38(h) ("[T]he Clerk shall maintain all exhibits during the pendency of the criminal trial and all appeals…."). Mr. Foster's appeal is pending before the Ninth Circuit.

*of Nevada*, 798 F.2d 1289, 1292 (9th Cir. 1986). They also flow from common-law protections that—while less absolute—protect the media's right (and responsibility) to "keep a watchful eye on public institutions" and on the "activities of government." *See id.* at 1293 (collecting cases).

Through this motion, Studios seeks access to audio recordings that were played publicly at Mr. Foster's trial; that were incorporated as part of the trial record; and that were relied on by the government in securing a conviction of Mr. Foster.[6]

In those ways, this case closely resembles *Valley Broadcasting*, where television journalists sought permission to "copy all evidence, including audio and video tapes, after admission into evidence." *Valley Broad.*, 798 F.2d at 1290. (There, as here, the journalists were willing to bear the costs of reproducing the exhibits in question.) In *Valley*, the district court initially *denied* the media's request and identified three concerns (none of which applies here): (1) the "administrative inconvenience" of copying exhibits while trial was proceeding; (2) the risk that media coverage might complicate jury selection in other related trials; and (3) the possibility of tainting the then-empaneled jury by exposing them to edited versions of exhibits "and editorial comment upon them." *Id.* at 1294–95. When Valley Broadcasting filed a petition for a writ of mandamus, the Ninth Circuit found that the District Court had abused its discretion and ordered it to grant Valley access to duplicates of tapes as and when they were received in evidence. In so doing, it identified important criteria for weighing such requests:

> Such factors as promoting the public's understanding of the judicial process and of significant public events justify creating a 'strong presumption' in favor of copying access. Counseling against such access would be the likelihood of an improper use, 'including publication of scandalous, libelous, pornographic, or trade secret materials; infringement of fair trial rights of the defendants or third persons; and residual privacy rights.' In short, the district court must weigh 'the interests advanced by the parties in the light of the public interest and the duty of the courts.'

*Valley Broadcasting*, 798 F.2d at 1294.

Here, as in *Valley*, these considerations counsel for public access to the audio files.

---

[6] In closing arguments, for example, the government repeatedly pointed to the wiretaps as "the evidence"—"the human intelligence you get to have as evidence is Keith Foster's voice that's captured in these wiretaps." *See* Dkt. 245 (Closing Argument) at 1115:9–11. Indeed, Mr. Foster was charged with the "use of a communication facility to commit a drug offense," such that the audio was not just evidence, but indispensable evidence. *See* Dkt. 1 (Complaint) ¶¶ 18–19.

Investigative Studios is a reputable media entity; its goal is to promote public awareness of significant events—corruption in public office in this state—and of the judicial process that led to Mr. Foster's ultimate conviction. More than that, these are not just *any* audio files; they were admitted into evidence as trial exhibits, incorporated into the official transcripts, and relied on by the government. *See, e.g., United States v. Myers (In re Nat'l Broad. Co.)*, 635 F.2d 945, 952 (2d Cir. 1980) ("Once ... evidence has become known to the members of the public ... through their attendance at a public session of court, it would take the most extraordinary circumstances to justify restrictions on the opportunity of those not physically in attendance at the courtroom to see and hear the evidence, when it is in a form that readily permits sight and sound reproduction.").

Simplifying matters even further, there do not appear to be any countervailing concerns. The trial is over, so there is no risk of distracting or tainting the jury; the audio recordings were important, public exhibits—not unrelated or private information that might be used for improper purposes; and neither Mr. Foster nor the government argued at trial that these records should be sealed.

## IV. CONCLUSION

For the reasons detailed above, Non-Party Investigative Studios requests that this Court order either (i) the Clerk of the Court or (ii) the United States Attorney's Office for the Eastern District of California to create copies of Exhibits 4, 13, 25, and 68, and to make them available to Studios within seven days.[7]

Dated: November 2, 2018					KEKER, VAN NEST & PETERS LLP

							By:	*/s/ Nicholas D. Marais*
								BRIAN L. FERRALL
								NICHOLAS D. MARAIS

								Attorneys for Non-Party
								Investigative Studios, Inc.

---

[7] Studios will bear the costs, if any, associated with making these copies. It is also willing to receive digital copies of the relevant .mp3s (audio) or .pdfs (transcripts).